FILED

2008 Sep-18  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | CASE NUMBER 08-J-0635-S |
| | ) | |
| v. | ) | |
| | ) | |
| HANNA STEEL CORPORATION, CEOLA ALLEN, KATIE LOWERY, LARRY AARON, COLUMBIA CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, FIREMAN'S FUND INSURANCE COMPANY, AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## FIREMAN'S FUND INSURANCE COMPANY'S MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Fireman's Fund Insurance Company ("FFIC") and submits its Memorandum Brief in Support of its Motion for Summary Judgment against Plaintiff Pennsylvania National Mutual Insurance Company ("Penn National") as follows:

## I.   Initial Statement of Undisputed Facts

1.     FFIC issued a Commercial General Liability insurance policy to Hanna Steel Corporation ("Hanna Steel"), number KXC80371919 for the period December 1, 1998 to December 1, 1999 with limits of $1,000,000 each occurrence and $2,000,000 general aggregate (the "FFIC Policy").  Affidavit of Daniel J. Kane ("Kane Aff."), Exhibit 1.

2.     Among other things, the FFIC Policy contains a Total Pollution Exclusion Endorsement which provides as follows:

> This endorsement modifies insurance provided under the following:
>
> Commercial General Liability Coverage Part
>
> Exclusion f. under paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:
>
> This insurance does not apply to:
>
> f.     (1)   Bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
>        (2)   Any loss, cost or expense arising out of any:
>
>        (a)   Request, demand or order that any insured or others test for, monitor, clean up, remove,

2

contain, treat, detoxify, or neutralize, or in any way
respond to, or assess the effects of pollutants; or

(b)   Claim or suit by or on behalf of a
governmental authority for damages because of
testing for, monitoring, cleaning up, removing,
containing, treating, detoxifying or neutralizing, or
in any way responding to, or assessing the effects
of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal
irritant or contaminant including smoke, vapor, soot,
fumes, acid, alkalis, chemicals and waste.  Waste
includes materials to be recycled, reconditioned or
reclaimed.

Kane Aff, Exh. 2.

3.     On or about April 10, 2008, Penn National, who also issued a
Commercial General Liability insurance policy to Hanna Steel, filed the instant
declaratory judgment action against FFIC, Hanna Steel, Hanna Steel's other
insurers[1], and other parties[2] in the United States District Court for the Northern
District of Alabama (the "Declaratory Judgment Action").  Fireman's Fund
Insurance Company's Evidentiary Submission in Support of its Motion for
Summary Judgment ("FFIC Evidentiary Submission"), Exhs. A, B.

---

[1] The other insurer-defendants named in the April 10, 2008 complaint in the Declaratory Judgment Action are
Columbia Casualty Company, National Fire Insurance Company of Hartford and American Manufacturers Mutual
Insurance Company.  Penn National filed a First Amended Complaint on August 14, 2008 to add Commerce &
Industry Insurance Company.

[2] The Declaratory Judgment Action also names Ceola Allen, Katie Lowery and Larry Aaron as defendants.  These
individuals are the lead plaintiffs in three separate lawsuits filed against Hanna Steel for which Hanna Steel is
seeking coverage from FFIC and its other insurers and which, as will be discussed in further detail below, form the
basis of the Declaratory Judgment Action.

3

4.     The Declaratory Judgment Action seeks a declaration as to the rights and obligations of the parties concerning Hanna Steel's claim for coverage under the insurance policies issued by Penn National, FFIC and the other insurer defendants for three separate lawsuits brought against Hanna Steel in the Circuit Court of Jefferson County, Alabama: *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, (the "Allen Action"); *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749 (the "Lowery Action"); and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-40 (the "Aaron Action"), (collectively, the "Underlying Actions").  FFIC Evidentiary Submission, Exhs. C, D, E.

5.     The Underlying Actions each allege that Hanna Steel is liable for damages, including bodily injury and damage to property, as a result of Hanna Steel's manufacturing processes, which discharged particulates and/or gases and other harmful chemicals and pollutants into the air, soil, surface water and/or ground water in Jefferson County, Alabama and/or adjacent to the plaintiffs' property and the plaintiffs' bodies. Exh. C at ¶¶ 3, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30; Exh. D at ¶¶ 4, 5, 10, 16; Exh. E at ¶¶ 4, 5, 7, 9, 11, 13, 15, 17, 19, 21, 27, 29, 31.

