FILED

2008 Oct-08  PM 01:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | Case No.: CV-08-J-0635-S |
| HANNA STEEL CORPORATION, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS JOINDER IN FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Defendant American Manufacturers Mutual Insurance Company ("American

Manufacturers") files this reply brief in support of its joinder (Docket No. 78) in the

motion for summary judgment filed by Fireman's Fund Insurance Company ("FFIC") on

September 18, 2008 (Docket No. 76), seeking summary judgment regarding the

applicability of the pollution exclusion in the policy it issued to Hanna Steel Corporation

("Hanna Steel").

## I.   THE POLLUTION EXCLUSION PRECLUDES COVERAGE FOR THE UNDERLYING ACTIONS

The pollution exclusion in the American Manufacturers policy applies to wholly

preclude coverage in this matter, relieving American Manufacturers of any duty to defend

or indemnify Hanna Steel in connection with the underlying actions.[1]  Under Alabama

---

[1] The underlying actions are three separate lawsuits brought against Hanna Steel in the Circuit Court of Jefferson County, Alabama:  *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, (the "*Allen* Action"); *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749 (the "*Lowery* Action"); and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-40 (the "*Aaron* Action").

law, an unambiguous exclusion must be enforced as written and an insurer has no duty to

defend or indemnify its insured where the allegations in the underlying action fall wholly

within the scope of the exclusion.  *See, e.g., Federated Mutual Insurance Co. v. Abston*

*Petroleum, Inc.*, 967 So.2d 705 (Ala. 2007).  Here, the allegations in the underlying

actions fall squarely and completely within the scope of the pollution exclusion, thus

American Manufacturers owes Hanna Steel neither a defense nor any indemnity.[2]

> **A.      There Is No Coverage For Discharges From Hanna Steel's Property**

Hanna Steel does not dispute that Paragraph 1) a) of the pollution exclusion in the

American Manufacturers Policy, which unambiguously precludes coverage for "'[b]odily

injury' or 'property damage' arising out of the actual, alleged or threatened discharge,

dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any

premises, site, or location which is or was at any time owned or occupied by, or rented or

loaned to, any insured"[3] applies to preclude coverage for the bulk of the allegations in the

underlying actions, which allege that Hanna Steel's operations at its own plant released

harmful particulates and gases into the environment in Jefferson County, Alabama.

> **B.      The "Equipment" Allegations, Which Hanna Steel Calls Product-Related Claims, Are Not Covered**

Hanna Steel's attempt to argue that the discharge of particulates and gases

identified in the "equipment" allegations in the complaints in the *Allen* Action[4] and the

---

[2] There is no basis to defer determination of the duty to indemnify, as Hanna Steel suggests.  Docket No. 85 at 16.  Here, the claims fall squarely within the pollution exclusion and there are not unresolved factual issues that could result in liability ultimately being within or outside the exclusion.  *See Abston*, 967 So.2d 705.

[3] Docket No. 78, Larsen Aff. Exh. A (Policy Commercial General Liability Coverage Form, § 1, ¶ 2.f.)

[4] The *Allen* complaint alleges that Hanna Steel "manufactured equipment that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and

*Aaron* Action[5] do not constitute "waste" within the scope paragraph 1) c) of the pollution

exclusion is wholly without merit.[6]  It is clear beyond peradventure that the "particulates

and gases" that were released into the atmosphere and allegedly caused injury to the

underlying plaintiffs were waste materials.  Allegations that Hanna Steel is liable for such

emissions by other parties by virtue of its provision of equipment that facilitated emission

of, or actually emitted, particulates and gases, plainly seek to hold Hanna Steel liable for

the acts of others in disposing of the harmful by-products of everyday industrial

operations.  There is no factual question about whether these pollutants, *i.e.*, particulates

and gases discharged into the atmosphere as a by-product of manufacturing operations,

were being treated as waste materials.  Accordingly,  paragraph 1) c) of the Pollution

Exclusion applies to preclude coverage for any allegations in the underlying suits

concerning discharges of pollutants away from Hanna Steel's own property.

---

severally, particulates and gases to be discharged into the atmosphere, or has sold equipment in commerce that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants."  Docket No. 1*,* Exh. A ¶ 4.

[5] The *Aaron* complaint alleges that Hanna Steel "manufactured equipment that has, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates and gases to be discharged into the atmosphere, or has sold equipment in commerce that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants."  Docket No. 1, Exh. C ¶ 4.

