## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, | **)** **)** **)** |
| Plaintiff, | **)** **)** |
| VS. | **)**     Case No.: CV-08-J-0635-S **)** |
| HANNA STEEL CORPORATION, ET AL., | **)** **)** **)** |
| Defendants. | **)** |

### AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant American Manufacturers Mutual Insurance Company ("American Manufacturers"), by its undersigned attorneys, hereby submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

### INITIAL STATEMENT OF UNDISPUTED FACTS

1.     American Manufacturers issued Hanna Steel an insurance policy, No. 3MH 302 294-00 (the "Policy"), designating a Policy Period from December 1, 1997 to December 1, 1998.[1]  Subject to all of its terms, conditions, definitions and exclusions, the Policy provides coverage for bodily injury or property damage that occurs during the policy period in the amount of $1 million per occurrence, subject to a $2 million aggregate limit of liability.  Policy, Commercial General Liability Coverage Form, § 1, ¶ 1.a.

---

[1] A verified copy of the Policy is attached as Exhibit A to the Affidavit of Donna Larsen, which is attached hereto as Exhibit 1.  For ease of reference, subsequent references to the Policy will cite only to "Policy" followed by a specific cite to the section and subsection at issue.

2.      The Policy includes a Pollution Exclusion that states:

This insurance does not apply to:

    f.      Pollution

        1)      "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

            a)      At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

            b)      At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

            c)      Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

            d)      At or from any premises, site or location on which any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

                i)      If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

                ii)      If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

          Subparagraphs a) and d) i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

          As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2

2)      Any loss, cost, or expense arising out of any:

      a)      Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or

      b)      Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

*Id.* at § 1, ¶ 2.f.

3.      On or about April 10, 2008, Penn National, which also issued a Commercial General Liability insurance policy to Hanna Steel, filed the instant declaratory judgment action against American Manufacturers, Hanna Steel's other insurers[2], and others[3] in the United States District Court for the Northern District of Alabama (the "Declaratory Judgment Action").  *See* Exh. 2 (original complaint); 3 (amended complaint).

4.      The Declaratory Judgment Action seeks a declaration as to the rights and obligations of the parties concerning Hanna Steel's claim for coverage under the insurance policies issued by Penn National, American Manufacturers and the other

---

[2] The other insurer-defendants named in the April 10, 2008 complaint in the Declaratory Judgment Action are Columbia Casualty Company, National Fire Insurance Company of Hartford and Fireman's Fund Insurance Company.  Penn National filed a First Amended Complaint on August 14, 2008 to add Commerce & Industry Insurance Company.

[3] The Declaratory Judgment Action also names Ceola Allen, Katie Lowery and Larry Aaron as defendants. These individuals are the lead plaintiffs in three separate lawsuits filed against Hanna Steel for which Hanna Steel is seeking coverage from its insurers.

insurer defendants for three separate lawsuits brought against it in the Circuit Court of Jefferson County, Alabama: *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, (the "Allen Action") Exh. 4; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749 (the "Lowery Action") Exh. 5; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-40 (the "Aaron Action") Exh. 6, (collectively, the "Underlying Actions").  Exh. 3 at ¶¶ 16, 20-22.

4.     American Manufacturers has agreed to participate in providing Hanna Steel with a defense under the Policy, subject to a reservation of its rights.

5.     American Manufacturers has filed a cross-claim against Hanna Steel and Hanna Steel has filed a cross-claim against American Manufacturers.  *See* Exhs. 7-10. American Manufacturers contends that the Pollution Exclusion precludes the coverage sought by Hanna Steel and/or Penn National.

## SUMMARY JUDGMENT STANDARDS

A court must enter summary judgment where there is no genuine issue as to any material fact bearing on the resolution of the movant's legal claim or defense.  *See* Fed. R. Civ. P. 56(c).  In the absence of triable issues and where reasonable people could not reach different conclusions, the question must be taken away from the jury and resolved by the court as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court's function, in ruling on a motion for summary judgment, is not to weigh evidence or determine the truth of disputed factual matters but, instead, to determine whether there is any genuine issue for trial.  *See id.* at 256.

Rule 56(c) provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party moving for summary judgment must demonstrate an entitlement to a favorable determination under applicable principles of substantive law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After establishing the absence of a question of material fact, the moving party is entitled to summary judgment.

The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- this is, pointing out to the [ ] court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party makes this threshold "showing," the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  *See Anderson*, 477 U.S. at 248-49.  The non-movant cannot create a genuine issue of fact through mere speculation or the building of one inference upon another.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "When a motion for summary judgment is made and supported . . ., an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e); *see Celotex Corp.,* 477 U.S. at 324; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).  The adverse party must do more than simply present some evidence on a disputed issue or show the existence of certain facts in dispute between the parties.  *See Anderson*, 477 U.S. at 249-50 ("If the [non-movant's] evidence is merely

colorable, or is not significantly probative, summary judgment may be granted.").  Thus,
the non-movant must produce admissible evidence that would be sufficient to require
submission to the jury of the dispute over the fact.

