IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | Civil Action Number: CV-08-J-0635-S |
| HANNA STEEL CORPORATION, ET AL, | ) ) ) ) | |
| Defendants. | ) | |

## PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY'S MEMORANDUM BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT.

COMES NOW the plaintiff, Pennsylvania National Mutual Insurance Company ("Penn National"), and files its memorandum brief in support of its motion for summary judgment:

I. **Statement of Undisputed Facts**.

1. Penn National issued policies of commercial liability insurance to Hanna Steel Corporation ("Hanna Steel") which were effective from December 1, 1992 to December 1, 1997. The policies were numbered CL9 0037301. The policies provided liability coverage for Hanna Steel subject to the terms and conditions of the policies.

(See Penn National policies, attached hereto as exhibit "A"; See also affidavit of Jim Alexander, attached hereto as exhibit "B").

2. Specifically, the policies provide as follows:

**SECTION I - COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

    \* \* \*

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

(See Penn National policies, attached hereto as exhibit "A").

3. However, the policies exclude coverage for bodily injuries or property damages arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

The policies provide the following pertinent exclusions:

**2.** **Exclusions**

This insurance does not apply to:

    a.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

    \*    \*    \*

    f.    Pollution

        (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

            (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

                (i)    "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

                (ii)    "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner of lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

* * *

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

(e) However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants

or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants";

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damages" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

(See Penn National policies, attached hereto as exhibit "A").

4. Additionally, the policies contain a Total Pollution Exclusion Endorsement, CG 21 49 01 96, which specifically provides as follows:

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part

Exclusions f. under paragraph 2., Exclusions of Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

    f.    Pollution

        (1)    'Bodily injury' or 'property damages' which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

        (2)    Any loss, cost or expense arising out of any;

            (a)    Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants.

            (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of pollutants.

> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

(See Penn National policies, attached hereto as exhibit "A").

5. Hanna Steel has been named as a defendant in several underlying state tort cases, including <u>Larry Aaron, et al v. Hanna Steel Corporation, et al</u>, Civil Action Number -07-40, filed in the Circuit Court of Jefferson County - Bessemer Division, <u>Katie Lowery, et al v. Hanna Steel, et al.</u>, Civil Action Number -05-1749, filed in the Circuit Court of Jefferson County, and <u>Ceola Allen, et al v. Hanna Steel Corporation, et al</u>, Civil Action Number -04-79, filed in the Circuit Court of Jefferson County - Bessemer Division. (See <u>Allen</u>, <u>Lowery</u>, and <u>Aaron</u> complaints, attached hereto as exhibits "C", "D" and "E" respectively).

6. As a result, Hanna Steel has filed claims for coverage under its liability policies issued by Penn National as a result of those underlying state lawsuits filed against it.

7. The Allen lawsuit alleges Hanna Steel is liable for damages, including bodily injury and damage to property, as a result of discharging "particulates and/or gases and other harmful chemicals and/or pollutants into Jefferson County, Alabama, and into the air, soil, surface water and/or ground water in, on and/or adjacent to the plaintiffs' properties located in Jefferson County, Alabama, and into the plaintiffs' bodies and, because defendants have negligently or willfully allowed said substances to remain in said areas." (See Allen complaint, attached hereto as exhibit "C").

8. The Lowery lawsuit alleges Hanna Steel is liable for damages, including bodily injury and damage to property, as a result of discharging "particulates or gases into the atmosphere and into the ground water, or . . . [causing] or [contributing] to cause particulates or gases to be discharged into the atmosphere or the ground water".

The suit also contends Hanna Steel had a "duty to inspect the operations" which resulted in "particulates or gases [having] been discharged into the atmosphere and into the ground water at facilities operated" by Hanna Steel. (See Lowery complaint, attached hereto as exhibit "D").

9. The Aaron lawsuit alleges Hanna Steel is liable as a result of particulates and gases and other harmful chemicals and/or pollutants discharged into Jefferson County, Alabama during Hanna Steel's "manufacturing process or the process that [it has] supervised and controlled". (See Aaron complaint, attached hereto as exhibit "E").

10. Hanna Steel has filed claims for coverage under its liability policies with Penn National, Fireman's Fund, American Manufacturers Mutual Insurance Company, Columbia Casualty Company, and National Fire Insurance of Hartford as well as other insurers as a result of the lawsuits filed against it. (See Complaint; See also Amended Complaint).

