

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PENNSYLVANIA NATIONAL** | ) |
| **MUTUAL INSURANCE COMPANY** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **CV-08-J-0635-S** |
| | ) |
| **HANNA STEEL CORPORATION, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## RESPONSE TO AMERICAN MANUFACTURERS
## MUTUAL INSURANCE COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Hanna Steel Corporation ("Hanna Steel") respectfully submits this Response in opposition to American Manufacturers Mutual Insurance Company's (AMMIC) Motion for Summary Judgment.

## BACKGROUND

Hanna Steel responds to the numbered paragraphs in AMMIC's Motion as follows:[1]

---

[1] Hanna Steel notes that AMMIC's brief in support of its motion for summary judgment is twenty-four pages long as filed. However, contrary to the requirements of the Civil Administrative Procedures Manual for Case Management/Electronic Case Files system for this District, AMMIC appears to have used twelve point font rather than the designated fourteen point font for its brief. When AMMIC's brief is converted to fourteen point font, the length of the brief extends to approximately thirty pages total, which is in excess of the twenty-five page brief limit set in the Court's scheduling order. *See* Doc. 55. Although a motion to strike AMMIC's brief may be warranted under the District's rules and the Court's scheduling order, Hanna Steel will address the motion on its merits.

1.      Hanna Steel admits that AMMIC issued Hanna Steel an insurance policy, No. 3MH 302 294-00 (the "Policy"), designating a Policy Period from December 1, 1997 to December 1, 1998.

2.  Hanna Steel admits that the quoted language is present in the Policy. Hanna Steel denies that it excludes coverage for the Underlying Lawsuits. The quoted pollution exclusion was also modified by endorsement. *See* Policy, "Exception to Pollution Exclusion – Limited On-Premises Coverage."

3.  Hanna Steel admits that Penn National initiated this action naming some of its insurers and the lead plaintiffs in the underlying Lowery, Allen and Aaron matters (the "Underlying Lawsuits").

4.  Admitted.

4.[sic] Hanna Steel admits that AMMIC agreed to participate in providing Hanna Steel with a defense to the Underlying Lawsuits, but denies that AMMIC is actually participating in the defense.

5.  Hanna Steel admits that AMMIC filed a cross-claim against Hanna Steel and that Hanna Steel filed a Counterclaim against AMMIC.

## **ARGUMENT**

Hanna Steel coats, cuts, stamps and molds steel for use in fabricated steel buildings.  *See* Affidavit of Randall S. Raiford, Exh. A.  At least one of the other

2

defendants in the Underlying Lawsuits purchases Hanna Steel's processed steel for use as purlins in its pre-fabricated steel buildings.  *See id.*  The Underlying Lawsuits make various tort claims, including negligence, nuisance, and trespass, and include factual allegations involving particulate discharges caused by Hanna Steel's equipment while being used by other defendants.  These claims trigger AMMIC's duty to defend under the Policy and the pollution exclusion does not apply to those claims.  Alternatively, the Policy contains an ambiguity and should be construed in Hanna Steel's favor.  AMMIC's motion for summary judgment should be denied with prejudice or dismissed without prejudice pending discovery.

**A.     The Underlying Lawsuits Triggered AMMIC's Duty to Defend**

An insurer has a broad duty to defend its insured. This duty arises out of the general principle that an ambiguous policy is to be construed liberally in favor of the insured and strictly against the insurer. *See Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005) (*citing United States Fid. & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala. 1985) (other citations omitted)).  Alabama cases have consistently held that an insurer's duty to defend is "more extensive" than its duty to indemnify. *Hartford*, 928 So. 2d at 1009.

Courts determine whether an insurer owes its insured a duty to defend primarily by looking at the allegations within the complaint.  *Id.* If the complaint

alleges an accident or occurrence within the policy's coverage, "then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *See id.* (*citing Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977) (other citations omitted)).   If the complaint is vague, then the "insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *See id.* at 1010 (*citing Blackburn v. Fidelity & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995) (other citations omitted)).

