FILED

2008 Nov-14  PM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PENNSYLVANIA NATIONAL** | ) |
| **MUTUAL INSURANCE COMPANY** | ) |
| | ) **JURY TRIAL DEMANDED** |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) CV-08-J-0635-S |
| | ) |
| **HANNA STEEL CORPORATION, et al.** | ) |
| | ) |
| **Defendants.** | ) |

## HANNA STEEL CORPORATION'S RESPONSE TO PENNSYLVANIA NATIONAL'S MOTION FOR SUMMARY JUDGMENT

Defendant Hanna Steel Corporation ("Hanna Steel") respectfully submits this Response in opposition to Pennsylvania National Mutual Insurance Company's ("Penn") Motion for Summary Judgment.  Penn fails to establish as a matter of law that it had no duty to defend, so the Motion should be denied.

## RESPONSE TO PENN'S "STATEMENT OF UNDISPUTED FACTS"

1.      Admitted that Penn National Mutual Casualty Insurance Company ("PNMCIC") issued the referenced policies.[1]

2. Hanna Steel admits that the quoted language is present in the Policy. Hanna Steel denies that it excludes coverage for the Underlying Lawsuits.

---

[1] There is a discrepancy between the name of the company that issued Hanna Steel's policies and the name of the company that filed this action.  For clarity and ease of reference, Hanna Steel refers to both companies as Penn throughout this response.  Hanna Steel does not waive any objection or defense that arises from this discrepancy.

3.     Hanna Steel denies that the Underlying Lawsuits contain the language in Paragraph 3, with the exception of the word "pollutants," which appears in some of the claims in the Underlying Lawsuits.   Hanna Steel admits that the Policies contain the exclusions quoted in Paragraph 3.

4.     Hanna Steel denies that the Policies contain both the exclusion quoted in Paragraph 4 and the exclusions quoted in Paragraph 3.   The two are mutually exclusive.   Hanna Steel further denies that Endorsement CG 21 49 01 96 is present in all of the Policies.   Hanna Steel further denies that the exclusion bars coverage for the Underlying Lawsuits.

5.     Admitted.

6.     Hanna Steel admits that it provided notice and tendered claims to its insurers for defense and indemnity in the Underlying Lawsuits.

7.     Hanna Steel admits that the language quoted in Paragraph 7 is present in the *Allen* complaint but denies that it is the only claim or allegation in the *Allen* complaint, which speaks for itself.

8.     Hanna Steel denies that the *Lowery* complaint contains the quote in Paragraph 8, which is heavily paraphrased.   Hanna Steel admits that the *Lowery* complaint contains claims similar to those described in Paragraph 8, but that those are not the only claims in the *Lowery* complaint, which speaks for itself.

2

9.     Hanna Steel admits that the *Aaron* complaint contains allegations such as those described in Paragraph 9 but denies that this language is an exhaustive description of the Aaron complaint, which speaks for itself.

10.    Hanna Steel admits that it has duly notified and tendered claims to the insurers listed in Paragraph 10.

11.    Hanna Steel admits that Penn filed this action on April 10, 2008.

12.    Hanna Steel denies that Penn is providing a defense under a reservation of rights.  *See* Exh. A.  Hanna Steel admits that on June 7, 2007, Penn agreed to provide Hanna Steel with a defense to the Underlying Lawsuits, but denies that Penn is actually participating in the defense.  Penn has not provided Hanna Steel with a defense since approximately March, 2008, when Penn retained its own law firm to "defend" Hanna Steel despite that firm's clear conflict of interest.

## FACTS

The Underlying Lawsuits are notice pleadings.  Among other allegations is the following:

> [Hanna Steel] manufactured equipment that, when operated by another defendant, or defendants, in a manner that was reasonably anticipated, or should have been reasonably anticipated, at the time the equipment was manufactured, has caused or contributed to cause, jointly and severally, particulates to be discharged into the atmosphere…

3

Doc. 1, Exh. A ¶ 4.[2]  Hanna Steel coats, cuts, stamps and molds steel for use in fabricated steel buildings.  *See* Affidavit of Randall S. Raiford, Doc. 117-1A.  At least one of the other defendants in the Underlying Lawsuits purchases Hanna Steel's processed steel for use as purlins in their pre-fabricated steel buildings.  *See id.*[3]

