FILED

2008 Dec-09  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PENNSYLVANIA NATIONAL
MUTUAL INSURANCE
COMPANY,

     Plaintiff,

vs.                                                    CASE NO. CV-08-J-0635-S

HANNA STEEL
CORPORATION, et al.,

     Defendants.

## MEMORANDUM OPINION

Pending before the court is plaintiff Pennsylvania National Mutual Insurance Company's ("Penn National") motion for summary judgment, evidence in support of said motion, and memorandum in support of its motion (doc. 112). Defendant Hanna Steel Corporation ("Hanna Steel") filed a response in opposition to plaintiff Penn National's motion for summary judgment and evidentiary submissions (doc. 119). Plaintiff Penn National filed a reply to defendant Hanna Steel's response (doc. 122). Defendant Hanna Steel filed a supplemental statement of disputed facts in opposition to plaintiff Penn National's motion for summary judgment (doc. 130).

Having considered all the pleadings and submissions, the court concludes that plaintiff Penn National's motion for summary judgment is due to be granted as no

genuine issues of material fact remain, and plaintiff Penn National is entitled to a judgment in its favor as a matter of law.

## I. Procedural History

On April 10, 2008, Penn National filed the instant declaratory judgment action against Hanna Steel and Hanna Steel's insurers[1] (doc. 1).  Ceola Allen, Katie Lowery, and Larry Aaron, the lead plaintiffs in the three underlying lawsuits filed against Hanna Steel,[2] were also named as defendants.  The declaratory judgment action seeks a declaration that Penn National policies do not provide coverage for the claims asserted against Hanna Steel in the underlying lawsuits, that Penn National does not owe a duty to defend or indemnify Hanna Steel in such suits, and that Hanna Steel's other insurers owe a defense to Hanna Steel.  Hanna Steel filed a counterclaim against Penn National (doc. 42, doc. 68, doc. 97).

## II. Factual Background

Penn National issued policies of commercial liability insurance to Hanna Steel.

---

[1]  The insurer-defendants include American Manufacturers Mutual Insurance Company, Columbia Casualty Company, National Fire Insurance Company of Hartford, and Fireman's Fund Insurance Company.  Penn National added Commerce & Industry Insurance Company through its First Amended Complaint on August 14, 2008 (doc. 60).

[2]  These underlying suits brought against Hanna Steel in the Circuit Court of Jefferson County, Alabama, include: *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, Exhibit E to Penn National's Summary Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, Exhibit D to Penn National's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, Exhibit C to Penn National's Summary Judgment.

Alexander Decl. ¶ 3, Exhibit B to Penn National's Summary Judgment. The policies were numbered CL9 0037301 and were effective from December 1, 1992 to December 1, 1997. *Id.* The policies provide coverage for bodily injury or property damage that occurs during the policy period in the amount of $1 million per occurrence, subject to a $2 million aggregate limit of liability. Policy, Commercial General Liability Coverage Part Declarations, Commercial General Liability Coverage Form, § 1, ¶ 1.a, Exhibit A to Penn National's Summary Judgment.

The policies include a pollution exclusion, stating that "[t]his insurance does not apply to:"

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally

responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

> (i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

> (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

4

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order than any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f, Exhibit A to Penn

National's Summary Judgment. The policies also include a Total Pollution Exclusion

Endorsement, numbered CG 21 49 01 96, which states as follows:

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

f.  Pollution

5

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Policy, Total Pollution Exclusion Endorsement, Exhibit A to Penn National's Summary Judgment.

       Generally, the underlying complaints in the three lawsuits against Hanna Steel allege that Hanna Steel, along with numerous other defendants, caused pollutants,

particulates, or gases to be discharged into the atmosphere, land, and/or waters, resulting in personal injury and property damage.  *See Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, ¶¶ 3-4, Exhibit E to Penn National's Summary Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, ¶¶ 4-5, Exhibit D to Penn National's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, ¶¶ 4-5, Exhibit C to Penn National's Summary Judgment.  For example, the *Aaron* complaint alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere;" (2) "manufactured equipment that has, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates or gases to be discharged into the atmosphere;" (3) "sold equipment in commerce that, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates to be discharged into the atmosphere;" (4) "[were] under a duty to design, or to review the design [of] equipment that is being used by one or more  of the named defendants, whose operations are, or have discharged pollutants into the atmosphere;" or (5) were "under a duty to inspect the operations of one or more of the other defendants."  *Aaron* Complaint, ¶ 4, Exhibit C to Penn National's Summary Judgment.  The *Allen* complaint makes identical allegations, *Allen* Complaint, ¶ 3, Exhibit E to Penn National's Summary Judgment, while the *Lowery* complaint only

alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere and into the ground water;" (2) "caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water;" or (3) were "under a duty to inspect the operations of one or more of the other Defendants." *Lowery* Complaint, ¶ 4, Exhibit D to Penn National's Summary Judgment.