6.     Moreover, the Allen and Aaron Actions allege that Hanna Steel "manufactured equipment that, when operated by another defendant, or defendants,

4

in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates and gases to be discharged into the atmosphere, or has sold equipment in commerce that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants." FFIC Evidentiary Submission, Exhs. C at ¶ 3; E at ¶ 4.

7.     FFIC disclaimed coverage for the Underlying Actions based on the Total Pollution Exclusion endorsement contained in the FFIC Policy.  FFIC Evidentiary Submission Exhs. F, G, H.

## II.     Summary of Argument

The question presented to this Court by FFIC in this motion for summary judgment is straightforward:  does the inclusion of a "Total Pollution Exclusion" in FFIC's insurance policy exclude, as a matter of law, coverage for the Underlying

Actions tendered to FFIC by Hanna Steel, consisting of class action lawsuits against Hanna Steel for allegedly causing property damage and bodily injury as a result of its alleged discharge of harmful chemicals and pollutants into the air, soil and water from its manufacturing plant in Jefferson County, Alabama and/or from equipment that it manufactured.

Specifically, the FFIC Total Pollution Exclusion endorsement states in pertinent part:

> The insurance does not apply to:  bodily injury or
> property damage which would not have occurred in
> whole or in part but for the actual, alleged, or theoretical
> discharge, dispersal, seepage, migration, release or
> escape of pollutants at any time.

Kane Aff., Exh. 2

The Underlying Lawsuits uniformly allege that Hanna Steel, during its manufacturing process at its Jefferson County, Alabama plant, "discharged particulates and/or gases and other harmful chemicals and/or pollutants into Jefferson County Alabama, and into the air, soil, surface water and/or ground water . . .adjacent to plaintiffs' property or into their bodies," FFIC Evidentiary Submission, Exh. C at ¶¶  3, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30; Exh. D at ¶¶ 4, 5, 10, 16; Exh. E at ¶¶ 4, 5, 7, 9, 11, 13, 15, 17, 19, 21, 27, 29, 31, resulting in both bodily injury and property damage to the underlying plaintiffs.

Moreover, the Allen and Aaron Actions also allege that equipment manufactured by Hanna and operated by others "caused or contributed to cause, jointly and severally, particulates and gases to be discharged into the atmosphere," thereby causing property damage and/or bodily injury. FFIC Evidentiary Submission, Exhs. C at ¶ 3; E at ¶ 4.

FFIC respectfully submits that the question posed in this motion has been addressed and answered by the Alabama Supreme Court in *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So.2d 705 (Ala. 2007). In that decision, the Alabama Supreme Court unequivocally ruled just last year that a pollution exclusion, virtually identical to that contained in the FFIC policy, unambiguously precludes coverage for claims that were, in all relevant respects, identical to those brought against Hanna Steel in the Underlying Actions. Moreover, prior to the Alabama Supreme Court's decision in *Abston*, the U.S. District Court for the Middle District of Alabama, in *Kruger Commodities, Inc. v. U.S. Fidelity & Guar. Co.*, 923 F.Supp. 1474, 1477-80 (M.D. Ala. 1996), predicting how both the Nebraska Supreme Court and the Alabama Supreme Court would rule[3], held that, claims involving allegations of injuries caused by pollutants discharged into the environment from the insured's industrial manufacturing activities fall squarely

---

[3] The U.S. District Court for the Middle District of Alabama in *Kruger* specifically observed that there was no Alabama or Nebraska state court rulings upon which to rely for guidance on this issue and, therefore predicted (quite accurately) how those state courts would eventually rule when the issue was raised before them.

within the scope of pollution exclusions that are virtually identical to the Total

Pollution Exclusion contained in the FFIC policy.  Accordingly, FFIC respectfully

submits that, in light of the mandate provided by the Alabama Supreme Court

regarding the application of the pollution exclusion, this Court should grant FFIC's

motion in all respects.

## **ARGUMENT**

### A.    **Standard of Review**

It is well settled that summary judgment shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48; 106 S. Ct. 2505, 2509-10

(1986); *Patterson & Wilder Constr. Co. v. United States*, 226 F.3d 1269, 1273 (11th

Cir. 2000).  By its very terms, this standard provides that the mere existence of

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment and the requirement is that there

be no genuine issue of material fact.  *Anderson*, 477 U.S. at 248.  As to the issue of

materiality, the substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing

8

law will properly preclude the entry of summary judgment and factual disputes that are irrelevant or unnecessary will not be counted. *Id.*