[6] Moreover, Hanna Steel does not face liability in the *Lowery* Action for use of its products by third parties. In this regard, American Manufacturers notes that, rather than remaining wholly silent on the issue of products liability, the *Lowery* complaint contains a products liability cause of action against fictitious defendants, but not Hanna Steel.  *See* Docket No. 1, Exh. B at 7-8.

Further, American Manufacturers is entitled to summary judgment on the alternate ground that the underlying actions seek to hold Hanna Steel responsible for responding to and assessing the effects of pollutants, such that paragraph 2) a) of the pollution exclusion also applies to preclude coverage for Hanna Steel.  Paragraph 2) a) precludes coverage for "[a]ny loss, cost, or expense arising out of any . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants." Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f.  Therefore, this Court should grant summary judgment that Paragraph 2) a) of the pollution exclusion applies to preclude coverage in this matter.

## II.     THE PRODUCTS-COMPLETED OPERATIONS HAZARD IS NOT OUTSIDE THE POLLUTION EXCLUSION

In a futile effort to create coverage where none exists and circumvent the plain meaning of the pollution exclusion, Hanna Steel contends that claims for bodily injury or property damage arising out of the "products-completed operations hazard" are somehow not subject to the pollution exclusion in the American Manufacturers Policy.  *See* Docket No. 85 at 8-10.  The actual language of the Policy, however, clearly belies Hanna Steel's assertion.

The Commercial General Liability Coverage Part found in the American Manufacturers Policy includes the following three separate types of coverage: Coverage A.  Bodily Injury and Property Damage Liability; Coverage B.  Personal and Advertising Injury Liability; and Coverage C.  Medical Payments.

Under the American Manufacturers Policy, the terms, provisions and exclusions of Coverage A – including the pollution exclusion – govern all claims for bodily injury or

4

property damage, including bodily injury or property damage within the "products-completed operations hazard."  The only exception is the "Damage to Property" exclusion, which specifically states that "Paragraph 6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"  *Id.* ¶ 2.j. The only other provision of Coverage A that distinguishes the products-completed operations hazard is the "Damage to Your Work" exclusion, which excludes coverage for "'Property damage' to 'your work' arising out of it or any part of it included within the 'products-completed operations hazard.'"  *Id.* ¶ 2.l.  Thus, there is no question under the clear language of the policy that the pollution exclusion applies to all bodily injury and property damage claims, including those within the products-completed operations hazard.  Any contrary suggestion is simply wrong.

Not surprisingly, cases from across the nation apply the pollution exclusion's terms to bodily injury and property damage claims within the products-completed operations hazard.[7]  Indeed, just this year the Alaska Supreme Court rejected the very argument that Hanna Steel advances, concluding that "there is no coverage under the products-completed operations hazard provision because an exclusion explicitly states when it does not apply to the provision" and "the pollution exclusion does not contain such a statement."  *Whittier Props, Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 93 (Alaska 2008).  The *Whittier* Court further supported its conclusion by noting that, as is the case with the American Manufacturers Policy, "the exclusion for 'Damage to Property' under

---

[7] *See, e.g., Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 208 (5th Cir.1991) (pollution exclusion applies to products-completed operation hazard); *North Georgia Petroleum Co. v. Federated Mut. Ins. Co.*, 68 F.Supp.2d 1321, 1327 (N.D. Ga. 1999) ("Because the pollution exclusion applies to Coverage A, which includes the products-completed operations hazard, the court finds that no ambiguity exists as to whether the pollution exclusion applies to the products-completed operations hazard."); *Crescent Oil Co., Inc. v. Federated Mutual Ins. Co.,* 888 P.2d 869, 874 (Kan. App. 1995) (products-completed operation hazard is not exempt from pollution exclusion).

Coverage A states that 'Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."'" *Id.* at 93, n.44.

### III.   THE PERSONAL INJURY COVERAGE PART DOES NOT PROVIDE COVERAGE FOR POLLUTION CLAIMS

The "personal and advertising injury" coverage part, by its clear terms, provides coverage only for specifically enumerated offenses that pertain, as the provision's name explains, to personal injury.  Thus, Hanna Steel's argument that the environmental claims in the underlying actions somehow constitute the enumerated offenses of "wrongful eviction from," "wrongful entry into," or "invasion of the right of private occupancy" "by or on behalf of its owner, landlord or lessor" is meritless.  These offenses require purposeful acts intended to infringe on a *possessory* interest in property.  This type of coverage is designed to cover claims arising from the improper physical entry of a *person* onto property owned or occupied by another (*e.g.*, in the landlord-tenant context), not the costs of cleaning up pollution.  The clear terms of the personal and advertising injury provision simply do not apply to environmental contamination claims.