Here, there is no factual dispute that the underlying actions allege that the
plaintiffs' injuries were caused by the discharge of pollutants into the air, soil and water
and that they were discharged at or from Hanna's Steel's Jefferson County facilities or at
or from another location where the discharged particulates were being treated as waste.
Moreover, there is no dispute that Hanna Steel seeks coverage for loss, cost or expense
arising from demands that it respond to the effects of pollution.  Accordingly, because
Alabama state and federal decisional authority makes clear that pollution exclusions
unambiguously preclude coverage on facts such as those presented here, American
Manufacturers is entitled to a finding that the pollution exclusion in the American
Manufacturers Policy precludes coverage for the underlying actions against Hanna Steel
as a matter of law.

## ARGUMENT

### I.   THE POLLUTION EXCLUSION PRECLUDES COVERAGE FOR THE UNDERLYING ACTIONS

The Pollution Exclusion in the American Manufacturers Policy precludes
coverage for Hanna Steel in connection with the underlying actions.  At base, each of the
underlying actions alleges that Hanna Steel caused pollutants to be discharged into the
atmosphere, land, or waters of Jefferson County, Alabama, or actively assisted others in
doing so.

Considering a prior version of the pollution exclusion, the Supreme Court of
Alabama noted three decades ago that "[t]he pollution exclusion was no doubt designed

to decrease the risk where an insured was putting smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into the environment." *Molton, Allen and Williams, Inc. v. St. Paul Fire & Marine Ins. Co.,* 347 So.2d 95, 99 (Ala. 1977); *see also United States Fidelity and Guaranty Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985) (noting that such exclusions plainly cover industrial pollution and contamination).  Applying this general construct, Alabama courts and federal courts applying Alabama law (including this Court), have consistently applied the plain language of the pollution exclusion to preclude coverage in situations involving chemical or industrial "pollutants."  *See Hicks v. American Resources Insurance Co.*, 544 So.2d 952 (Ala. 1989) (coverage for contamination of property owner's water supply as a result of policyholder's industrial mining operations was precluded by policy's pollution exclusion); *Haman, Inc. v. St. Paul Fire and Marine Ins. Co.*, 18 F. Supp. 2d 1306, 1308-09 (N.D. Ala. 1998) (under Alabama law, chemical used by exterminator was a pollutant and damages arising from its use were excluded under the policy's pollution exclusion); *Kruger Commodities, Inc. v. United States Fidelity and Guaranty*, 923 F. Supp. 1474, 1478-79 (M.D. Ala. 1996) (applying Nebraska law but observing that under Alabama law a reasonable person would have understood the pollution exclusion to preclude coverage for odors emitted by processing animal carcasses).  Most recently, the Alabama Supreme Court has made clear that the plain language of an absolute pollution exclusion will be enforced, and applied the exclusion to preclude coverage for pollution caused by leaking gasoline tanks and pipes at a service station and general store.  *Federated Mutual Insurance Co. v. Abston Petroleum, Inc.*, 967 So.2d 705 (Ala. 2007).

In *Abston*, the Alabama Supreme Court determined that the applicability of an absolute or total pollution exclusion clause depends upon the "affirmative confluence" of three distinct elements:

> (1) the bodily injury or property damage in question must have been caused by exposure to a pollutant; (2) that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted waste; and (3) the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of pollutants at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed as waste.

*Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So.2d 705, 708 (Ala. 2007) *citing Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 801 (Ala. 2002).  Accordingly, in a claim involving coverage for allegations of property damage and bodily injury caused by gasoline leaks from underground pipelines, the Alabama Supreme Court reversed the lower court's award of summary judgment to a policyholder by finding that the absolute pollution exclusion was unambiguous, thereby precluding coverage for the claim as a matter of law, and remanded the matter for further proceedings consistent with its findings.  *Abston Petroleum*, 967 So.2d at 713.

More specifically, in *Abston*, the Alabama Supreme Court was asked to consider whether gasoline, which had leaked into the environment from underground pipes leading to storage tanks, qualified as a "pollutant" as used in an absolute pollution exclusion so as to preclude coverage for resultant allegations of property damage and bodily injury.  The Supreme Court began its analysis by observing that "[b]ecause the question of ambiguity is one of law, we must first decide whether the pollution exclusion in the Federated

Mutual policy is ambiguous.  If the clause is unambiguous, then this Court must enforce the terms of the policy as written." *Abston Petroleum*, 967 So.2d at 713.  Thereafter, the Alabama Supreme Court found that gasoline was clearly a pollutant based on the fact that "deleterious consequences" occur when such substance "is introduced into the soil or when its fumes escape into the atmosphere." *Id*.  Importantly, the Court refused to consider the insured's arguments that the drafting and regulatory clauses of such exclusions should be examined to determine the existence of an ambiguity, nor was the Court persuaded by the insured's attempt to construe the exclusion differently based upon the policy of construing exclusionary clauses against the insurer.  *Id.*