11. Penn National filed this action on April 10, 2008 seeking declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 2201, *et seq.* and 28 U.S.C.A. §§ 1332, 1333. (See Complaint; See also Amended Complaint).

12. Penn National and some other insurers are providing a defense for Hanna Steel under a reservation of rights; however, it is Penn National's position that Hanna Steel is not entitled to liability coverage for defense or indemnity for any claims that may be asserted against it as a result of discharging pollutants into the environment as described in each underlying lawsuit. Penn National has denied Hanna Steel's claims for coverage under the liability policies.

## II. **Standard of Review.**

A motion for summary judgement is due to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment. Hayes v. City of Miami, 52 F.3d 912, 921 (11th Cir. 1995).

The summary judgment movant bears the initial burden of showing the court, by reference to the record, that no genuine issues of material fact exist to be determined at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The movant meets this burden by showing that there is an "absence of evidence to support the non-moving party's case." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593 (11th Cir. 1995).

Once this initial burden is met, the other party must go beyond the pleadings and by its own sworn evidence designate specific facts showing that there is a genuine issue for trial. See Id. at 593-594. It is well settled that only disputes concerning those facts which may affect the outcome of the action under applicable law will preclude summary judgment, disputes of irrelevant or unnecessary facts will not be considered. See Anderson at 248.

Without any doubt, Penn National is due summary judgment in this case as there are no genuine issues of material fact. The Penn National policies unequivocally exclude coverage for bodily injuries and property damage caused by pollutants as alleged in the underlying state tort claims.

### III. Argument.

**A. Exclusion Provisions and the Total Pollution Exclusion Endorsement Provided in the Penn National Policies Preclude Coverage for the Underlying State Tort Actions Filed Against Hanna Steel as a Matter of Law.**

In an effort to avoid repetitious filings, Penn National hereby adopts and incorporates by reference those arguments and caselaw cited in Fireman's Fund Insurance Company's ("Fireman's Fund"), National Fire Insurance Company of Hartford's ("NFIC") and American Manufacturers Mutual Insurance Company's ("AMMI") briefs in support of their respective joinder and motions for summary judgment and responsive filings as they apply to the Penn National policies. (Documents 77, 76, 78, 86, 90, 101).

Additionally, it should be noted that the unambiguous language of the Penn National policies provide that "this insurance does not apply to: 'bodily injury' or 'property damages' which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." (See Penn National policies, attached hereto as exhibit "A").

It is well-settled that in the absence of statutory provisions to the contrary, insurers have the right to limit their liability by writing policies with narrow coverage. Porterfield v. Audubon Indem. Co., 856 So.2d 789, 800 (Ala. 2002). If there is no ambiguity, courts must enforce insurance contracts as written and cannot set aside express provisions in a policy, including exclusions from coverage. Johnson v. Allstate Ins. Co., 505 So.2d 362 (Ala. 1987).

Similar total pollution exclusions as those contained in the Penn National policies have been upheld as clear and unambiguous by federal district courts, including by application of Alabama law. See Haman, Inc. v. St. Paul Fire & Marine Ins. Co., 18 F.Supp2d 1306, 1308-1309 (N.D. Ala. 1998); See also Kruger Commodities, Inc. v. U.S. Fidelity & Guar. Co., 923 F.Supp. 1474, 1477-1480 (M.D. Ala. 1996); Shalimar Contractors, Inc. v. American States Ins. Co., 975 F.Supp. 1450, 1457 (M.D. Ala. 1997); Federated Mutual Ins. Co. v. Abston Petroleum, Inc., 967 So.2d 705 (Ala. 2007).

Indeed, the Alabama Supreme Court recently addressed in Abston Petroleum the applicability of an absolute or total pollution exclusion provision, concluding that its application is dependent upon the "affirmative confluence" of three separate factors:

(1) the bodily injury or property damage in question must have been caused by exposure to a pollutant;

(2) that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted waste; and

(3) the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of pollutants at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed as waste.

Abston Petroleum at 708. (Ala. 2007) (citing Porterfield v. Audubon Indem. Co., 856 So.2d 789, 801 (Ala. 2002).

In Abston Petroleum, the Alabama Supreme Court addressed whether gasoline leaked from underground storage tanks qualified as a "pollutant" under a total pollution exclusion provision, determining that it precluded recovery for associated bodily injury and property damage claims. The Abston Petroleum court held that gasoline was clearly a "pollutant" under the terms of the total pollution exclusion provision. Under the Abston Petroleum policy, "pollutant" was defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste." Abston Petroleum at 711.