If the complaint does not, on its face, allege a covered incident, the court may consider extrinsic facts to determine whether a duty to defend exists. *Id.* This principle does not hold true for the reverse situation, as "this court has never held that, even though the allegations of a complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend." *See Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058 (Ala. 2003); *but see Hartford*, 928 So.2d at 1012 (concluding that "when the complaint supplies descriptive facts and those facts are irreconcilable with a legal theory, such as 'negligence,' asserted in the complaint, the facts, not the mere assertion of the legal theory, determine an insurer's duty to defend"). Thus, an insurer owes a duty to defend whenever the complaint alleges any covered incident

4

or the evidence in the litigation establishes a covered incident. *See id.* (*citing Acceptance ins. Co. v. Brown*, 832 So.2d 1 (Ala. 2001)); see also Bibb Allen, Alabama Liability Insurance Handbook § § 9-6 (insurer must defend if some but not all claims are covered).

Hanna Steel contracted with AMMIC to provide insurance coverage for the year December 1, 1997 through December 1, 1998 through Policy No. 3MH302294-00 (the "Policy"). AMMIC promised to provide Hanna Steel coverage against any claim asserted against Hanna Steel for bodily injury or property damage, as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. Insuring Agreement
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

*See* Policy § I, ¶ 1.

The Policy further defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Policy § V, ¶ 12. The Underlying Lawsuits include claims for bodily injury and property damage. *See* Doc. 1, Exhs. A, B, and C.

**B.      The Pollution Exclusion in AMMIC's Policy Does Not Relieve AMMIC of its Duty to Defend Hanna Steel**

The so-called absolute pollution exclusion invoked by AMMIC is anything but absolute.   Even when read broadly, it contains exceptions and gaps for coverage.   One of those gaps preserves coverage for product-related claims alleging discharges from somewhere other than the insured's premises as long as those discharges are not related to waste treatment or processing.   AMMIC's brief glosses over this possibility with citations to authorities that have enforced pollution exclusions in several contexts, but none that controls the outcome of Hanna Steel's claim.   In fact, it is telling that *none* of the opinions cited by AMMIC involves a similar exclusion and claims of product-related discharges away from the insured's premises.   Indeed, much of the authority cited by AMMIC interprets policy language that is significantly different from Hanna's policy with AMMIC.

6

For example, in *Molton Allen and Williams, Inc. v. St. Paul Fire & Marine Ins. Co.*, 347 So. 2d 95, 99 (Ala. 1977) and *United States Fidelity and Guaranty Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985), the court interpreted older versions of the pollution exclusion that did not contain the site-specific limitations in AMMIC's version of the pollution exclusion.  *See also Haman, Inc. v St. Paul Fire and Marine Ins. Co.*, 18 F. Supp. 2d 1306, 1308 & n.2 (N.D. Ala. 1998) (involving an exterminator whose insurance policy contained a different form of the pollution exclusion that did not contain the site-specific language in AMMIC's pollution exclusion).

Likewise, in *Federated Mut. Ins. Co. v. Abston*, 967 So. 2d 705, 706 (Ala. 2007), the policy at issue contained a pollution exclusion that explicitly applied to "tanks, piping, pumps, or dispensers."  *Abston*, 967 So. 2d at 709.  The insured owned and maintained tanks, piping, and pumps, from which gasoline allegedly seeped onto adjacent property owned by the underlying Plaintiffs.  *Id.* at 706.  *See also Kruger Commodities, Inc. v. United States Fidelity and Guaranty*, 923 F. Supp. 1474, 1476 (M.D. Ala. 1996) (involving underlying claims that arose from alleged damage caused by odors emanating **from the insured's animal processing facility**); *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 801 (Ala.

2002) (wherein the underlying claims involved allegations of lead poisoning in a residential apartment complex **owned by the insured**).[2]

In its motion, AMMIC simply chooses to ignore these critical distinctions in the policy language and facts in the opinions it cites.  Regardless of how AMMIC would like to characterize the claims made against Hanna in the Underlying Complaints, it cannot avoid coverage by ignoring claims that are actually made against Hanna.  The pollution exclusion at issue here does not apply to allegations that Hanna Steel's products or activities caused discharges of particulates unrelated to waste disposal and away from its own property. *See Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789 (Ala. 2002) (*reh'g denied* March 7, 2003).  The claims made against Hanna in the Underlying Lawsuits include exactly the kinds of allegations that fall outside the scope of the pollution exclusion.