The majority of the material facts related to Penn's handling of this claim are set forth in detail in the Affidavit of Randall S. Raiford, Exh A, and Hanna Steel's Evidentiary Submission.  Those facts can be summarized as follows:

1.      On December 8, 2006, Hanna Steel duly notified Penn of the Underlying Lawsuits.  *See* Exh A.

---

[2] Penn notes that the specific products-related allegations are not specifically made against Hanna Steel in the current *Lowery* Complaint. The mere fact that the products specific allegations are not currently made against Hanna Steel in *Lowery* is not dispositive of whether the pollution exclusion applies. Indeed, the factual premise for all of the claims against Hanna Steel goes far beyond pollution from Hanna Steel's facility. The *Lowery* Complaint does include an allegation that Hanna, as well as other defendants, allegedly discharged particulates or gases "at facilities operated by the named defendants . . . ." *See* Plaintiffs' Third Amended Complaint in *Lowery*, at paragraph 4. The Complaint also alleges, however, that "[e]ach defendant, named and fictitious, has discharged particulates or gases into the atmosphere and into the ground water; or has caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water; or has been under a duty to inspect the operations of one or more of the other defendants." *Id.*  Plainly, by making these separate allegations, plaintiffs have in no way limited their claims to pollution emanating from Hanna's facility. To the contrary, the allegations encompass conduct of defendants, or even use of defendants' products, away from their facilities. Thus, the claims made against Hanna in *Lowery*, as well as *Allen* and *Aaron*, are in no way limited solely to pollution emanating from its facility.

[3] As discussed *infra*, Penn's duty to defend is based on allegations in the complaints in the Underlying Lawsuits, even if those allegations are vague or incomplete.  Hanna Steel provides these additional facts by way of background and as confirmation that the Underlying Lawsuits fall within the scope of the Policies.

4

2.     On June 7, 2007, Penn responded with a purported reservation of rights and agreement to participate in the defense of Hanna Steel by contributing an allocated portion of the costs and fees incurred by Hanna Steel's defense counsel.  *See* Exh A.

3.     Sometime before February 22, 2008, in the midst of Hanna Steel's defense of the Underlying Lawsuits, Penn reversed itself and refused to continue participating in the defense costs incurred by Hanna Steel's counsel.  *See* Exh A.

4.     On February 28, 2008, Penn informed Hanna Steel that it had retained the law firm of Spain & Gillon to handle the defense on behalf of Hanna for Penn's policy periods.  Penn said it had determined to work with Spain and Gillon on the case and that it would no longer be contributing to the fees and expenses incurred by Hanna Steel's defense counsel.  *See* Exh A.

5.     On April 10, 2008, Penn filed this action claiming that it had no coverage obligation to Hanna Steel, but that four other insurance companies that it named as Defendants were obligated to defend Hanna Steel.  *See* Doc. 1.

6.     The Complaint purported to be an attempt to confirm the obligations of the defendant insurers and terminate Penn's obligation.  *See* Doc. 1.

7.      Penn's coverage counsel assured Hanna Steel's counsel that it intended to pursue the allegations in the Complaint and prove that the insurers

named as Defendants were obligated to provide Hanna Steel with the defense in the Underlying Lawsuits.

8.     On July 17, 2008, Hanna Steel informed Penn of Hanna Steel's preference to be represented by its own independent counsel in this "mass tort" litigation. *See* Exh A.  Hanna Steel made it clear that Hanna Steel did not waive any conflict created by Spain & Gillon's relationship with Penn. *See* Exh A.

9.     At the parties planning conference in this matter, the insurers met for some length of time prior to the arrival of counsel for Hanna Steel in the Underlying Plaintiffs.

10.     When that meeting began, counsel for Penn suggested that the meeting proceed with him telling Hanna Steel and the Underlying Plaintiffs' counsel what the "good guys" (referring to all of the insurer parties) had come up with for the Scheduling Order.

11.     On August 12, 2008, Penn's coverage counsel corresponded directly to Hanna Steel (despite his full awareness that Hanna Steel was represented by counsel in this coverage litigation) and dismissively explained that Spain & Gillon understood its ethical obligations and had run a conflicts check before undertaking Hanna Steel's defense and "obviously determined that there was no conflict of interest in connection with this representation." *See* Exh B.