All of the complaints in the underlying lawsuits then assert counts of negligence, wantonness, trespass, nuisance, and outrage against Hanna Steel. *Allen* Complaint, Exhibit E to Penn National's Summary Judgment; *Lowery* Complaint, Exhibit D to Penn National's Summary Judgment; *Aaron* Complaint, Exhibit C to Penn National's Summary Judgment. The *Allen* and *Aaron* actions also add counts of breach of duty to warn, fraud, misrepresentation, and deceit, common law strict liability, negligent infliction of emotional distress, intentional infliction of emotional distress, and permanent injunction. *Allen* Complaint, Exhibit E to Penn National's Summary Judgment; *Aaron* Complaint, Exhibit C to Penn National's Summary Judgment. The *Allen* plaintiffs are the only class in the underlying lawsuits who assert counts of battery and assault against Hanna Steel and the other defendants. *Allen* Complaint, Exhibit E to Penn National's Summary Judgment. When Hanna Steel notified Penn National in December 2006 of the underlying state cases, Penn

National agreed to provide a defense for Hanna Steel under a reservation of rights, although Hanna Steel disputes that Penn National was actually participating in the defense.[3]  Statement of Undisputed Facts, ¶ 12, Penn National's Summary Judgment Brief; Response to Penn National's Statement of Undisputed Facts, ¶ 12, Hanna Steel's Response Brief.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp.*

---

[3]  Hanna Steel, in its response, argues that Penn National should be estopped from relying upon the pollution exclusion with regard to the underlying suits since Penn National allegedly mishandled Hanna Steel's coverage claim and allegedly failed to adhere to its enhanced duty of good faith.  Hanna Steel's Response Brief, p. 9.  Under Alabama law, "the elements of an estoppel are: '(1) A position of authority assumed by defendant [insurer] under the color of right; (2) submission to and reliance upon that assumption, by plaintiff [insured]; and (3) injury suffered by plaintiff as a proximate consequence of such submission and reliance.'" *Mooradian v. Canal Ins. Co.*, 130 So.2d 915, 918 (Ala. 1961) (quoting *Belt Auto Indemnity Ass'n v. Ensley Transfer & Supply Co.*, 99 So. 787, 790 (Ala. 1924)).  Hanna Steel's argument is erroneous, for no "injury" has occurred.  Here, Penn National hired substitute counsel (Wilmer & Lee) on November 17, 2008 to participate in Hanna Steel's defense.  Moelker Decl. ¶ 6, Penn National's Reply Brief.  Substitute counsel was hired after the Office of General Counsel of the Alabama State Bar released an informal opinion stating that previous counsel (Spain & Gillon) provided by Penn National for Hanna Steel faced a conflict of interest.  Disciplinary Commission Letter, Exhibit C to Hanna Steel's Response Brief.  Spain & Gillon's motion to withdraw was not granted until September 3, 2008.  Order, Exhibit B to Penn National's Reply Brief.  Hanna Steel can point to no injury due to the brief period that elapsed between Spain & Gillon's withdrawal and Wilmer & Lee's entry into the case.

*v. Catrett,* 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.  The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed. R. Civ. Pro. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587.  *See also Anderson v. Liberty Lobby, Inc.*, 477

10

U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991). However, the court should not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

## IV. Legal Analysis

*The Total Pollution Exclusion Endorsement Precludes Coverage for the Underlying Lawsuits Against Hanna Steel*

Under Alabama law, several general rules govern the court's interpretation of the insurance policy at issue. "An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed

11

against the insured." *Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346, 1349 (M.D. Ala. 2002); *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1561 (M.D. Ala. 1996); *see also Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala. 1993); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977).  When a plaintiff's "complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured." *U.S. Fidelity and Guar. Co. v. Armstrong*, 479 So.2d 1164, 1167 (Ala. 1985).  The insured must prove that a claim  is covered under the policy, and the insurer must show that any exclusion in the policy is applicable.  *Thorn*, 266 F.Supp.2d at 1349.