Here, there is no factual dispute that the Underlying Actions allege that the plaintiffs' injuries were caused by the discharge of pollutants into the air, soil and water as a result of Hanna Steel's manufacturing processes and, with respect to the Allen and Aaron Actions, equipment manufactured by Hanna Steel which discharged pollutants into the environment. Accordingly, because Alabama state and federal decisional authority has previously and routinely determined that coverage is not available for claims involving bodily injury or property damage caused by the dispersals of pollutants into the environment under the absolute or total pollution exclusion, FFIC is entitled to a finding that the total pollution exclusion endorsement contained in the FFIC Policy precludes coverage for the Underlying Actions against Hanna Steel as a matter of law. [4]

---

[4] FFIC does not believe there is any dispute among the parties that Alabama law governs the interpretation of the FFIC Policy. Specifically, because the Court's jurisdiction over this matter is based upon diversity of citizenship, the Court is bound to apply the substantive law of the state in which it sits. *Tang How v. Edward J. Gerrits, Inc.*, 961 F.2d 174, 178 (11th Cir. 1992). Accordingly, actions involving insurance policies are governed by *lex loci contractus*, wherein a contract is governed as to its nature, obligation and validity by the law of the place where it was made. *Cincinnati Ins. Co., Inc. v. Girod*, 570 So.2d 595, 597 (Ala. 1990); *Ferris v. Jennings*, 851 F.Supp. 418, 421 (M.D. Ala. 1993).

**B.     The Total Pollution Exclusion Contained in the FFIC Policy Precludes Coverage for the Underlying Actions Against Hanna Steel under Alabama Law**

FFIC's disclaimer of coverage to Hanna Steel for the Underlying Actions is predicated upon the position that the Total Pollution Exclusion endorsement vitiates any duty to defend or indemnify Hanna Steel under the FFIC Policy.  FFIC Evidentiary Submission, Exhs. F, G, H.  To this end, the Alabama Supreme Court has held that an insurer does not owe duty to defend (and, therefore, does not owe the narrower duty to indemnify) if the complaint against the insured fails to allege a covered accident or occurrence or the evidence in the underlying litigation does not support a finding that there may be a covered accident or occurrence.  *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1010 (Ala. 2005); *Acceptance Ins. Co. v. Brown*, 832 So.2d 1, (Ala. 2001).   Accordingly, because there is no possibility either that the allegations of the Underlying Actions or that any evidence that may be presented during the litigation of those matters could be interpreted as involving anything other than property damage or bodily injury because of pollutants which were discharged into the environment by Hanna Steel's manufacturing activities or its equipment, FFIC has no duty to defend nor indemnify Hanna Steel for the Underlying Actions as a matter of law.

10

Alabama law is well settled that insurance companies are entitled to limit

their insurance liability through policy exclusions so long as those exclusions do

not violate statutory law or public policy. *Hooper v. Allstate Ins. Co.*, 571 So.2d

1001, 1002 (Ala. 1990). If an insured purchases a policy containing an

unambiguous exclusion that does not violate a statute or public policy, Alabama

courts will enforce the contract as written. *Johnson v. Allstate Ins. Co.*, 505 So.2d

362, 365 (Ala. 1987). A court will not ignore the express provisions of the policy,

including exclusionary clauses, in order to create a new contract for the parties.

*Smith v. Auto-Owners Ins. Co.*, 500 So.2d 1042, 1046 (Ala. 1986).

The Alabama Supreme Court has recognized that the issue of whether a

provision contained in an insurance policy is ambiguous is a question of law for

the court to decide. *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 308 (Ala.

1999). If the terms within a contract are plain and unambiguous, the construction

of the contract and its legal effect become questions of law for the court. *Abston*,

967 So.2d at 708, *citing Slade*, 747 So.2d at 308.

In specifically addressing pollution exclusions contained in CGL policies,

the Alabama Supreme Court, in *Abston*, determined that the applicability of an

absolute or total pollution exclusion clause depends upon the "affirmative

confluence" of three distinct elements:

11

> (1) the bodily injury or property damage in question must
> have been caused by exposure to a pollutant; (2) that
> exposure must have arisen out of the actual, alleged, or
> threatened discharge, dispersal, release, or escape of the
> pollutant; and that discharge, dispersal, release, or escape
> must have occurred at or from certain locations or have
> constituted waste; and (3) the exclusion comes into play
> only with respect to bodily injury or property damage
> arising out of the discharge, dispersal, release, or escape
> of pollutants at or from certain categories of locations, or
> which have been transported, stored, handled, treated,
> disposed of, or processed as waste.