The personal injury provision, by its very terms, covers only those offenses that are explicitly enumerated in the policy.  It does not operate as a general grant of coverage for unrestricted liability.[8]  Unlike general liability coverage for "bodily injury" or "property damage," personal injury coverage is "buil[t] from the ground up:  It affords coverage only for defined risks." *Martin v. Brunzelle*, 699 F. Supp. 167, 171 (N.D. Ill. 1988); *accord Puritan Ins. Co. v. 1330 Nineteenth Street Corp.*, No. 83-2224, 1984 U.S.

---

[8] *See, e.g., Am. & Foreign Ins. Co v. Church Schs.  in the Diocese of Va.*, 645 F. Supp. 628 (E.D. Va. 1986) (personal injury coverage applies only to claims arising out of the torts listed); *Hamlin v. W. Nat'l Mut. Ins. Co.*, 461 N.W.2d 395 (Minn. Ct. App. 1990) (same); *Liberty Bank of Mont. v. Travelers Indem. Co.*, 870 F.2d 1504 (9th Cir. 1989) (same); *Nichols v. Am. Employers Ins. Co.*, 412 N.W.2d 547, 551 (Wis. Ct. App. 1987) (policyholder's contention that personal injury coverage applied to actions other than the specific torts enumerated in the policy would lead to "absurd results").

Dist. LEXIS 18477 at * 11-12 (D.D.C. March 19, 1984) (personal injury coverage "does not contain a general promise of coverage but specifies coverage-triggering offenses"). *See generally,* 7A J. Appleman, *Insurance Law* § 4501.14 (1978).

None of the underlying claims against Hanna Steel allege the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." The policyholder does not – and cannot – allege that any of those specified offenses appear in the underlying complaints and actions. For that reason alone, there is no coverage.[9]

Furthermore, the enumeration of "wrongful entry" and "invasion of the right of private occupancy" does not include environmental contamination claims because such torts require purposeful acts aimed at the infringement of a *possessory* interest in property. The American Manufacturers Policy includes a modifier limiting coverage for "wrongful entry" to situations in which that offense was committed "by or on behalf of [the property's] owner, landlord or lessor," which further reinforces the focus on possessory interests.[10] Here, the underlying claimants have not been dispossessed of their

---

[9] *See Gregory v. Tenn. Gas Pipeline Co.*, 948 F.2d 203, 209 (5th Cir. 1991) (no coverage for PCB contamination claims because "personal injury" provision only applies to "enumerated risks specifically assumed"); *see also City of Delray Beach v. Agric. Ins. Co.*, 85 F.3d 1527 (11th Cir. 1996) (environmental contamination does not allege "wrongful entry"); *Titan Corp. v. Aetna Cas. & Sur. Co.*, 22 Cal. App. 4th 457 (1994) (personal injury provision does not provide coverage for injury to realty); *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946 (N.Y. 1994) (where the complaint alleged only "continuing trespass" and "continuing nuisance," the court found that these allegations were not among the enumerated offenses covered by the personal injury endorsement).

[10] *See, e.g., County of Columbia,* 634 N.E.2d at 950 (holding that wrongful entry and invasion of the right of private occupancy are limited to liability for *purposeful* acts aimed at dispossession of real property by someone asserting an interest therein); *Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 510-511 (Conn. 2002) ("personal injury provisions were intended to reach only intentional acts by the insured" and thus did not provide coverage for pollution-related claims); *Toombs NJ, Inc.,* 591 A.2d at 309 (terms "wrongful entry" and "other invasion of the right of private occupancy" require landlord-tenant context); *Decorative Ctr. v. Employers Cas. Co.*, 833 S.W.2d 257, 263 (Tex. Ct. App. 1992) ("other invasion of the

7

property interests by Hanna Steel acting in a capacity as landlord, owner or lessor. Quite

simply, the elements of a cause of action for wrongful entry are not and cannot be

alleged. Thus, no "wrongful entry" within the meaning of the policy is at issue here, and

the "personal injury" provision does not apply.

Unsurprisingly, courts across the country have repudiated attempts by

policyholders to distort the personal injury provisions into coverage for pollution-related

injuries. Courts in twenty-eight states have concluded that the "personal injury"

provision simply does not apply to environmental contamination claims.[11] For instance,

the Connecticut Supreme Court has ruled that the "personal injury" provision does not

cover environmental pollution claims. *Buell Indus.*, 791 A.2d 510 (reasoning that the

"policies clearly were intended to exclude costs for pollution related claims . . . , and we

will not stretch the personal injury provisions to cover a claim that another area of the

policy clearly excludes."). Similarly, New York's highest court held that personal injury

coverage "is not available to injuries arising from pollution-generated property damage."