Finally, finding that the pollution exclusion was unambiguous, the Court addressed Abston's argument that an "insured's reasonable expectation can overcome unambiguous language."  In this regard, the Court resoundingly rejected this argument by declaring that:

> . . .expectations that contradict a clear exclusion are not 'objectively reasonable'.  [citation omitted]  Such a limit on the doctrine of reasonable expectations is necessary.  Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion.  *Abston Petroleum*, 967 So.2d at 713

Here it is beyond peradventure that the allegations of the underlying actions against Hanna Steel allege that the plaintiffs' injuries occurred because of the "classic polluting activities" contemplated by the Alabama Supreme Court in reaching its decision that the pollution exclusion clearly and unambiguously operates to preclude coverage for such claims.

Indeed, federal district courts applying Alabama law, even before *Abston Petroleum*, have routinely found that the absolute pollution exclusion clearly and unambiguously precludes coverage when the injuries alleged simply "arise out of the actual, alleged, or threatened discharge, dispersal, release or escape of pollutants" and that no rational reading of the absolute pollution exclusion could lead to another conclusion. *Kruger Commodities, Inc. v. U.S. Fidelity & Guar. Co.*, 923 F. Supp. 1474, 1477-80 (M.D. Ala. 1996) (upholding a pollution exclusion provision under Nebraska law, but specifically noting that such a holding is also supported under Alabama law); *see also, Haman, Inc. v. St. Paul Fire & Marine Ins. Co.*, 18 F. Supp.2d 1306, 1308-09 (N.D. Ala. 1998); *Shalimar Contractors, Inc. v. American States Ins. Co.*, 975 F. Supp. 1450, 1457 (M.D. Ala. 1997); *Norfolk S. Ry. Co. v. Roberts*, 1996 U.S. Dist. LEXIS 21816, *20-21 (N.D. Ala. 1996).

In *Kruger*, the U.S. District Court for the Middle District first reviewed Nebraska's rules regarding the interpretation of insurance contracts, which, as in Alabama, provide that "an insurance contract is to be construed as any other contract; if its terms are clear, they are to be applied according to their plain and ordinary meaning. *Kruger*, 923 F. Supp. at 1478-79. *See also Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691-92 (Ala. 2001). After establishing the ground rules, the *Kruger* court reviewed a pollution exclusion against the allegations of the underlying claimants who alleged that Kruger's rendering plant emanated odors that hurt their business and made their customers ill. *Kruger*, 923 F. Supp. at 1478-80. The court rejected Kruger's argument that, because the fumes were not "classified as toxic or hazardous" and not illegal, they did not fall within the definition of a pollutant. *Id.* 923 F. Supp. at 1479.

Such an interpretation, the Court concluded, is not "what a reasonable person in the position of the insured would have understood [the exclusionary language] to mean." *Id.* 923 F. Supp. at 1479-80. On the contrary, under that standard, the Alabama Supreme Court ruled, as a matter of law, that the exclusion unambiguously precluded coverage.

Moreover, in *Kruger*, the U.S. District Court for the Middle District of Alabama was persuaded by decisions from other jurisdictions relied upon by the insurer, all of which held that an absolute pollution exclusion clearly precludes recovery for damage caused by substances emitted during the normal operation of an industrial business. *Kruger*, 923 F. Supp. at 1478, *citing Hydro Systems, Inc. v. Continental Ins. Co.* 929 F.2d 472, 474-76 (9th Cir. 1991) (pollution exclusion bars coverage for cleanup costs resulting from the release of styrene gas from the policyholder's fiberglass plant); *American States Ins. Co. v. F.H.S., Inc.*, 843 F. Supp. 187, 189 (S.D. Miss. 1994) (pollution exclusion barred coverage for respiratory irritation claims resulting from ammonia releases by a policyholder); *Crabtree v. Hayes Dockside, Inc.*, 612 So.2d 249, 252 (La. Ct. App. 1992) (exclusion bars coverage of claims of skin and eye irritation from polyvinyl chloride dust); *O'Brien Energy Systems, Inc. v. American Employers' Ins. Co.*, 629 A.2d 957, 962 (Pa. Super. Ct. 1993) (pollution exclusion bars coverage for claims arising out of migrating methane gas).