Moreover, the court determined that the total pollution exclusion was unambiguous where the policy precluded bodily injury and property damages "arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . [a]t or from any tank, piping, pumps, or dispensers at premises, sites or locations . . . which are or were at any time owned, leased, installed, removed, tested, repaired or filled by or on behalf of any insured . . . which contain, transport or disperse . . . motor fuels." Abston Petroleum at 710-711.

Specifically, the Alabama Supreme Court noted that gasoline, as a substance, in connection with claims for "property damage" and "bodily injury", satisfied the definition of a pollutant under the terms of the total pollution exclusion. See Abston Petroleum, 967 So.2d 705 (Ala. 2007).

Even still, Alabama courts have historically held that pollution exclusions within liability policies, irrespective of whether absolute or qualified, preclude coverage for "industrial related pollution" damages, strikingly similar to those alleged in the underlying state tort cases. See Molton Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co., 347 So.2d 954 (Ala. 1977) (where qualified pollution exclusion applied to preclude coverage for the discharge of industrial refuse and foreign matter into environment); See also Hicks v. American Resources Ins. Co., 544 So.2d 952 (Ala. 1985) (where pollution exclusion precluded coverage for contaminated water supply associated with runoff and seepage, etc. of acids, alkalis, and toxic chemicals).

Clearly, the contentions contained in the underlying state tort actions against Hanna Steel fall under the exclusion provisions and total pollution exclusion endorsement of the Penn National policies. Here, the underlying state plaintiffs contend Hanna Steel discharged "harmful chemicals and pollutants" from its manufacturing plant in Jefferson County, Alabama which caused them bodily injuries and property damages by way of exposure to those particulates, gases and other harmful chemicals.

Such allegations fall squarely within the exclusion provisions and total pollution exclusion of the Penn National policies and, accordingly, summary judgment is due in favor of Penn National.

## B. Conclusion.

WHEREFORE, Penn National requests this court grant it summary judgment on all claims it asserts in this declaratory judgment action and declare it does not owe Hanna Steel a duty to defend nor indemnify it from any claims asserted in the underlying state tort actions.

*/s/ Larry Bradford*

R. Larry Bradford, Attorney for Plaintiff,
Pennsylvania National Mutual Insurance Company
Attorney Bar Code: asb-8038-f64r

OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216
(205)871-7733
lbradford@bradfordsears.com

# CERTIFICATE OF SERVICE

I hereby certify that I have this the 31 day of October, 2008 served a copy of the foregoing to all attorneys of record by electronically filing and/or placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

David Hymer, Esq.
Joel M. Kuehnert, Esq.
Sarah L. Nichols, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

J. Gusty Yearout, Esq.
Yearout & Traylor, P.C.
800 Shades Creek Parkway
Suite 500
Birmingham, Alabama 35209

Lloyd W. Gathings, II, Esq.
Gathings Law
2100 3rd Avenue North
Suite 900
Birmingham, Alabama 35203

Sharon D. Stuart, Esq.
Lynn S. Darty, Esq.
Christian & Small, LLP
1800 Financial Center
505 North 20th Street
Birmingham, Alabama 35203-2607

Vernon L. Wells, II, Esq.
Vernon Walker Wells, Esq.
Walston, Wells & Birshall, LLP
1819 5th Avenue North
Suite 1100
P.O. Box 830642
Birmingham, Alabama 35283-0642

William J. Edwins, Esq.
Rivkin Radler, LLP
926 RexCorp Plaza
Uniondale, NY 11556

Laura C. Nettles, Esq.
Lloyd, Gray & Whitehead, P.C.
2501 20th Place South, Suite 300
Birmingham, Alabama 35223

Paul A. Dame, Esq.
Laura A. Foggan, Esq.
Wiley Rein, LLP
1776 K Street NW
Washington, DC 20006

Cathryn Blue Derian, Esq.
Donald W. McCormick, III, Esq.
McCormick & Associates, P.C.
1829 E Franklin Street, Suite 600
Chapel Hill, NC 27514

Greta A. Matzen, Esq.
Colliau, Elenius, Murphy, Carluccio, Kenner & Morrow
600 N Pearl, Suite 1400
Dallas, TX 75201

_____
OF COUNSEL