There can be no dispute that the claims in the Underlying Lawsuits are not limited to allegations of pollution on or from Hanna Steel's property.  In fact,

---

[2] Other cases cited by AMMIC are similarly distinguishable.  *See Hicks v. American Resources Insurance Company*, 544 So. 2d 952, 953 (Ala. 1989) (underlying claims involved alleged release of pollutants from a body of water **on the insured's property**); *Crabtree v. Hayes-Dockside, Inc.*, 612 So. 2d 249, 250 (La. Ct. App. 1992) (underlying plaintiffs claimed they were injured by PVC dust migrating onto their property **from the insured's nearby warehouse**); *O'Brien v. American Employers Ins. Co.*, 629 A.2d 957, 959 (Pa. Super. Ct. 1993) (underlying claim involved alleged injury from gradual migration of methane gas **from the insured's gas recovery project**).  AMMIC also cites *Norfolk S. Ry. Co. v. Roberts*, 1996 WL 931575 (N.D. Ala. 1996), but the opinion in that case has been withdrawn from publication by the court and is not available for examination.

8

AMMIC all but admits that the product-related claim in the Underlying Lawsuits is outside the scope of Paragraph (1)(a) of the pollution exclusion because that claim is not tied to Hanna Steel's premises.[3]  In an effort to avoid the clear implications of the assertion of the products-related claims against Hanna, AMMIC makes the erroneous argument that the product-related claim is excluded by Paragraph (1)(c) of the pollution exclusion.  The problem with this argument is that Paragraph (1)(c) is, by its terms, limited to waste-related claims.

Paragraph f(1)(c) of the Policy's pollution exclusion states as follows:

This insurance does not apply to:

* * *

f. Pollution

---

[3] AMMIC's pollution exclusion begins as follows:

This insurance does not apply to:

* * *

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

*See* Policy, § 1, ¶ 2.f.1.a.

9

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

* * *

c) Which were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

The product-related allegations in the Underlying Lawsuits make no reference whatsoever to waste transport, handling, storage, treatment, disposal, or processing. As AMMIC has acknowledged, the allegation is that Hanna Steel "manufactured equipment that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere, or was under a duty to design, or to review the design of equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere, or has been under a duty to inspect the operations of one or more of the defendants." *See* Doc. 1, Exh. A ¶ 4.[4]

_____

[4] AMMIC notes that these specific products-related allegations are not specifically made against Hanna Steel in the current *Lowery* Complaint. The mere fact that the products specific count in *Lowery* is not currently made against Hanna Steel is not dispositive of whether the pollution

10

The plain language of the product-related claim gives rise to AMMIC's duty to defend and the claim is not excluded by paragraph (1)(c) of the pollution exclusion, quoted above.   That sub-paragraph applies only to waste processing activities, but AMMIC can point to nothing in the products-related claim to suggest that the claim is limited to waste processing.   Without such an explicit limitation in the Underlying Lawsuits, there is no basis for AMMIC's reliance upon Paragraph (1)(c) of the pollution exclusion to deny coverage for Hanna Steel.   *See Pro-Tech Coatings, Inc. v. Union Standard Ins. Co*., 897 S.W.2d 885, 890 (Tex. App. Dallas 1995) (paragraph 1.c. did not bar claims against manufacturer-distributor of various coating products because underlying plaintiffs did not allege that their injuries involved waste "handling, storage, disposal or treatment.").

AMMIC's argument that Paragraph (2)(a) of the Pollution Exclusion bars coverage for the Underlying Lawsuits is also without merit.   Paragraph (2)(a) is

---

exclusion applies. Indeed, the factual premise for all of the claims against Hanna Steel goes far beyond pollution from Hanna Steel's facility. The *Lowery* Complaint does include an allegation that Hanna, as well as other defendants, allegedly discharged particulates or gases "at facilities operated by the named defendants . . . ." *See* Plaintiffs' Third Amended Complaint in *Lowery*, at paragraph 4. The Complaint also alleges, however, that "[e]ach defendant, named and fictitious, has discharged particulates or gases into the atmosphere and into the ground water; or has caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water; or has been under a duty to inspect the operations of one or more of the other defendants." *Id.* Plainly, by making these separate allegations, plaintiffs have in no way limited their claims to pollution emanating from Hanna's facility. To the contrary, the allegations encompass conduct of defendants, or even use of defendants' products, away from their facilities. Thus, the claims made against Hanna in *Lowery*, as well as *Allen* and *Aaron*, are in no way limited solely to pollution emanating from its facility.