6

12.     On August 26, 2008, the Alabama State Bar issued an advisory opinion that Spain & Gillon had a conflict that required its withdrawal from the defense of Hanna Steel.  *See* Exh C.  The conflict was based on Spain & Gillon's current representation of Penn in coverage disputes against Penn insureds.  *See id.*

13.     On or about September 2, 2008, Spain & Gillon withdrew from its representation of Hanna Steel.

14.     From September 2, 2008, to the present, Penn has failed to provide a defense to Hanna Steel in the Underlying Lawsuits.

15.     When Fireman's Fund filed the first motion for summary judgment, and American Manufacturer's Mutual Insurance Company ("AMMIC") filed a joinder, Penn declined to substantively respond, establishing that it never intended to follow through on its misleading Complaint.  *See* Doc. 83.   Penn did not respond at all to AMMIC's motion for summary judgment, which was filed on October 28, 2008.  *See* Doc. 101.

16.     On November 10, 2008, counsel for Penn represented to this Court that it had obtained new defense counsel for Hanna Steel.  Penn has not informed Hanna Steel of any substituted counsel.  *See* Doc. 115.

7

Further discovery will reveal additional material facts.  Hanna Steel should have the opportunity to obtain paper and deposition discovery before the Court rules on Penn's motion.  Specifically, Hanna Steel should be allowed to discover the extent to which Penn or its agent(s) acted in concert with other insurers and/or counsel to make plans to deprive Hanna Steel of its insurance coverage.  Hanna Steel should also be allowed to discover whether Penn developed its coverage avoidance strategy through its coverage/defense counsel, Spain & Gillon.  Hanna Steel will conduct discovery about the handling of the Underlying Lawsuits and similar claims under the Subject Policy.  Hanna Steel will also conduct discovery on the underwriting and sale of the Subject Policy. *See* Exh D.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and…the moving party is entitled to judgment as matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment has the initial burden of demonstrating that there is no actual dispute as to any material fact in the case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether this burden has been met, the court must view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  Rule 56(f) recognizes that a motion for summary judgment should be denied or

8

continued if a party opposing the motion shows by affidavit that additional discovery is necessary before the motion should be considered.

## ARGUMENT

Hanna Steel coats, cuts, stamps and molds steel for use in fabricated steel buildings. *See* Exh A. At least one of the other defendants in the Underlying Lawsuits purchases Hanna Steel's processed steel for use as purlins in their pre-fabricated steel buildings. *See id.* The Underlying Lawsuits make various tort claims, including negligence, nuisance, and trespass, and include factual allegations involving particulate discharges caused by Hanna Steel's equipment while being used by other defendants. These claims triggered Penn's duty to defend under the Policy.

As will be demonstrated below, Penn's argument that the pollution exclusion bars coverage for the Underlying Lawsuits is incorrect. Moreover, Penn is estopped from relying upon the pollution exclusion as an alleged bar to coverage for Hanna Steel due to Penn's mishandling of Hanna Steel's coverage claim and its failure to adhere to its enhanced duty of good faith. Alternatively, the Policy contains an ambiguity and should be construed in Hanna Steel's favor. Penn's motion for summary judgment should be denied with prejudice or dismissed without prejudice pending discovery.

9

**A.      The Underlying Lawsuits Triggered Penn's Duty to Defend**

An insurer has a broad duty to defend its insured, and insurance policies are to be construed liberally in favor of the insured and strictly against the insurer. *See Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So.2d 1006, 1011 (Ala. 2005). Alabama cases have consistently held that an insurer's duty to defend is "more extensive" than its duty to indemnify. *Hartford*, 928 So. 2d at 1009.

Courts determine whether an insurer owes its insured a duty to defend primarily by looking at the allegations within the complaint. *Id.* If the complaint alleges an accident or occurrence within the policy's coverage, "then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *See id.* If the complaint is vague, then the "insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *See id*. at 1010.