   "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment."  *McDonald v. U.S. Die Casting and Development Co.*, 585 So.2d 853, 855 (Ala. 1991).  When the insurance policy is unambiguous, the court "must enforce the terms of the insurance policy as written." *Federated Mutual Ins. Co. v. Abston Petroleum, Inc., et al.*, 967 So.2d 705, 710 (Ala. 2007).  Additionally, the applicability of a pollution exclusion, as contained in Penn National's policy in question, "depend[s] upon the 'affirmative confluence' of three elements:"

The bodily injury or property damage in question must have been caused by exposure to a 'pollutant'; that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted 'waste.'  In other words, the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release, or escape . . . of pollutants . . . at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed 'as waste.'

*Id.* at 708 (quoting *Porterfield v. Audubon Indemnity Co.*, 856 So.2d 789, 801 (Ala. 2002)).

The three underlying complaints against Hanna Steel have one common theme: pollution emanating from Hanna Steel's premises.  Regardless of how craftily worded the underlying allegations may be, ultimately the injured parties are seeking recovery for the discharge of "particulates or gases into the atmosphere." Penn National's policies expressly address such claims in the Total Pollution Exclusion Endorsement:

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal,

13

seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

      (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

      (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

Policy, Total Pollution Exclusion Endorsement, Exhibit A to Penn National's Summary Judgment.  This exclusion bars coverage for every count against Hanna Steel in the underlying state court cases.

The *Aaron* and *Allen* plaintiffs allege that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere;" (2) "manufactured equipment that has, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates or gases to be discharged into the atmosphere;"

14

(3) "sold equipment in commerce that, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates to be discharged into the atmosphere;" (4) "[were] under a duty to design, or to review the design [of] equipment that is being used by one or more  of the named defendants, whose operations are, or have discharged pollutants into the atmosphere;" or (5) were "under a duty to inspect the operations of one or more of the other defendants." *Aaron* Complaint, ¶ 4, Exhibit C to Penn National's Summary Judgment; *Allen* Complaint, ¶ 3, Exhibit E to Penn National's Summary Judgment.  The *Lowery* plaintiffs allege that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere and into the ground water;" (2) "caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water;" or (3) were "under a duty to inspect the operations of one or more of the other Defendants." *Lowery* Complaint, ¶ 4, Exhibit D to Penn National's Summary Judgment.  The individual counts in the underlying actions include: negligence, wantonness, trespass, nuisance, outrage, breach of duty to warn, fraud, misrepresentation, and deceit, common law strict liability, negligent infliction of emotional distress, intentional infliction of emotional distress, permanent injunction, battery, and assault.  *Allen* Complaint, Exhibit E to Penn National's Summary Judgment; *Lowery* Complaint, Exhibit D to Penn National's Summary Judgment;

*Aaron* Complaint, Exhibit C to Penn National's Summary Judgment.

Despite the underlying plaintiffs' attempt to circumvent the pollution exclusion by making product liability allegations against Hanna Steel, the individual counts in the complaints, when read in conjunction with such allegations, do not support any basis for coverage. At the heart of each underlying complaint is the assertion that Hanna Steel and other defendants discharged pollutants from their premises resulting in personal injury and property damage. Therefore, the plain language of the pollution exclusion must be applied to preclude coverage.

*Thorn v. American States Ins. Co*, 266 F.Supp.2d 1346 (M.D. Ala. 2002), is an instructive case demonstrating the court's unwillingness to accept the plaintiff insureds' argument that the phrasing and use of certain terms in the underlying counts should permit coverage under the policy. There, the insureds conceded that claims "of fraud, suppression, and deceit that [were] founded upon the alleged *intent* or *willful purpose* to harm" were excluded from coverage, but asserted that claims for "negligent, mistaken, or innocent fraud" should be covered. *Id.* at 1350 (emphasis added). The court rejected this reasoning, holding that "while the claims . . . include negligent, mistaken, or innocent fraud, a complete reading of each claim shows that the acts alleged are intentional, and that no theory of negligent, mistaken, or innocent fraud is actually *alleged* or *supported*." *Id.* (emphasis added). "[T]he inclusion of

16

words alleging non-intentional conduct does not change the fact that the claims essentially allege intentional fraud." *Id.* at 1351. This approach is equally applicable to the underlying claims in this case. Although the underlying plaintiffs make allegations that sound in product liability, the essence of the complaints seek recovery for damages from pollution caused by the manufacturing activities conducted on Hanna Steel's premises. Penn National's pollution exclusion cannot be avoided in light of these allegations and the applicable caselaw.

## V. Conclusion

Having considered the foregoing and finding no genuine issues of material fact remain and Penn National is entitled to summary judgment in its favor;

The court **ORDERS** that Penn National's motion for summary judgment be and hereby is **GRANTED**. The court shall so rule by separate Order.

**DONE** and **ORDERED** this 9th day of December 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

17