*Abston*, 967 So.2d at 708, *citing Porterfield v. Audubon Indem. Co.*, 856 So.2d

789, 801 (Ala. 2002). Accordingly, in a claim involving coverage for allegations

of property damage and bodily injury caused by gasoline leaks from underground

pipelines, the Alabama Supreme Court reversed the lower court's award of

summary judgment to a policy holder by finding that the absolute pollution

exclusion was unambiguous, thereby precluding coverage for the claim <u>as a matter

of law</u>, and remanded the matter for further proceedings consistent with its

findings. *Abston*, 967 So.2d at 713.

More specifically, in *Abston*, despite the unambiguous language of the

exclusion involved, the Alabama Supreme Court was asked to consider whether

gasoline, which had leaked into the environment from underground pipes leading

to storage tanks, qualified as a "pollutant" as used in an absolute pollution

exclusion so as to preclude coverage for resultant allegations of property damage

12

and bodily injury.  The Supreme Court began its analysis by observing that "[b]ecause the question of ambiguity is one of law, we must first decide whether the pollution exclusion in the Federated Mutual policy is ambiguous.  If the clause is unambiguous, then this Court must enforce the terms of the policy as written." *Abston*, 967 So.2d at 713.  Thereafter, the Alabama Supreme Court found that gasoline was clearly a pollutant based on the fact that "deleterious consequences" occur when such substance "is introduced into the soil or when its fumes escape into the atmosphere."  *Id.*  Importantly, the Court refused to consider the insured's arguments that the drafting and regulatory clauses of such exclusions should be examined to determine the existence of an ambiguity, nor was the Court persuaded by the insured's attempt to construe the exclusion differently based upon the policy of construing exclusionary clauses against the insurer.  *Id.*

Finally, finding that the pollution exclusion was unambiguous, the Court addressed Abston's argument that an "insured's reasonable expectation can overcome unambiguous language."  In this regard, the Court resoundingly rejected this argument by declaring that:

> . . .expectations that contradict a clear exclusion are not 'objectively reasonable'.  Such a limit on the doctrine of reasonable expectations is necessary.  Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for unambiguous terms of a

13

contract and the doctrine could be used to invalidate every policy exclusion. [5]

*Abston*, 967 So.2d at 713 (internal citations omitted).

Here it is beyond peradventure that the allegations of the Underlying Actions against Hanna Steel allege that the plaintiffs' injuries occurred because of the "classic polluting activities" contemplated by the Alabama Supreme Court in reaching its decision that the pollution exclusion clearly and unambiguously operates to preclude coverage for such claims.

Indeed, federal District Courts applying Alabama law, even before *Abston*, have routinely found that the absolute pollution exclusion clearly and unambiguously precludes coverage when the injuries alleged simply "arise out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants" and that no rational reading of the absolute pollution exclusion could lead to another conclusion. *Kruger*, 923 F.Supp. at 1477-80 (upholding a pollution exclusion provision under Nebraska law, but specifically noting that such a holding is also supported under Alabama law); *see also, Haman, Inc. v. St. Paul Fire & Marine Ins. Co.*, 18 F.Supp.2d 1306, 1308-09 (N.D. Ala. 1998); *Shalimar*

---

[5] The *Abston* court referred back to and distinguished its earlier decision in *Porterfield v. Audubon Indemnity Co.* 856 So.2d 784 (2002) in which it found that the absolute pollution exclusion was unambiguous regarding whether lead paint chips on a wall were pollutants, but was, at the same time, unclear as to whether there was a "discharge" as required under the terms of the policy. In contrast, in *Abston*, it was clear that the discharge of odors into the air, like Hanna's discharge of pollutants in the air, unambiguously fell within the meaning of the absolute pollution exclusion.

14

*Contractors, Inc. v. American States Ins. Co.*, 975 F.Supp. 1450, 1457 (M.D. Ala.

1997); *Norfolk S. Ry. Co. v. Roberts*, 1996 U.S. Dist. LEXIS 21816, *20-21 (N.D.

Ala. 1996).