---

right of private occupancy" does not apply outside landlord-tenant context); *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.*, 91 F.3d 278, 288 (1st Cir. 1996) ("wrongful entry" and "other invasion of the right of private occupancy" only encompass wrongful conduct by a landlord against its tenant).

[11] *See, e.g, Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472 (1995) (petroleum); *Buell Indus. Inc. v. Greater N.Y.  Mut. Ins. Co.*, 791 A.2d 489 (Conn. 2002) (hazardous waste); *City of Delray Beach v. Agric.  Ins. Co.*, 85 F.3d 1527 (11th Cir. 1996) (environmental contamination); *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 498 S.E.2d 572 (Ga. Ct. App. 1998) (gasoline leaks from underground storage tanks); *Dryden Oil. Co. v. Travelers Indem. Co.*, 91 F.3d 278 (1st Cir. 1996) (environmental contamination); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919 (8th Cir. 1998) (TCE contamination); *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946 (N.Y. 1994) (hazardous waste); *TerraMatrix, Inc. v. U.S. Fire Ins. Corp.*, 939 P.2d 483 (Colo. Ct. App. 1997) (ammonia gas); *Titan Corp. v. Aetna Cas.  & Sur. Co.*, 22 Cal. App. 4th 457 (1994) (TCE contamination; hazardous waste); *County of Kent v. Home Ins. Co.*, 551 N.W.2d 424 (Mich. Ct. App. 1996) (hazardous waste); *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015 (6th Cir. 1995) (environmental contamination); *Columbia Nat'l Ins. Co. v. Pacesetter Homes, Inc.*, 532 N.W.2d 1 (Neb. 1995); *U. S. Bronze Powders, Inc. v. Commerce & Indus. Ins. Co.*, 679 A.2d 674 (N.J. App. Div. 1996) (hazardous wastes; copper sulphates); *J. Josephson, Inc. v. Hartford Ins. Group*, 679 A.2d 1206 (N.J. App. Div. 1996) (hazardous waste).

*County of Columbia*, 634 N.E.2d at 950.  In that case, where the complaint alleged

"continuing trespass" and "continuing nuisance," the court found that these allegations

were not among the enumerated offenses in the "personal injury" provision, which

extended only to the policyholder's purposeful acts.  *Id.*

> Most recently, the Alaska Supreme Court rejected a policyholder's argument that

trespass claims against it stemming from gasoline that leaked onto neighboring properties

somehow triggered the personal injury liability coverage part.  *Whittier*, 185 P.3d at 94.

The court held that "[r]egardless of whether there was a valid pollution exclusion added

to Coverage B [the personal injury coverage part], there is no coverage for the trespass

claims under Coverage B" because the policyholder was not "the owner, landlord, or

lessor of the [claimant's] property."  *Id.*  The court further held that "because accepting

[the policyholder's] interpretation of Coverage B would render the pollution exclusion in

Coverage A meaningless, we are persuaded by the reasoning of other courts rejecting

similar attempts to use Coverage B to evade the pollution exclusion in Coverage A."  *Id.*

> For the persuasive reasons articulated by these numerous courts, this Court should

also refuse to stretch the "personal injury and advertising injury" coverage part to provide

coverage explicitly barred by the pollution exclusion.

## IV.   DISCOVERY REGARDING DRAFTING HISTORY IS INAPPROPRIATE AND IRRELEVANT.

> Alabama courts may not refer to extrinsic evidence in contract interpretation,

absent an ambiguity in the contract language.  *See Twin City Fire Ins. Co. v. Alfa Mut.*

*Ins. Co.,* 817 So.2d 687, 691-92 (Ala. 2001) ("If an insurance policy is clear and

unambiguous in its terms, then there is no question of interpretation or construction.").

Here, Hanna Steel has not alleged that the pollution exclusion is ambiguous.  Indeed, to

the contrary, it has alleged that the plain language of the exclusion does not apply to preclude coverage here.  Seeking, however, to backstop this argument, Hanna Steel petitions this Court in the alternative to deny American Manufacturers' motion without prejudice until it can seek discovery regarding the "drafting history" of the pollution exclusion to "create a factual issue."  Docket No. 85 at 15.