A.    **There Is No Coverage For Discharges From Hanna Steel's Property**

Here, the complaints in the underlying actions each contend that the alleged bodily injury and property damage was caused by exposure to pollutants in the form of particulates and gases that were released from industrial operations. Specifically, the complaints in the *Allen* Action and the *Aaron* Action allege that Hanna Steel "discharged particulates or gases into the atmosphere," Exh. 4 ¶ 4, 6 ¶ 4, while the complaint in the

*Lowery* Action similarly alleges that Hanna Steel "discharged particulates or gases into the atmosphere and into the ground water." *Id.*, Exh. 5 ¶ 4.  Paragraph 1) a) of the pollution exclusion in the American Manufacturers Policy unambiguously precludes coverage for "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."   Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f.  Because the complaints in the underlying actions allege that Hanna Steel regularly and consistently discharged pollutants from its industrial facilities, the pollution exclusion in the Policy unambiguously applies to preclude coverage for Hanna Steel.

**B.      The "Equipment" Allegations, Which Hanna Steel Calls Product-Related Claims, Are Not Covered**

To the extent Hanna Steel may be subject to liability in the underlying actions as a result of "equipment" allegations (*see* Exh. 8 at 8-12), there still is no coverage.[4]  The purported "equipment" allegations in the complaints in the *Allen* Action[5] and the *Aaron*

---

[4] Hanna Steel's contention that these allegations represent product liability claims by the underlying plaintiffs is beside the point.  There is no exception in the pollution exclusion of the American Manufacturers Policy if a claim is based on product liability as opposed to some other theory of liability for pollution-related harm.

[5] The *Allen* complaint alleges that Hanna Steel "manufactured equipment that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates and gases to be discharged into the atmosphere, or has sold equipment in commerce that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants."  Exh. 4 ¶ 4.

Action[6] fall within paragraph 1) c) of the pollution exclusion.  Paragraph 1) c) precludes coverage for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [w]hich are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for . . any person or organization for whom you may be legally responsible."   Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f.  This portion of the pollution exclusion precludes coverage for the underlying actions because, whether from a location operated by Hanna Steel or otherwise, these allegations concern Hanna Steel's alleged liability for the discharge and dispersal of industrial waste in the form of gases and particulates.

Specifically, to the extent that the *Allen* and *Aaron* suits allege that Hanna Steel is liable for emissions of particulates and gases by other parties by virtue of its provision of equipment that facilitated emission of, or actually emitted, particulates and gases, those allegations plainly seek to hold Hanna Steel liable for the acts of others in disposing of the harmful by-products of everyday industrial operations.  There is no factual question about whether these pollutants, including particulates and gases discharged into the atmosphere as a by-product of manufacturing operations, are being treated as waste materials.  These allegations attempt to hold Hanna Steel liable for harm arising out of

---

[6] The *Aaron* complaint alleges that Hanna Steel "manufactured equipment that has, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates and gases to be discharged into the atmosphere, or has sold equipment in commerce that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants."  Exh. 6 ¶ 4.

the actual discharge of pollutants in the form of particulates and gases which were "disposed of or processed as waste" by third parties allegedly utilizing Hanna Steel's equipment.  Accordingly,  paragraph 1) c) of the Pollution Exclusion applies to preclude coverage.

> **C.     There Is No Coverage For Loss, Cost or Expense Arising From A Demand That Hanna Steel Respond To The Effects of Pollutants.**

The underlying actions seek to hold Hanna Steel responsible for responding to and assessing the effects of pollutants.  Accordingly, paragraph 2) a) of the pollution exclusion also independently applies to preclude coverage for Hanna Steel.  Paragraph 2) a) precludes coverage for "[a]ny loss, cost, or expense arising out of any . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants." Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f.  This clause independently bars coverage for the claims at issue, whether they arise from discharges at or from Hanna Steel's own facility or from third-party discharges of particulates and gases being treated as waste in others' industrial operations.

## II.     THE PRODUCTS-COMPLETED OPERATIONS HAZARD IS NOT OUTSIDE THE POLLUTION EXCLUSION

The plain language of the American Manufacturers Policy, as well as well-reasoned authority from courts around the country, establishes that coverage for claims for bodily injury or property damage arising out of the "products-completed operations hazard" is subject to, and precluded by, the pollution exclusion in the American Manufacturers Policy.  The Commercial General Liability Coverage Part found in the American Manufacturers Policy includes the following three separate types of coverage:

Coverage A.  Bodily Injury and Property Damage Liability

Coverage B.  Personal and Advertising Injury Liability

Coverage C.  Medical Payments

Under the American Manufacturers Policy, the terms, provisions and exclusions of Coverage A – including the pollution exclusion – govern all claims for bodily injury or property damage, including bodily injury or property damage within the "products-completed operations hazard."  The only exception is the "Damage to Property" exclusion, which specifically states that "Paragraph 6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"  *Id.* at ¶ 2.j. The only other provision of Coverage A that distinguishes the products-completed operations hazard is the "Damage to Your Work" exclusion, which excludes coverage for "'Property damage' to 'your work' arising out of it or any part of it included within the 'products-completed operations hazard.'"  *Id.* ¶ 2.l.  Thus, there is no question under the clear language of the policy that the pollution exclusion applies to all bodily injury and property damage claims, including those within the products-completed operations hazard.