11

limited to requests, demands, or orders requiring remediation, testing, or clean up of pollution.    The Underlying Complaints seek **<u>compensatory and punitive damages</u>** for property damage and personal injury caused by discharge of particulates.  *See* Doc. 1, Exhs. A, B, and C.  Demands for monetary damages that are unrelated to clean-up or remediation costs fall outside the language of Paragraph (2)(a).  Paragraph 2(a) cannot be the basis for a denial of Hanna Steel's claim for defense in the Underlying Lawsuits.  If any claim in the Underlying Lawsuits triggers coverage under the Policy, AMMIC must provide a defense.  *See* Bibb Allen, Alabama Liability Insurance Handbook §§ 9-6 (*citing Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570 (Ala. 1988)) ("An insurer is obligated to defend against all claims alleged against an insured even when some of those claims are not covered by the policy").

**C.    The Products-Completed Operations Hazard Provides Coverage for the Underlying Lawsuits**

Hanna Steel paid a premium for products-completed operations coverage and any exclusion that removes that coverage should be construed narrowly against the insurer pursuant to Alabama law. The Policy provides coverage for the products-completed operations hazard, which is subject to separate limits and controlled by the definitions section of the policy, as follows:

14.   a. **"Products-completed operations hazard"** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1)  Products that are still in your physical possession; or

    (2)  Work that has not yet been completed or abandoned.

Policy, § V, ¶ 14.[5]

Numerous jurisdictions have held that where claims implicate products-completed operations coverage, "absolute" pollution exclusions are overridden. *See, e.g.*, *West American Insur. Co. v. Tufco Flooring East, Inc.*, 409 S.E.2d 692

---

[5] The Policy defines "your product" as follows:

    **17. "Your product"** means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        1)  You;

        2)  Others trading under your name; or

        3)  A person or organization whose business or assets you have acquired; and

    b.  Containers (other than vehicles), materials, parts or ***equipment*** furnished in connection with such goods or products.

Policy, § V., ¶ 17. (emphasis added).

13

(N.C. App. 1991), *rev. granted*, 413 S.E.2d 555 (N.C. 1992), *rev. denied*, 420 S.E.2d 826 (N.C. 1992) (holding that the pollution exclusion at issue did not exclude coverage for liabilities resulting from contamination because it was caused by a completed operation on property owned by someone other than the insured);[6] *Kimber Petroleum Corp. v. Travelers Indem. Co.*, 689 A.2d 747, 755 (N.J. Super. App. Div. 1997) (holding that completed-operations provision of policy provided liability coverage for gasoline spilled by the insured during delivery operations and that the pollution exclusion provision of the policy did not bar coverage because the spill occurred on property not owned or rented by the insured).[7]

---

[6] Overruled on other grounds in *Gaston County Dyeing Machine Co. v. Northfield Insurance Company*, 524 S.E.2d 558 (N.C. 2000) (overruling a separate holding related to the coverage trigger method employed under North Carolina law).

[7] *See also Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310 (D.C. 2003), *vacated and reh'g granted*, 832 A.2d 752 (D.C. 2003), *vacated and remanded*, 844 A.2d 344 (D.C. 2004) (exclusion not applicable to damages caused by carbon monoxide release from malfunctioning furnace); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 3 Cal. Rptr. 3d 228, 73 P.3d 1205 (Cal. 2003) (exclusion not applicable to negligent spraying of pesticide); *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 763 N.Y.S.2d 790, 795 N.E.2d 15 (N.Y. 2003) (exclusion ambiguous and not applicable to release of paint fumes in course of painting contractor's business), *Bituminous Cas. Corp. v. Advanced Adhesive Technology, Inc*., 73 F.3d 335 (11th Cir. 1996), *reh'g and suggestion for reh'g en bank denied,* 85 F.3d 645 (11th Cir. 1996) (applying Georgia law) (held that an "absolute" pollution exclusion was ambiguous as applied to claims against the insured manufacturer arising from a purchaser's exposure to the fumes from its carpet adhesive); *Minnesota Mining and Mfg. Co. v. Walbrook Ins. Co.*, 1996 WL 5787 (Minn. Ct. App. 1996) ("absolute" pollution exclusion did not bar claims for customer's clean up costs for removal of tiny beads of radioactive material that escaped from insured's product); *Pro-Tech Coatings, Inc. v. Union Standard Ins. Co*., 897 S.W.2d 885, 890 (Tex. App. Dallas 1995) ("absolute" pollution exclusion did not bar claims against manufacturer/distributor of various coating products because underlying plaintiffs did not allege that the insured "owned, rented, or occupied" the locations