If the complaint does not, on its face, allege a covered incident, the court may consider extrinsic facts to determine whether a duty to defend exists. *Id.* This principle does not hold true for the reverse situation, as "this court has never held that, even though the allegations of a complaint do allege a covered accident or occurrence, the courts may consider evidence outside the allegations to disestablish the duty to defend." *See Tanner v. State Farm Fire & Cas. Co.*, 874 So.2d 1058 (Ala. 2003). Thus, an insurer owes a duty to defend whenever the complaint

10

alleges a covered incident or the evidence in litigation establishes a covered incident. *See id.*

In return for premiums totaling $222,057.00, Hanna Steel contracted with Penn to provide liability insurance coverage for consecutive one-year periods from December 1, 1992 through December 1, 1997, through Policy Nos. CL90037301 (the "Policies").   Each of the policies had a General Aggregate Limit of $2,000,000, a Products Completed Operations Aggregate Limit of $2,000,000, a Personal and Advertising Injury Limit of $1,000,000 and an Each Occurrence Limit of $1,000,000.   Penn promised to provide Hanna Steel coverage for any claim asserted against Hanna Steel for bodily injury or property damage, as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

*See* Policy § I, ¶ 1.

The Policy further defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." Policy § V, ¶ 12. The Underlying Lawsuits include claims for bodily injury and property damage. Doc. 1, Exhs. A, B, and C.

## B.     Penn Is Estopped From Asserting the Pollution Exclusion

Penn's motion for summary judgment advances the singular position that its pollution exclusion bars coverage for the Underlying Claims.   As will be demonstrated below, this position is incorrect.   However, Penn's conduct and mishandling of Hanna Steel's claim for coverage renders this Court's consideration of Penn's coverage defense completely unnecessary.   Despite the fact that Penn acknowledged that it must handle Hanna Steel's defense in the Underlying Lawsuits with "an enhanced duty of good faith," *see* Exh B, at virtually every turn Penn has disregarded the interests of Hanna Steel, showing a greater concern for Penn's own monetary interests than for the risks placed on Hanna Steel in the Underlying Lawsuits.   These actions preclude Penn from invoking the pollution exclusion, and, therefore, Penn's motion for summary judgment is due to be denied.

"In accepting its obligation to defend its insured, the insurer does not act for itself, but is responsible for providing the insured with an attorney who owes allegiance to its insured."  7C John Alan Appleman and Jean Appleman, *Insurance*

12

*Law and Practice*, § 1481 (1979).  Further, "[w]here the insurer lacks an economic motive for vigorous defense of the insured, or the insurer and insured have conflicting interests the insurer may not compel the insured to surrender control of the litigation."  7C *Insurance Law and Practice* at § 4681 (1979).

In Alabama, if an insurance company accepts the duty to defend pursuant to a reservation of rights, it must adhere to an enhanced obligation of good faith.  *See L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298, 1303 (Ala. 1987).  In *L&S Roofing*, the Court outlined the insurer's obligations as follows:

- "First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries."

- "Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client."

- "Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company."

- "Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk."

*Id.* at 1303.

13

4/136966.2

Under Alabama law, an insurer should be prevented from denying coverage if the insurer undertook the defense of the insured and did something to prejudice the insured in the process.[4]   The Supreme Court of Alabama has specifically recognized that an insurer's failure to comply with its enhanced obligation of good faith will result in an estoppel that precludes the insurer from asserting its coverage defenses.   *See Shelby Steel Fabricators, Inc. v. United States Fid. & Guar.,* 569 So.2d 309, 312, (Ala. 1990).

In *Shelby Steel*, the court held that because the insurer and insurer-appointed defense counsel failed to keep the insured informed of developments in the underlying case, the insurer breached its enhanced obligation of good faith and was estopped from denying coverage.   *Id.*   Alabama courts have acknowledged that this principle sounds in equity as estoppel and as a separate cause of action for breach of contract.   *See State Farm & Cas. Co. v. Myrick*, 2008 WL 2020447, *3 at note 3 (M.D.Ala.) (slip copy, May 9, 2008).   In *Myrick*, the insureds alleged that the insurer failed to adequately investigate their claim, failed to settle the third party