    In *Kruger*, the U.S. District Court for the Middle District of Alabama, first

reviewed Nebraska's rules regarding the interpretation of insurance contracts,

which, as in Alabama, provide that "an insurance contract is to be construed as any

other contract; if its terms are clear, they are to be applied according to their plain

and ordinary meaning. *Kruger*, 923 F.Supp. at 1478-79. *See also Twin City Fire

Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691-92 (Ala. 2001). After

establishing the ground rules, the *Kruger* court reviewed a pollution exclusion

which is virtually the same as the Total Pollution Exclusion contained in the FFIC

policy. Against its review of the exclusion, the court examined the allegations of

the underlying claimants who alleged that Kruger's rendering plant emanated

odors that hurt their business and made their customers ill. *Kruger*, 923 F.Supp. at

1478-80. The court rejected Kruger's argument that, because the fumes were not

"classified as toxic or hazardous" and not illegal, they did not fall within the

definition of a pollutant. *Id.* 923 F.Supp. at 1479. Such an interpretation, the

Court concluded, is not "what a reasonable person in the position of the insured

would have understood [the exclusionary language] to mean." *Id.* at 1479-80. On

the contrary, under that standard, the Alabama Supreme Court ruled, as a matter of law, that the exclusion unambiguously precluded coverage.

Moreover, in *Kruger*, the U.S. District Court for the Middle District of Alabama was persuaded by decisions from other jurisdictions relied upon by the insurer, all of which routinely and clearly held that an absolute pollution exclusion clearly precludes recovery for damage caused by substances emitted during the normal operation of an industrial business. *Kruger*, 923 F.Supp. at 1478, *citing Hydro Systems, Inc. v. Continental Ins. Co.* 929 F.2d 472, 474-76 (9th Cir. 1991) (pollution exclusion bars coverage for cleanup costs resulting from the release of styrene gas from the policyholder's fiberglass plant); *American States Ins. Co. v. F.H.S., Inc.*, 843 F.Supp. 187, 189 (S.D. Miss. 1994) (pollution exclusion barred coverage for respiratory irritation claims resulting from ammonia releases by a policyholder); *Crabtree v. Hayes Dockside, Inc.*, 612 So.2d 249, 252 (La. Ct. App. 1992) (exclusion bars coverage of claims of skin and eye irritation from polyvinyl chloride dust); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 629 A.2d 957, 962 (Pa. Super. Ct. 1993) (pollution exclusion bars coverage for claims arising out of migrating methane gas).

It is difficult to imagine a case more instructive than *Kruger* as to why FFIC's motion should be granted. Indeed, here the Alabama Supreme Court

16

mandates such a ruling.  Here, in each of the Underlying Actions, it is alleged that,

during its manufacturing operations, Hanna Steel discharged "harmful chemicals

and pollutants" into the environment causing the bodily injury and property

damage.  FFIC Evidentiary Submission, Exh. C at ¶¶  3, 4, 6, 8, 10, 12, 14, 16, 18,

20, 22, 24, 26, 28, 30; Exh. D at ¶¶ 4, 5, 10, 16; Exh. E at ¶¶ 4, 5, 7, 9, 11, 13, 15,

17, 19, 21, 27, 29, 31.  In the Allen and Aaron Actions, the plaintiffs further allege

that equipment manufactured by Hanna Steel discharged "harmful chemicals and

pollutants" into the environment causing the bodily injury and property damage.

FFIC Evidentiary Submission, Exhs. C at ¶ 3; E at ¶ 4.  Accordingly, it is clear that

the damages claimed in the Underlying Actions were allegedly caused solely by

exposure to particulates, gases and other harmful chemicals and pollutants which

arose from the discharge of such substances into the environment from Hanna

Steel's manufacturing plant located in Jefferson County, Alabama and, in the case

of the Allen and Aaron Actions, equipment that was manufactured by Hanna Steel.

In short, there can be no question that the Underlying Actions are precisely the

type of claims that the Alabama Supreme Court has clearly held fall squarely

within the Total Pollution Exclusion endorsement contained in the FFIC policy.

17

## III.    Conclusion

WHEREFORE, for each of the reasons set forth above, FFIC respectfully

requests that this Court grant FFIC's Motion for Summary Judgment in its entirety,

along with all other relief this Court deems just and proper as there is no genuine

issue of material fact and FFIC is entitled to judgment as a matter of law.

Dated:  September 18, 2008

FIREMAN'S FUND INSURANCE
COMPANY

By:    _____/S/_____

Sharon Stuart (DON015)
Lynn S. Darty (DAR010)
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North Twentieth Street
Birmingham, AL 35203-2696
(205) 795-6588
(205) 328-7234 (fax)

Gary D. Centola (admitted pro hac vice)
William J. Edwins (admitted pro hac vice)
Rivkin Radler LLP
926 RexCorp Plaza
Uniondale, NY  11556-0926
(516) 357-3000
(516) 357-3333 (fax)