High courts in other states with principles of contract interpretation like Alabama have recognized that pollution exclusions like this one must be enforced as written, and that any use of extrinsic evidence or purported "drafting history" to alter their plain meaning is inappropriate.  *See, e.g., Heyman Associates No. 1 v. Insurance Co. of Pennsylvania*, 653 A.2d 122, 135 n.22 (Conn. 1995); *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 742 (Wash. 2005).  There is no basis to consider the "drafting history" of the unambiguous pollution exclusion at issue here.  American Manufacturers respectfully submits that any delay in resolution of this motion is unwarranted.

## CONCLUSION

For all of the foregoing reasons, the Court should grant American Manufacturers summary judgment, holding that the pollution exclusion in the Policy precludes any obligation of American Manufacturers to Penn National and/or Hanna Steel.

Dated:  October 8, 2008

Respectfully submitted,

Vernon L. Wells, II
WALSTON, WELLS & BIRCHALL, LLP
Post Office Box 830642
Birmingham, Alabama 35203
(205) 244-5200


_____/s/ Paul A. Dame_____
Laura A. Foggan (admitted *pro hac vice*)
Paul A. Dame (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

*Counsel for American Manufacturers*
*Mutual Insurance Company*

# CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2008, I electronically filed the foregoing AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS JOINDER IN FIREMAN'S FUND INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

R. Larry Bradford
BRADFORD & SEARS PC
2020 Canyon Road, Suite 100
Birmingham, AL 35216
205-871-7733
Fax: 205-871-7387
Email: lbradford@bradfordsears.com

Jereme C. Logan
BRADFORD & SEARS PC
2020 Canyon Road
Birmingham, AL 35216
205-871-7733
Fax: 205-871-7387
Email: jeremelogan@gmail.com

David G. Hymer
BRADLEY ARANT ROSE & WHITE LLP
PO Box 830709
Birmingham, AL 35283-0709
521-8000
Email: dhymer@bradleyarant.com

David K. Pharr
BRADLEY ARANT ROSE & WHITE LLP
188 E Capitol Street, Suite 450
Jackson, MS 39201
601-592-9924
Fax: 601-592-1424
Email: dpharr@bradleyarant.com

Joel M. Kuehnert
BRADLEY ARANT ROSE & WHITE
PO Box 830709
Birmingham, AL 35283-0709
205-521-8000
Fax: 205-488-6083
Email: jkuehnert@bradleyarant.com

Sarah Leaver Nichols
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North, Seventh Floor
PO Box 830709
Birmingham, AL 35283-0709
205-521-8341
Fax: 205-488-6341
Email: snichols@bradleyarant.com

J. Gusty Yearout
YEAROUT & TRAYLOR PC
800 Shades Creek Parkway, Suite 500
Birmingham, AL 35209
414-8160
Fax: 414-8199
Email: USCourts@yearout.net

Lloyd W Gathings, II
GATHINGS LAW
2100 3rd Avenue North, Suite 900
Birmingham, AL 35203
322-1201
Email: lgathings@gathingslaw.com

Greta A. Matzen
COLLIAU ELENIUS MURPHY
CARLUCCIO KENNER & MORROW
600 N Pearl, Suite 1400
Dallas, TX 75201
214-220-5910
Fax: 214-220-5902
Email: greta.matzen@cna.com

Cathryn Blue Derian
MCCORMICK & ASSOCIATES PC
1829 E Franklin Street, Suite 600
Chapel Hill, NC 27514
919-918-7113
Fax: 919-933-9233
Email: cbd@mccormicklaw.org

Donald W. McCormick, III
MCCORMICK & ASSOCIATES PC
1829 E Franklin Street, Suite 600
Chapel Hill, NC 27514

919-918-7113
Fax: 919-933-9233
Email: dwm@mccormicklaw.org

Gary D. Centola
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, NY 11556
516-357-3486
Fax: 516-357-3333
Email: gary.centola@rivkin.com

William J. Edwins
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, NY 11556
516-357-3533
Fax: 516-357-3333
Email: william.edwins@rivkin.com

Lynn S. Darty
CHRISTIAN & SMALL LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203-2696
205-795-6588
Fax: 205-328-7234
Email: lsdarty@csattorneys.com

Sharon Donaldson Stuart
CHRISTIAN & SMALL LLP
505 North 20th Street
Birmingham, AL 35203-2696
205-795-6588
Email: sdstuart@csattorneys.com

Laura C. Nettles
LLOYD GRAY & WHITEHEAD PC
2501 20th Place, South, Suite 300
Birmingham, AL 35223
967-8822
Email: lnettles@lgwpc.com

_____ */s/ Paul A. Dame* _____