Not surprisingly, cases from across the nation apply the pollution exclusion's terms to bodily injury and property damage claims within the products-completed operations hazard.  *See, e.g., Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 208 (5th Cir.1991) (pollution exclusion applies to products-completed operation hazard); *North Georgia Petroleum Co. v. Federated Mut. Ins. Co.*, 68 F. Supp.2d 1321, 1327 (N.D. Ga. 1999) ("Because the pollution exclusion applies to Coverage A, which includes the products-completed operations hazard, the court finds that no ambiguity exists as to whether the pollution exclusion applies to the products-completed operations hazard.");

*Crescent Oil Co., Inc. v. Federated Mutual Ins. Co.,* 888 P.2d 869, 874 (Kan. App. 1995) (products-completed operation hazard is not exempt from pollution exclusion).

Indeed, just this year the Alaska Supreme Court rejected the very argument that Hanna Steel advances, concluding that "there is no coverage under the products-completed operations hazard provision because an exclusion explicitly states when it does not apply to the provision" and "the pollution exclusion does not contain such a statement." *Whittier Props, Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 93 (Alaska 2008). The *Whittier* Court further supported its conclusion by noting that, as is the case with the American Manufacturers Policy, "the exclusion for 'Damage to Property' under Coverage A states that 'Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."'" *Id.* at 93, n.44.

## III.   THE PERSONAL INJURY COVERAGE PART DOES NOT PROVIDE COVERAGE FOR POLLUTION CLAIMS

The "personal and advertising injury" coverage part in the American Manufacturers Policy, by its clear terms, provides coverage only for specifically enumerated offenses that pertain, as the provision's name explains, to personal injury. There is no loophole in that coverage part through which to create coverage for the underlying actions. The environmental claims in the underlying actions plainly do not constitute the enumerated offenses of "wrongful eviction from," "wrongful entry into," or "invasion of the right of private occupancy" "by or on behalf of its owner, landlord or lessor." These offenses require purposeful acts intended to infringe on a *possessory* interest in property. This type of coverage is designed to cover claims arising from the improper physical entry of a *person* onto property owned or occupied by another (*e.g.*, in the landlord-tenant context), not the costs of cleaning up pollution. The clear terms of the

16

personal and advertising injury provision simply do not apply to environmental contamination claims.

The personal injury provision, by its very terms, covers only those offenses that are explicitly enumerated in the policy.  It does not operate as a general grant of coverage for unrestricted liability.[7]  Unlike general liability coverage for "bodily injury" or "property damage," personal injury coverage is "buil[t] from the ground up:  It affords coverage only for defined risks."  *Martin v. Brunzelle*, 699 F. Supp. 167, 171 (N.D. Ill. 1988); *accord Puritan Ins. Co. v. 1330 Nineteenth Street Corp.*, No. 83-2224, 1984 U.S. Dist. LEXIS 18477 at * 11-12 (D.D.C. March 19, 1984) (personal injury coverage "does not contain a general promise of coverage but specifies coverage-triggering offenses"). *See generally,* 7A J. Appleman, *Insurance Law* § 4501.14 (1978).[8]

None of the underlying claims against Hanna Steel allege the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

---

[7] *See, e.g., Am. & Foreign Ins. Co v. Church Schs.  in the Diocese of Va.*, 645 F. Supp. 628 (E.D. Va. 1986) (personal injury coverage applies only to claims arising out of the torts listed); *Hamlin v. W. Nat'l Mut. Ins. Co.*, 461 N.W.2d 395 (Minn. Ct. App. 1990) (same); *Liberty Bank of Mont. v. Travelers Indem. Co.*, 870 F.2d 1504 (9th Cir. 1989) (same); *Nichols v. Am. Employers Ins. Co.*, 412 N.W.2d 547, 551 (Wis. Ct. App. 1987) (policyholder's contention that personal injury coverage applied to actions other than the specific torts enumerated in the policy would lead to "absurd results").