14

In stark contrast to the position taken in AMMIC's motion for summary judgment, at least one insurance coverage treatise indicates that AMMIC, a member of the Kemper group of insurers, has admitted that the absolute pollution exclusion does not bar coverage for damages falling within the scope of the products-completed operations hazard provision:

> The insurance industry has admitted, on numerous occasions, that the 'absolute' pollution exclusion does not preclude insurance coverage for damages arising out of 'products,' 'completed operations,' and 'certain off-premises discharges of pollutants.' [fn] 643 For example, in its General Liability & Commercial Umbrella Underwriting Manual, the Kemper Group has stated that the 'absolute' pollution exclusion does not apply to 'products/completed operations hazards.'  [fn] 644
>
> * * *
>
> [fn] 643 E.g., Insurance Services Office, Inc., Explanatory Memorandum, Pollution Exclusion Endorsement (1984) (on file with authors); ISO Makes the Case for the CGL Insurance Services, Inc. responds to concerns raised at The Joint Forum on ISO's Proposed CGL Policy Forms, Chicago, Illinois at 19 (Aug. 1985).
>
> [fn] 644 Kemper Group, General Liability & Commercial Umbrella Underwriting Manual § IV, ¶ 7(a), at 22.09 (on file with authors).

---

where they were allegedly exposed, or that their injuries involved waste "handling, storage, disposal or treatment."); *Clendenin Bros., Inc. v. U.S. Fire,* 889 A.2d 387, 397-99 (Md. 2006) ("absolute" pollution exclusion did not bar coverage for alleged injuries caused by welding rods manufactured by insured).

15

Eugene R. Anderson, et al., Insurance Coverage Litigation, 2d ed. (Aspen Law & Business 2000) (ISBN: 073551173X 9780735511736, OCLC: 42813025) (Emphasis added) ("Anderson treatise").

AMMIC's admission is consistent with statements made by the Insurance Services Office, Inc., ("ISO"), to regulators as it sought approval for the "absolute" pollution exclusion in 1985, as follows:

> The exclusion does not apply to damages arising out of products or completed operations nor to certain off-premises discharges of pollutants.

Barry Fleishman, "Absolute Pollution Exclusion? 'Not,' Say the Courts," *Coverage*, Volume 14, No.2, March/April 2004 (quoting Record of Official Action of the State Board of Insurance [Texas], Feb 19, 1985).[8]

---

[8] Industry representatives continued to make similar representations about the scope of the so-called "absolute" pollution exclusion.  In ISO's "Workbook: Policy Forms and Endorsements (1985)," the industry organization of which AMMIC (or Kemper) is a number, stated "[t]here is some coverage for off-site emissions, including the product/completed operations exposure." Lorelie S. Masters, et al., "Beware of 'Absolutes': 'Absolute' or 'Total' Pollution Exclusions Should Not Bar Insurance Coverage of Product Claims Against Pesticide Manufacturers", Pesticides, Chemical Regulation, and Right-to-Know Committee Newsletter of the ABA Section of Environment, Energy, and Resources, Vol. 2, No. 2, May 2001.  ISO's Commercial Casualty Division's manager testified to the New Jersey State Insurance Department that "[The purpose of the change in policy language] is to introduce a complete on-site emission and partial off-site exclusion for some operations.  For some operations.  It is not an absolute exclusion." Lorelie S. Masters, et. al. (quoting Transcript of Proceedings, *Hearing on the Proposed Exclusion of Sudden and Accidental Pollution Coverage from General Liability Policies*, New Jersey Dep't of Ins., at 15 (Dec. 18, 1995)).  A vice-president of Government Affairs for the Crum & Forster insurance company testified that the absolute pollution exclusion "does have significant coverage for completed operations and product liability in certain off-site discharges."  *Id*. (quoting Transcript of Proceedings, supra, at 31).  The Illinois Supreme Court examined some of this in

In light of the foregoing, this Court should reject AMMIC's contrary position that the absolute pollution exclusion here bars coverage under the Policy's products-completed operations hazard provision.  That provision, quoted above, provides coverage for bodily injury and property damage arising out of Hanna Steel's products or work unless the product is still in Hanna's possession or the work has not yet been completed.  AMMIC can point to nothing within the products-related allegations of the Underlying Lawsuits to suggest that the narrow limitations delineated in the products-completed operations hazard provision bar coverage.