---

[4] For example, if an insurer accepts the defense of a case without issuing a sufficient reservation of rights to its insured, it may be estopped from subsequently disputing coverage. *Home Ins. Co. v. Rice*, 585 So.2d 859 (Ala. 1991), *Burnham Shoes, Inc. v. West American Ins. Co.*, 504 So.2d 238, 241-2 (Ala. 1987).   Further, in such circumstances, Alabama Courts will presume that the insured was prejudiced by lack of notice. *Integrity Ins. Co. v. King Kutter, Inc.*, 866 F.2d 408 (11th Cir. 1989) and *Campbell Piping Contractors, Inc. v. Hess Pipeline Co.*, 342 So.2d 766, 770-71 (Ala. 1977).   Moreover, if the insurer's delay is unduly long, the presumption of prejudice will become irrefutable. *Home Ins. Co. v. Rice*, 585 So.2d 859 (Ala. 1991) (prejudice presumed from thirteen month delay).

case and refused to negotiate. *Myrick*, 2008 WL 2020447, at *4. Recognizing that the thrust of the insureds' claim was that the insurer had "placed its own financial interests above that of the [insureds] in how it handled their claim and the underlying litigation," the trial court concluded that the insureds' allegations were "more than sufficient to state a claim alleging a violation of the enhanced obligation of good faith." *Id*.

In response to the Underlying Lawsuits, Penn took more than six (6) months to make a coverage decision. During that time, Penn conducted no investigation of the Underlying Claims. After Penn finally notified Hanna Steel of its reservation of rights and decision to participate in Hanna Steel's defense, Penn would only agree to pay a fraction of Hanna Steel's costs and did not pay for its share of litigation expenses. After Penn had paid no more in defense costs than approximately one year's worth of Hanna Steel's premiums, it unilaterally decided to retain its own coverage counsel to defend Hanna Steel. Thus, Hanna Steel was forced to choose between counsel with a conflict of interest—whose ongoing representation of Penn as coverage counsel called into question its ability to place the interests of Hanna Steel first and foremost—and paying for its own defense.

Hanna Steel first learned that Penn was requiring Hanna Steel to accept Penn's selection of defense counsel when those lawyers, without any advance notice to Hanna Steel, filed notices of appearance on behalf of Hanna Steel in the

state court cases.  When Hanna Steel raised the issue of independence and potential conflicts of interests, Penn's coverage lawyers wrote a terse and conclusory response dismissing those concerns:

> . . . Frankly, defense attorneys in Alabama know that they owe a duty to the insured to exercise independent judgment for that insured and know their duties to keep the insured advised of all developments in the case.
> Spain & Gillon conducted a conflict check before agreeing to undertake the defense of Hanna Steel in these cases.  It obviously determined that there was no conflict of interest in connection with this representation. . . .

*See* Exh B.

The Alabama State Bar, however, took the situation more seriously, concluding that Spain & Gillon had to withdraw from representing Hanna Steel due to the apparent conflict of interest.  *See* Exh C.  In the more than two months since Spain & Gillon's withdrawal, Penn has failed to obtain substitute defense counsel or agree to participate in the defense provided by Hanna Steel's counsel. Although Penn has recently represented to this Court that it has obtained new defense counsel for Hanna Steel, [Doc. 115], that is simply not true.

Simply put, Penn has failed to live up to its agreement to provide a defense for Hanna Steel.  Penn attempted to impose upon Hanna Steel counsel whose ongoing representation of Penn as coverage counsel conflicted with the enhanced

16

duty of good faith to Hanna Steel.[5]   Moreover, Penn has breached its enhanced

obligation of good faith by failing to keep Hanna Steel informed of developments

relevant to policy coverage, by failing to retain competent, i.e., conflict-free,

defense counsel that represented only Hanna Steel,[6] and by demonstrating a greater

concern for its monetary interests than for the financial risk of Hanna Steel.

---

[5] Penn's retention of its coverage counsel to represent Hanna Steel in the Underlying Lawsuits is distinctly different from the conflict of interest evaluated by the court in *Aetna Cas. & Surety Co. v. Mitchell Brothers, Inc*., 814 So. 2d 191 (Ala. 2001).  In *Mitchell Brothers*, a conflict arose because the insurer sought and obtained a coverage opinion from counsel who represented the insured in unrelated matters.  *Id*. at 194, & n.6.  The court concluded that such a conflict of interest did not rise to the level of a breach of the enhanced duty of good faith where the insurer chose to ignore the advice of its coverage counsel and extend a defense under a reservation of rights.  *Id*. at 197-98.   Notably, however, unlike the present case, the conflict in *Mitchell Brothers* did not involve counsel chosen by the insurer to represent the insured.  *Id*. at 197 (noting that it was "undisputed that [the insurer] hired competent defense counsel who understood that only the insureds were his clients").