[8] Courts asked to expand personal injury coverage beyond the enumerated offenses have repeatedly recognized its narrow scope.  *See, e.g., Toombs NJ, Inc. v. Aetna Cas. & Sur. Co.*, 591 A.2d 304 (Pa. Super. Ct. 1991) (no coverage for breach of contract); *Lazzara Oil Co. v. Columbia Cas. Co.*, 683 F. Supp. 777 (M.D. Fla. 1988), *aff'd*, 868 F.2d 1274 (11th Cir. 1989) (table) (antitrust violations and breach of contract do not amount to eviction); *Aetna Cas. & Sur. Co. v. First Sec. Bank*, 662 F. Supp. 1126 (D. Mont. 1987) (libel, slander and defamation does not include wrongful termination of employment); *Nichols v. Great Am. Ins. Cos.*, 169 Cal. App. 3d 766 (1985) (no coverage for airwaves piracy); *Harbor Ins. Co. v. Cent. Nat'l Ins. Co.*, 165 Cal. App. 3d 1029 (1985) (no coverage for malicious prosecution).  The terms used in personal injury endorsements are specific offenses established under common law and cannot be considered ambiguous.  *See e.g., Martin*, 699 F. Supp. at 171 (personal injury provisions are "clear and unambiguous"); *Harbor Ins. Co. v. Anderson Leasing, Inc.*, No. CIV.A. 87C-DE-18, 1989 WL 112532 (Del. Super. Ct. Sept. 27, 1989); *Larson v. Cont'l Cas. Co.*, 377 N.W.2d 148 (S.D. 1985); *Patterson v. Reliance Ins. Cos.*, 481 A.2d 947, 949 (Pa. Super. Ct. 1984).  Thus, the underlying claims against Hanna Steel in the *Lowery*, *Aaron*, and *Allen* cases simply are not within the specifically enumerated offenses under the "personal injury" provision.

dwelling or premises that a person occupies by or on behalf of its owner, landlord or

lessor." Because such claims based on environmental offenses are not made in the

underlying actions, there is no coverage. *See Gregory v. Tenn. Gas Pipeline Co.*, 948

F.2d 203, 209 (5th Cir. 1991) (no coverage for PCB contamination claims because

"personal injury" provision only applies to "enumerated risks specifically assumed"); *see*

*also City of Delray Beach v. Agric. Ins. Co.*, 85 F.3d 1527 (11th Cir. 1996)

(environmental contamination does not allege "wrongful entry"); *Titan Corp. v. Aetna*

*Cas. & Sur. Co.*, 22 Cal. App. 4th 457 (1994) (personal injury provision does not provide

coverage for injury to realty); *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946

(N.Y. 1994) (where the complaint alleged only "continuing trespass" and "continuing

nuisance," the court found that these allegations were not among the enumerated offenses

covered by the personal injury endorsement).

Moreover, because they require purposeful acts aimed at the infringement of a

*possessory* interest in property, it is clear that "wrongful entry" and "invasion of the right

of private occupancy" do not include environmental contamination claims. The

American Manufacturers Policy includes a modifier limiting coverage for "wrongful

entry" to situations in which that offense was committed "by or on behalf of [the

property's] owner, landlord or lessor," which further reinforces the focus on possessory

interests.[9] Here, the underlying claimants have not been dispossessed of their property

---

[9] Plainly, the enumerated offenses refer only to harm to persons arising from entry onto a tenant's property
with the intent to dispossess the tenant of its property rights. *See, e.g., County of Columbia,* 634 N.E.2d at
950 (holding that wrongful entry and invasion of the right of private occupancy are limited to liability for
*purposeful* acts aimed at dispossession of real property by someone asserting an interest therein); *Buell*
*Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 510-511 (Conn. 2002) ("personal injury
provisions were intended to reach only intentional acts by the insured" and thus did not provide coverage
for pollution-related claims); *Toombs NJ, Inc.,* 591 A.2d at 309 (terms "wrongful entry" and "other
invasion of the right of private occupancy" require landlord-tenant context). Indeed, the wrongful entry
offense arises virtually exclusively within the landlord-tenant context, as the personal injury provision

interests by Hanna Steel acting in a capacity as landlord, owner or lessor.  Quite simply, the elements of a cause of action for wrongful entry are not and cannot be alleged.  Thus, the "personal injury" provision does not apply.

Unsurprisingly, courts across the country have repudiated attempts by policyholders to distort the personal injury provisions into coverage for pollution-related injuries.  Courts in twenty-eight states have concluded that the "personal injury" provision simply does not apply to environmental contamination claims.[10]  For instance, the Connecticut Supreme Court has ruled that the "personal injury" provision does not cover environmental pollution claims.  *Buell Indus.*, 791 A.2d 489.  In doing so, the court rejected the policyholder's arguments, as Hanna Steel argues here, that its pollution of neighboring properties could constitute a "wrongful entry…or other invasion of the right of private occupancy."  *Id.* at 509. The Connecticut high court explained that the "policies clearly were intended to exclude costs for pollution related claims . . . , and we

---

indicates.  *See, e.g., Decorative Ctr. v. Employers Cas. Co.*, 833 S.W.2d 257, 263 (Tex. Ct. App. 1992) ("other invasion of the right of private occupancy" does not apply outside landlord-tenant context); *Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co.*, 91 F.3d 278, 288 (1st Cir. 1996) ("wrongful entry" and "other invasion of the right of private occupancy" only encompass wrongful conduct by a landlord against its tenant).