Alternatively and at a minimum, the foregoing demonstrates that an ambiguity is created by the presence of products-completed operations coverage and a pollution exclusion that is limited to claims arising from pollution on or from the insured's premises or elsewhere in the context of waste handling.  That ambiguity should be resolved in favor of Hanna Steel.  Bibb Allen, Alabama Liability Insurance Handbook §§ 3-6(a) through (c) (citing *Burnham Shoes, Inc. v. West Am Ins. Co.*, 504 So. 2d 238 (Ala. 1987)). If the Court determines that

---

*American States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 494, 687 N.E.2d 72 (1997), in which the Court held that the "absolute" pollution exclusion should not apply to a claim for damage caused by a carbon monoxide-emitting furnace.  *See also West American Ins. Co. v. Tufco Flooring East, Inc.*, 409 S.E.2d 692, 699 (N.C. App. 1991) (considering drafting and regulatory history and holding claims for damage caused by vapors released by flooring surface were not barred by "absolute" pollution exclusion).

17

extrinsic evidence should be considered in resolving the ambiguity, the above-quoted excerpt from the Anderson treatise demonstrates the need for discovery prior to summary judgment. *Id.* at § 3-6 (d).

Moreover, as discussed in detail in Section B above, the absolute pollution exclusion does not apply to the product-related claims made in the Underlying Lawsuits. AMMIC's policy could exclude claims related to the transport, handling, storage, treatment, disposal, or processing, of pollutants ***as waste***. The product-related claims in the Underlying Lawsuits contain no allegations that come close to describing waste transport, handling, storage, treatment, disposal, or processing. *See, e.g., Pro-Tech*, 897 S.W.2d at 890. AMMIC's argument on this point relies on a fanciful embellishment of the Underlying Claims. AMMIC should not be allowed to avoid its defense obligations by fabricating specificity that suits its needs where the underlying claims are general.

**D.     The Trespass and Nuisance Claims in the Underlying Lawsuits Are Covered Under Personal Injury Provisions of the Policy**

It is undisputed that the pollution exclusion in the Policy is not applicable to the "Coverage B" section of the Policy. Those provisions include the following language:

SECTION I – COVERAGES

18

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

   * * *

In Section V of the Policy, "personal injury" is defined as follows:

   "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

   * * *

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

On the face of the complaints in the Underlying Lawsuits, plaintiffs' claims for trespass and nuisance clearly, and without question, fall within the definition of "personal injury" under the "Coverage B".

19

The law of trespass and nuisance in Alabama contemplates the "invasion" of property rights set out in Coverage B.  Under Alabama law, "[a]n indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property." *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946-47 (Ala. 2001) (holding that a necessary element of indirect trespass is "an invasion affecting an interest in the exclusive possession of his property").  The claims in the Underlying Lawsuits may also include direct trespass. *See Rushing*, 300 So. 2d at 97 (throwing or dumping foreign matter "directly and immediately upon the plaintiff's land" is a direct trespass).

A cause of action for nuisance under Alabama law also deals with an invasion of property rights, the right of use and enjoyment of the property. *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 529 (Ala. 1979).  "In the traditional sense, the law of nuisance applies where the invasion results in no substantial damage to the Res, but where there is interference with the use and enjoyment of one's property."  *Id.* at 529-30.

Although Alabama courts do not appear to have specifically addressed this issue, courts in other jurisdictions have equated trespass and nuisance claims to "wrongful entry" in definitions of "personal injury" similar to the one included in

20

the Policy. *See, e.g., Travelers Indemnity Co. v. Summit Corporation of America*, 715 N.E.2d 926 (Ind. App. 1999) (pollution liability constituted wrongful eviction for purposes of triggering personal injury coverage); *Great Northern Nekoosa v. Aetna Cas. & Sur. Co.*, 921 F. Supp. 401, 417-18 (N.D. Miss. 1996) (holding nuisance and trespass claims for pollutant discharges into adjacent river covered under personal injury provisions of Coverage B of the CGL policy as "wrongful entry is just another way of saying trespass"); *Hirschberg v. Lumbermens Mut. Cas.*, 798 F. Supp. 600, 604 (N.D. Cal. 1992) ( holding trespass claims for TCE contamination of property adjacent to the insured's facility were covered as personal injury under a CGL policy).