[6] The fact Hanna Steel has continued to be represented by its chosen counsel in the Underlying Lawsuits in spite of Penn's refusal to participate in the defense and attempt to appoint counsel with a conflict does not somehow absolve Penn of its conduct.  Hanna Steel and the counsel retained by Hanna Steel were forced by Penn to work with the counsel chosen by Penn—counsel whom Penn was fully aware had a conflict of interest.  In doing so, Hanna Steel was required to expend time and resources toward preparing Spain & Gillon to participate in Hanna Steel's "defense".  Until such time as Spain & Gillon withdrew due to their conflict, Hanna Steel and its counsel cooperated with Spain & Gillon, meeting with them and providing requested information.  Thus, Penn cannot now contend that no enhanced obligation of good faith exists on the grounds that Hanna Steel "controlled all aspects" of the Underlying Lawsuits and that its appointed counsel "were not allowed to participate in any way" in the defense of the Underlying Lawsuits.  *See Mitchell Brothers*, 814 So. 2d at 196-97 (noting that neither the insurer nor the insurer's appointed counsel "was allowed to participate in the negotiations which led to a settlement only one month after [the insurer] had agreed to defend under reservation of rights" and that "[w]hile the negotiations were underway, [the insured] did not respond to [the insurer's] request for information).  Indeed, in light of the evidence in the record demonstrating that Penn has already acknowledged its enhanced duty of good faith, *see* Exh B, to the extent that Penn were to make such a contention, it most certainly could not meet its summary judgment burden of demonstrating the absence of a genuine issue of material fact.

Indeed, Penn's conduct in the context of this very litigation further illustrates the point.  First, Penn filed this action claiming that it had no coverage obligation to Hanna Steel, but that four other insurance companies that it named as Defendants were obligated to defend Hanna Steel.  *See* Doc. 1.  Despite assurances from Penn's coverage counsel that Penn intended to follow through on the allegations in the Complaint and prove that the other insurers owed Hanna Steel coverage, Penn's actions demonstrate that it never intended to follow through on its misleading Complaint.  *See* Doc. 83.  Two insurer defendants have filed motions for summary judgment in this action.  Penn filed a purported response to Fireman's Fund's motion for summary judgment, but Penn declined to offer any substantive opposition to the motion.  *See* Docs. 76 and 83.  More recently, Penn did not even bother filing a response to American Manufacturer's motion for summary judgment.  *See* Doc. 101.  Thus, Penn has brought other insurance companies into this litigation under the pretense of establishing that they owe Hanna Steel coverage when in fact Penn appears disinterested in anything other than depriving Hanna Steel of coverage based on Penn's or any of the defendant insurers' policies.

Penn has acknowledged that it has an enhanced duty of good faith regarding its handling of Hanna Steel's coverage claim.  Hanna Steel has pointed this Court toward more than adequate evidence to create a genuine issue of material fact as to

18

whether or not Penn satisfied its enhanced duty.  Hanna Steel submits that the only evidence currently before this Court demonstrates that Penn did not comply with the obligations of its enhanced duty.   At a minimum, however, the evidence offered by Hanna Steel demonstrates that Penn has not satisfied its burden of proof.  Accordingly, Penn's motion for summary judgment is due to be denied.

## C.    The Pollution Exclusion in Penn's Policy Does Not Relieve Penn of its Duty to Defend Hanna Steel

Penn refers to the pollution exclusion in its Policies as an "absolute pollution exclusion."   That exclusion should be interpreted narrowly, especially if it takes away coverage provided under the products-completed operations hazard.    The exclusion only applies to pollution claims and it contains its own definition of "pollutant", as follows:

> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.   Waste includes material to be recycled, reconditioned or reclaimed.