[10] *See, e.g, Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App. 4th 1472 (1995) (petroleum); *Buell Indus. Inc. v. Greater N.Y.  Mut. Ins. Co.*, 791 A.2d 489 (Conn. 2002) (hazardous waste); *City of Delray Beach v. Agric.  Ins. Co.*, 85 F.3d 1527 (11th Cir. 1996) (environmental contamination); *Truitt Oil & Gas Co., Inc. v. Ranger Ins. Co.*, 498 S.E.2d 572 (Ga. Ct. App. 1998) (gasoline leaks from underground storage tanks); *Dryden Oil. Co. v. Travelers Indem. Co.*, 91 F.3d 278 (1st Cir. 1996) (environmental contamination); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919 (8th Cir. 1998) (TCE contamination); *County of Columbia v. Cont'l Ins. Co.*, 634 N.E.2d 946 (N.Y. 1994) (hazardous waste); *TerraMatrix, Inc. v. U.S. Fire Ins. Corp.*, 939 P.2d 483 (Colo. Ct. App. 1997) (ammonia gas); *Titan Corp. v. Aetna Cas.  & Sur. Co.*, 22 Cal. App. 4th 457 (1994) (TCE contamination; hazardous waste); *County of Kent v. Home Ins. Co.*, 551 N.W.2d 424 (Mich. Ct. App. 1996) (hazardous waste); *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015 (6th Cir. 1995) (environmental contamination); *Columbia Nat'l Ins. Co. v. Pacesetter Homes, Inc.*, 532 N.W.2d 1 (Neb. 1995); *U. S. Bronze Powders, Inc. v. Commerce & Indus. Ins. Co.*, 679 A.2d 674 (N.J. App. Div. 1996) (hazardous wastes; copper sulphates); *J. Josephson, Inc. v. Hartford Ins. Group*, 679 A.2d 1206 (N.J. App. Div. 1996) (hazardous waste).

will not stretch the personal injury provisions to cover a claim that another area of the policy clearly excludes." *Id.* at 510.

Similarly, New York's highest court held that personal injury coverage "is not available to injuries arising from pollution-generated property damage." *County of Columbia*, 634 N.E.2d at 950. In that case, where the complaint alleged "continuing trespass" and "continuing nuisance," the court found that these allegations were not among the enumerated offenses in the "personal injury" provision, which extended only to the policyholder's purposeful acts. *Id.*

Most recently, the Alaska Supreme Court rejected a policyholder's argument that trespass claims against it stemming from gasoline that leaked onto neighboring properties somehow triggered the personal injury liability coverage part. *Whittier*, 185 P.3d at 94. The court held that "[r]egardless of whether there was a valid pollution exclusion added to Coverage B [the personal injury coverage part], there is no coverage for the trespass claims under Coverage B" because the policyholder was not "the owner, landlord, or lessor of the [claimant's] property." *Id.* The court further held that "because accepting [the policyholder's] interpretation of Coverage B would render the pollution exclusion in Coverage A meaningless, we are persuaded by the reasoning of other courts rejecting similar attempts to use Coverage B to evade the pollution exclusion in Coverage A." *Id.*

For the persuasive reasons articulated by these numerous courts, this Court should refuse to stretch the "personal injury and advertising injury" coverage part to provide coverage explicitly barred by the pollution exclusion.

IV.   **DISCOVERY AND USE OF EXTRINSIC EVIDENCE IS INAPPROPRIATE AND IRRELEVANT.**

Alabama law does not permit consideration of extrinsic evidence to construe the unambiguous terms of a contract.[11]  Moreover, high courts in other states with principles of contract interpretation like Alabama have recognized that pollution exclusions like this one must be enforced as written, and that any use of extrinsic evidence or purported "drafting history" to alter their plain meaning is inappropriate.  For example, in *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania*, 653 A.2d 122 (Conn. 1995), the Connecticut Supreme Court rejected the use of extrinsic drafting history evidence to vary the terms of an absolute pollution exclusion.  Because the exclusion "unambiguously" barred coverage, "any extrinsic evidence purporting to establish that the exclusions do not exclude coverage . . . would necessarily serve to contradict or vary the exclusions, rather than provide mere interpretive gloss."  *Id.* at 135 n.22.  Likewise, the Texas Supreme Court refused to permit consideration of extrinsic evidence in the interpretation of a pollution exclusion because the contractual language was clear and unambiguous.  *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995).  Other courts agree.[12]

---

[11] *See Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.,* 817 So.2d 687, 691-92 (Ala. 2001) ("If an insurance policy is clear and unambiguous in its terms, then there is no question of interpretation or construction."); *Ross Neely Systems, Inc. v. Occidental Fire & Cas. Co. Of North Carolina*, 196 F.3d 1347, 1350 (11th Cir. 1999) ("Although this court should construe exclusions narrowly, it must not favor an insured contrary to the policy's clear meaning. . . .  Likewise, an unambiguous contract must be enforced as written.") (citations omitted).  *See also* 1 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES § 6.2 at 6-83 to 6-88 & nn. 79-81 (5th ed. 2007) (citing numerous cases, including cases involving pollution exclusions, for the proposition that "if a policy term is unambiguous, extrinsic evidence should not be admitted in order to interpret the language" and further noting that "the drafting history of a policy provision should not be considered in interpreting an unambiguous policy provision . . . [n]or should a claims manual").