Alternatively, the phrase "occupies by or on behalf of its owner, landlord or lessor", at the end of the "personal injury" definition in the Policy, gives rise to an ambiguity. It could either mean that the party committing the tort must be an owner, landlord or lessor, or it could mean that the person occupying the injured property must be there on behalf of the property's owner, landlord or lessor. This ambiguity should be resolved in Hanna Steel's favor since the nuisance and trespass claims in the Underlying Lawsuits appear to fall within the Policy's definition of personal injury as either "wrongful entry" or "invasion of the right of private occupancy."

21

**E.      Alternatively, AMMIC's Motion Should Be Denied Without Prejudice or Continued Until the Parties Can Conduct Discovery**

As discussed above, AMMIC's motion is due to be denied because AMMIC's duty to defend was plainly triggered by the products-related claims made against Hanna Steel in the Underlying Lawsuits.  To the extent that there is any uncertainty or ambiguity regarding the scope of the exclusion found in paragraph f. of the policy, those questions must be resolved in favor of Hanna Steel.  At the very least, there is a fact issue with regard to whether the Complaint asserts a covered claim.  See Exh. A.  This Court need not go any further to deny the motion.

However, even if that were not the case, it would be inappropriate to enter summary judgment against Hanna Steel at this time, considering the current status of discovery in this matter. Rule 56(f), Fed. R. Civ. P., mandates that, at a minimum, AMMIC's motion should be denied without prejudice to afford Hanna Steel sufficient time to conduct discovery relevant to the history and scope of the exclusion found in paragraph f.

As detailed in the affidavit of David K. Pharr, filed contemporaneously herewith, Hanna Steel has not yet had the opportunity to obtain discovery relevant to the history and scope of the exclusion in paragraph f.; but Hanna Steel expects

22

that such discovery will indicate that the exclusion was never meant to apply to product-related pollution away from the insured's premises. *See* Exh. A, Affidavit of David K. Pharr. Given adequate opportunity to develop the facts concerning the history and scope of paragraph f., Hanna Steel contends such discovery will confirm a factual issue regarding the applicability of the pollution exclusion and further demonstrate that the pollution exclusion was never intended to apply to off-site discharges outside the waste disposal context. As such, the products claim made against Hanna Steel in the underlying litigation falls outside the exclusion relied upon by AMMIC, and AMMIC's motion is due to be denied. *See* Fed. R. Civ. P. 56(f).

Moreover, it would be premature to grant AMMIC's motion for summary judgment. The Complaint gives rise to a duty to defend. AMMIC's Cross-Claim asks the Court to find that there is no coverage at all for the Underlying Lawsuits in AMMIC's Policy. As a result, the resolution of this case requires more than a determination of AMMIC's duty to defend Hanna Steel in the Underlying Lawsuits. As the Eleventh Circuit held,

> Under Alabama law, an insurance company's duty to defend is separate and distinct from its duty to reimburse the insured. An insurance company's duty to defend is determined primarily from the allegations of the complaint against the insured. *United States Fidelity &*

23

> *Guar. Company v. Armstrong*, 479 So. 2d 1164 (Ala. 1985); *Ladner & Company, Inc. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100 (Ala. 1977). The determination of whether the policy extends coverage to liability of the insured arising from any particular instance, however, depends on whether the actual facts of the occurrence fit within the policy's coverage. *Armstrong*, 479 So. 2d at 1164; *Ladner & Co.*, 347 So. 2d at 100.

*Reliance Insurance Company v. Kent Corporation, Inc.*, 896 F.2d 501 (holding that the duty to defend must be determined without regard to whether the claims could ultimately be defeated, and that the indemnity obligation could not be determined until the underlying claim was adjudicated).

WHEREFORE, Hanna Steel Corporation respectfully requests the Court deny the relief sought by AMMIC in its Motion for Summary Judgment.

Respectfully submitted,


/s/David K. Pharr
One of the Attorneys for
Hanna Steel Corporation


OF COUNSEL:

David Hymer
Joel M. Kuehnert
Sarah L. Nichols
Brian M. Blythe
Bradley Arant Rose & White LLP
One Federal Place

24

1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
dhymer@bradleyarant.com
jkuehnert@bradleyarant.com
snichols@bradleyarant.com
bblythe@bradleyarant.com

David K. Pharr
Bradley Arant Rose & White LLP
188 E. Capitol Street, Suite 450
Jackson, MS 39201
Telephone: (601) 592-9924
Facsimile: (601) 592-1424
dpharr@bradleyarant.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following to all counsel of record:

s/ David K. Pharr
_____

25