Policies, s*ee, e.g.*, Doc. 112-2 at § 1, ¶ 2.f. [7]

---

[7] Penn's pollution exclusion begins as follows:

> f.(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

Policies, *see, e.g.,* Doc. 12-2 at § 1, ¶ 2.f.1.a.

Before this exclusion is allowed to bar Hanna Steel's coverage, there should be no doubt that **_all_** of the claims in the Underlying Lawsuits fall squarely within its terms. One of the claims in the Underlying Lawsuits alleges discharge of particulates from Hanna Steel's equipment but does not specify what particulates were allegedly discharged. Without discovery, there is no basis to conclude that all particulates are irritants or contaminants. The Underlying Lawsuits do not contain any claims at all that are based on exposure to waste. It is not surprising that Penn's brief downplays the possibility of coverage for product related claims that do not fit squarely within the exclusion.

Penn cites authorities that involved claims for contamination caused by specific substances.[8] Penn simply ignores the fact that the Underlying Lawsuits never identify the particulates that allegedly caused bodily injury and property damage. Without knowing what particulates were allegedly discharged by another defendant's use of Hanna Steel's products, Penn assumed that all of the unknown materials fit within the exclusion's definition of "pollutant."[9]

---

[8] *See, e.g., Haman, Inc. v St. Paul Fire and Marine Ins. Co.*, 18 F. Supp. 2d 1306, 1308 & n.2 (N.D. Ala. 1998) (pesticide); *Federated Mut. Ins. Co. v. Abston*, 967 So. 2d 705, 706 (Ala. 2007) (gasoline); *Kruger Commodities, Inc. v. United States Fidelity and Guaranty*, 923 F. Supp. 1474, 1476 (M.D. Ala. 1996) (animal processing odors); *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 801 (Ala. 2002) (lead).

[9] Hanna Steel acknowledges that some of the claims in the Underlying Lawsuits specify that they are based on the underlying defendants' discharge of pollutants, but the product-related allegations  that could trigger coverage under the products-completed operations hazard is not that specific.

Regardless of how Penn would like to characterize the claims made against Hanna in the Underlying Complaints, it cannot avoid coverage by ignoring claims that are actually made against Hanna.  The pollution exclusion at issue here does not apply to allegations that Hanna Steel's products or activities caused discharges of particulates unrelated to waste disposal away from its own property. *See Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789 (Ala. 2002) (*reh'g denied* March 7, 2003) (the bodily injury or property damage in question must have been caused by exposure to a pollutant).

There can be no dispute that the claims in the Underlying Lawsuits are not limited to allegations of discharge of pollutants on or from Hanna Steel's property. Therefore, Penn's motion for summary judgment is due to be denied.

**D.     The Trespass and Nuisance Claims in the Underlying Lawsuits Are Covered Under Personal Injury Provisions of the Policy**

The pollution exclusion in the Policy is not applicable to the "Coverage B" section of the Policy.  Those provisions include the following language:

SECTION I – COVERAGES

COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement

     a.  We will pay those sums that the Insured becomes legally
         obligated to pay as damages because of "personal injury" or

21

"advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

\* \* \*

In Section V of the Policy, "personal injury" is defined as follows:

"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

\* \* \*

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor.

On the face of the complaints in the Underlying Lawsuits, plaintiffs' claims for trespass and nuisance clearly, and without question, fall within the definition of "personal injury" under the "Coverage B".

The law of trespass and nuisance in Alabama contemplates the "invasion" of property rights set out in Coverage B.  Under Alabama law, "[a]n indirect trespass occurs where the trespasser releases a 'foreign polluting matter' beyond the boundaries of his property, knowing to a 'substantial certainty' that it will invade the property." *Russell Corp. v. Sullivan*, 790 So. 2d 940, 946-47 (Ala. 2001) (holding that a necessary element of indirect trespass is "an invasion affecting an interest in the exclusive possession of his property").  The claims in the Underlying

22

Lawsuits may also include direct trespass. *See Rushing*, 300 So. 2d at 97 (throwing or dumping foreign matter "directly and immediately upon the plaintiff's land" is a direct trespass).

A cause of action for nuisance under Alabama law also deals with an invasion of property rights, the right of use and enjoyment of the property. *Borland v. Sanders Lead Co., Inc.*, 369 So. 2d 523, 529 (Ala. 1979). "In the traditional sense, the law of nuisance applies where the invasion results in no substantial damage to the Res, but where there is interference with the use and enjoyment of one's property." *Id.* at 529-30.