[12] *See Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998) ("unless we conclude that the policy language is ambiguous, it would be inappropriate for us to consider the arguments pertaining to the drafting history of the pollution exclusion clause"); *Polaroid Corp. v. Travelers Indemnity Co.*, 610 N.E.2d 912, 916 (Mass. 1993) (refusing to consider extrinsic materials relating to unambiguous

Hanna Steel has previously suggested that this Court should consider certain extrinsic evidence or defer summary judgment pending discovery regarding the "drafting history" of the pollution exclusion so that Hanna Steel can seek to "create a factual issue." *See* Exh. 11 (Docket No. 85).  Hanna Steel has pointed to a treatise written by Eugene R. Anderson, in which Mr. Anderson purportedly cites to a Kemper Group underwriting manual as indicating that the pollution exclusion does not apply to claims falling within the products-completed operations hazard. *Id.*[13]  Hanna Steel cannot escape the straight-forward application of the pollution exclusion based on a single selected excerpt of extrinsic evidence, especially an advocate's attempt to create coverage where none exists. *See, e.g. Abston*, 967 So.2d 705 (noting that "[i]f the [pollution exclusion] clause is unambiguous, then this Court must enforce the terms of the insurance policy as written" and rejecting the policyholder's attempted reliance on his subjective expectations of coverage, which conflicted with the unambiguous pollution exclusion in the policy).  As noted above, Alabama law does not permit consideration of extrinsic evidence to construe the unambiguous terms of a contract.  As discussed above, the pollution exclusion in Hanna Steel's policy is clear and unambiguous as applied to the facts of this case.

---

pollution exclusion and striking policyholder *amicus curiae* briefs offered solely on that issue); *Lumbermens Mutual Casualty Co. v. Belleville Industries, Inc.*, 555 N.E.2d 568, 572-73 (Mass. 1990) (finding pollution exclusion unambiguous and therefore refusing to consider drafting history and other extrinsic evidence), *cert. denied*, 502 U.S. 1073 (1992); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 742 (Wash. 2005) ("Where, as here, the exclusion unambiguously applies to the facts of the case at hand, the plain language must be applied without reference to extrinsic evidence regarding the intent of the parties.").

[13] This Court should reject any effort to look beyond the contract's plain terms.  Specifically, the Court should not rely on a partisan treatise written by counsel at a law firm with a long history of representing policyholder interests.  An article by an attorney who is an advocate for insureds in these types of cases, in turn characterizing an excerpt from an unknown document, is not "evidence" at all.

Moreover, an even-handed review of extrinsic materials would make clear that the pollution exclusion at issue was intended to broadly exclude pollution risks from liability coverage, whether the coverage was for general or product risks.  Courts, commentators, policyholders, and insurers alike have described newer pollution exclusions as "total" and "absolute" pollution exclusions  – distinguishing these pollution exclusions from earlier ones, which contained narrow exceptions for "sudden and accidental" events.  *See e.g.*, *Essex Ins. Co. v. Tri-Town Corp.*, 863 F. Supp. 38, 40 (D. Mass. 1994) ("In 1985, the insurance industry dropped the 'sudden and accidental' qualifier in the standard pollution exclusion clause, thus rendering it 'absolute'".)  The newer pollution exclusions were adopted in response to judicial misinterpretation of the "sudden and accidental" clause, to which some courts had not given full effect.  *Oates v. State*, 597 N.Y.S.2d 550, 552-53 (N.Y.Ct.Cl. 1993) (stating that "[n]ot surprisingly, many insurance policies were then redrafted" in light of the judicial expansion of the 1970 pollution exclusion).

Since the incorporation of newer pollution exclusions without the "sudden and accidental" exceptions, Alabama courts, like the overwhelming weight of authority nationwide, have given effect to the straightforward insurance contract language barring coverage for bodily injury and property damage arising from the discharge of pollutants such as the discharge of gases and particulates at issue here.  *See supra* at 6-11.  This Court should not allow Hanna Steel to evade that clear exclusionary language here.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Court should grant American Manufacturers summary judgment, holding that the pollution exclusion in the Policy precludes any obligation of American Manufacturers to Penn National and/or Hanna Steel.

Dated:  October 28, 2008

Respectfully submitted,

Vernon L. Wells, II
WALSTON, WELLS & BIRCHALL, LLP
Post Office Box 830642
Birmingham, Alabama 35203
(205) 244-5200


_____*/s/ Paul A. Dame*_____
Laura A. Foggan (admitted *pro hac vice*)
Paul A. Dame (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000

*Counsel for American Manufacturers*
*Mutual Insurance Company*