Although Alabama courts do not appear to have specifically addressed this issue, courts in other jurisdictions have equated trespass and nuisance claims to "wrongful entry" in definitions of "personal injury" similar to the one included in the Policy. *See, e.g., Travelers Indemnity Co. v. Summit Corporation of America*, 715 N.E.2d 926 (Ind. App. 1999) (pollution liability constituted wrongful eviction for purposes of triggering personal injury coverage); *Great Northern Nekoosa v. Aetna Cas. & Sur. Co.*, 921 F. Supp. 401, 417-18 (N.D. Miss. 1996) (holding nuisance and trespass claims for pollutant discharges into adjacent river covered under personal injury provisions of Coverage B of the CGL policy as "wrongful entry is just another way of saying trespass"); *Hirschberg v. Lumbermens Mut. Cas.*, 798 F. Supp. 600, 604 (N.D. Cal. 1992) ( holding trespass claims for TCE

23

contamination of property adjacent to the insured's facility were covered as personal injury under a CGL policy).

Alternatively, the phrase "occupies by or on behalf of its owner, landlord or lessor", at the end of the "personal injury" definition in the Policy, gives rise to an ambiguity. It could either mean that the party committing the tort must be an owner, landlord or lessor, or it could mean that the person occupying the injured property must be there on behalf of the property's "owner, landlord or lessor." This ambiguity should be resolved in Hanna Steel's favor since the nuisance and trespass claims in the Underlying Lawsuits appear to fall within the Policy's definition of personal injury as either "wrongful entry" or "invasion of the right of private occupancy."

## E.   Alternatively, Penn's Motion Should Be Denied Without Prejudice or Continued Until the Parties Can Conduct Discovery

As discussed above, Penn's motion is due to be denied because Penn's duty to defend was plainly triggered by the products-related claims and the nuisance and trespass claims made against Hanna Steel in the Underlying Lawsuits. Moreover, to the extent that there is any uncertainty or ambiguity regarding the scope of the exclusion found in paragraph f. of the policy, those questions must be resolved in favor of Hanna Steel. This Court need not go any further to deny the motion.

However, even if that were not the case, it would be inappropriate to enter summary judgment against Hanna Steel at this time, considering the current status of discovery in this matter. Rule 56(f), Fed. R. Civ. P., mandates that, at a minimum, Penn's motion should be denied without prejudice to afford Hanna Steel sufficient time to conduct discovery relevant to Penn's egregious claim handling and Hanna Steel's estoppel claim.

As detailed in the affidavit of David K. Pharr, filed contemporaneously herewith, Hanna Steel has not yet had the opportunity to obtain discovery relevant to Penn's claim handling; but Hanna Steel expects that such discovery will indicate that Penn acted recklessly or intentionally to deprive Hanna Steel of the benefit of its insurance policies.  *See* Exh. D, Affidavit of David K. Pharr. Given adequate opportunity to develop the facts concerning Penn's claim handling, Hanna Steel contends such discovery will confirm a factual issue regarding its claim that Penn should be estopped from asserting the pollution exclusion as a defense to coverage. Penn's motion is due to be denied. *See* Fed. R. Civ. P. 56(f).

WHEREFORE, Hanna Steel Corporation respectfully requests the Court deny the relief sought by Penn in its Motion for Summary Judgment.

Respectfully submitted,

/s/David K. Pharr
One of the Attorneys for
Hanna Steel Corporation

25

OF COUNSEL:

David Hymer
Joel M. Kuehnert
Sarah L. Nichols
Brian M. Blythe
Bradley Arant Rose & White LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
dhymer@bradleyarant.com
jkuehnert@bradleyarant.com
snichols@bradleyarant.com
bblythe@bradleyarant.com

David K. Pharr
Bradley Arant Rose & White LLP
188 E. Capitol Street, Suite 450
Jackson, MS 39201
Telephone: (601) 592-9924
Facsimile: (601) 592-1424
dpharr@bradleyarant.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2008, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to the following to all counsel of record:

s/ David K. Pharr

_____

26

4/136966.2