# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **Civil Action No. 08-J-0635-S** |
| **v.** | ) ) | |
| **HANNA STEEL CORPORATION, ET AL.,** | ) ) ) | |
| **Defendants.** | ) | |

## COMMERCE AND INDUSTRY INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

COMES NOW, defendant Commerce and Industry Insurance Company ("Commerce and Industry" or "Defendant"), by and through the undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment, and states as follows:

## I.    <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

1.    Commerce and Industry issued Policy No. GL 760-07-60, effective December 1, 1988 to December 1, 1989, to Hanna Steel Corporation ("Hanna Steel") (herein "the Commerce and Industry Policy"). *See* Affidavit of Paul Vittorino at ¶ 4 and Exhibit "A" attached thereto.

2.     The Commerce and Industry Policy contains, in pertinent part, the following insuring agreement:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.  This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period.  The "bodily injury" and "property damage" must be caused by an "occurrence." The "occurrence" must take place in the coverage territory.  We will have the right and duty to defend any suit seeking those damages.  But:

        \*        \*        \*

*See* Id. at C&I 000005.

3.     The Commerce and Industry Policy contains the following Pollution Exclusion:

This insurance does not apply to:

f.     (1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

        (a)     At or from premises you own, rent or occupy;

 (b) At or from any site or location used by you or for others for the handling, storage, disposal processing or treatment of waste;

 (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

 (d) At or from any site or location or which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

  (i) if the pollutants are brought on or to the site or location in connection with such operations; or

  (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

Subparagraphs (a) and (d)(i) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a "hostile fire". As used in this exclusion a "hostile fire" means once which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*See* <u>Id.</u>, ¶ 2.f. at C&I 000006.

4.      The pollution exclusion contained in the Commerce and Industry Policy is virtually identical to the pollution exclusion contained in American Manufacturers Mutual Insurance Company's ("AMMIC") insurance policy No. 3MH 302 294-00 issued to Hanna Steel, effective December 1, 1997 to December 1, 1998.  The pollution exclusion in the AMMIC policy states:

This insurance does not apply to:

f.      (1)      "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(e)      At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to any insured;

(f)      At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal processing or treatment of waste;

(g)      Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(h)      At or from any premises, site or location on which you or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i)      If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)     If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire. As used in this exclusion a hostile fire means once which becomes uncontrollable or breaks out from where it was intended to be.

(2)     Any loss cost or expense arising out of any:

a)     Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or asses the effects of pollutants; or

b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*See* Policy 3MH 302 294-00, appended as Exhibit A to Exhibit 1 of AMMI's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("AMMIC's Memorandum") (Doc. 101).

5.    The pollution exclusion contained in the Commerce and Industry Policy is also virtually identical to the pollution exclusion contained in policies issued to Hanna Steel by Pennsylvania National Mutual Insurance Company ("Penn National"), Policy Nos. CL9 0037301, effective from December 1, 1992 to December 1, 1997.  *See* Penn National's Memorandum Brief in Support of its Motion for Summary Judgment, pp 3-5. (Doc. 112).

6.    On or about April 10, 2008, Penn National, which also issued Commercial General Liability insurance policies to Hanna Steel, filed the present declaratory judgment action against American Manufacturers, Columbia Casualty Company, National Fire Insurance Company of Hartford, Fireman's Fund Insurance Company, and others.[1]  (*See* Doc. 1).

7.    On or about August 14, 2008, Commerce and Industry was added as a defendant when Penn National filed its First Amended Complaint.  (*See* Doc. 60).

8.    The Declaratory Judgment Action seeks a declaration as to the rights and obligations of the parties concerning Hanna Steel's claim for coverage under the insurance policies issued by Penn National, Commerce and Industry, AMMI and the other insurer defendants for three separate lawsuits brought in the Circuit Court of Jefferson County, Alabama.  Id. at ¶¶ 3-5.  The lawsuits include: <u>Ceola</u>

---

[1] The Declaratory Judgment Action also names Ceola Allen, Katie Lowery and Larry Aaron as defendants.  These individuals are the lead plaintiffs in three separate lawsuits filed against Hanna Steel for which Hanna Steel is seeking coverage from its insurers.

<u>Allen, et al. v. Hanna Steel Corp., et al.</u>, Civ. No. 04-79 (the "<u>Allen</u> Action"); <u>Katie Lowery, et al. v. Hanna Steel Corp., et al.</u>, Civ. No. 05-1749 (the "<u>Lowery</u> Action"); and <u>Larry Aaron, et al. v. Hanna Steel Corp., et al.</u>, Civ. No. 07-40 (the "<u>Aaron</u> Action") (collectively, the "Underlying Actions"). *See* <u>Allen</u>, <u>Lowery</u>, and <u>Aaron</u> Complaints, attached hereto as Exhibits 2, 3, and 4.

9.      Generally, the Underlying Actions against Hanna Steel "allege that Hanna Steel, along with numerous other defendants, caused pollutants, particulates, or gases to be discharged into the atmosphere, land, and/or waters, resulting in personal injury and property damage."  *See* Memorandum of Opinion ("Opinion") at p. 5 (Doc. 132).

10.      More specifically, the Plaintiffs in the <u>Allen</u> Action allege that Hanna Steel is liable for damages, including bodily injury and property damage, as a result of discharging "particulates and/or gases and other harmful chemicals and/or pollutants into Jefferson County, Alabama, and into the air, soil, surface water and/or ground water in, on and/or adjacent to the Plaintiffs' properties located in Jefferson County, Alabama and into the plaintiffs' bodies and, because defendants have negligently and willfully allowed said substances to remain in said areas." *See* Exhibit 2 at ¶ 6.  *See also* <u>Id.</u> at ¶¶ 3-4.

11.      Plaintiffs in the <u>Lowery</u> Action allege that Hanna Steel is liable because it "has discharged particulates or gases into the atmosphere and into the

ground water; or has caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water …" *See* Exhibit 3 at ¶ 4. Plaintiffs also allege that "[p]articulates or gases have been discharged into the atmosphere and into the ground water at facilities operated by the named Defendants or one or more of the fictitious Defendants; which particulates and/or gases have traveled through the atmosphere and/or ground water and onto the Plaintiff's person and/or the Plaintiffs' property." Id.

12.     Plaintiffs in the Aaron Action likewise allege that Hanna Steel and the other defendants "discharged particulates or gases into the atmosphere," manufactured equipment that has, when operated by another defendant … have caused or contributed to cause … particulates or gases to be discharged into the atmosphere," "sold equipment in commerce that, when operated by another defendant, or defendants … caused or contributed to cause … particulates to be discharged into the atmosphere," or "[were] under a duty to design, or to review the design [of] equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere." *See* Exhibit 4 at ¶ 4. *See also* Opinion at p. 6.

13.     Commerce and Industry has agreed to participate in the defense of Hanna Steel under Policy No. GL 760-07-60, subject to a reservation of its rights.

14.    On August 25, 2008, AMMIC asserted a Cross-Claim against Commerce and Industry.  *See* AMMIC's Answer to Amended Complaint, Cross-Claim, and Counterclaim. (Doc. 66).  Commerce and Industry filed an Answer to the Cross-Claim on September 15, 2008 (Doc. 72).

15.    On October 30, 2008, Fireman's Fund Insurance Company ("FFIC") and Hanna Steel filed Cross-Claims against Commerce and Industry.  *See* Amended Answer to Complaint, Cross-Claim and Counterclaim of FFIC and Cross-Claim Against Commerce and Industry filed by Hanna Steel (Doc. 108 and 109).  Commerce and Industry is currently preparing Answers to the Cross-Claims.

16.    On October 28, 2008, AMMIC filed a motion for summary judgment against Hanna Steel contending that the pollution exclusion contained in policy 3MH 302 294-00 precludes coverage for all three of the Underlying Actions.  (*See* Doc. 101).

17.    October 31, 2008, Penn National filed a motion for summary judgment against Hanna Steel contending that the pollution exclusions contained in their policies preclude coverage for all three of the Underlying Actions. (*See* Doc. 112.).

18.    On November 12, 2008, Hanna Steel responded in opposition to the motion for summary judgment.  (*See*  Doc. 117).  In its Opposition, Hanna Steel contended that the pollution exclusion contained the AMMIC policy did not relieve

it of its duty to defend, that the products-completed operations hazard provided coverage for the Underlying Actions, that the Trespass and Nuisance Claims in the Underlying Actions are covered by the personal injury provisions of the policy, and, in the alternative, that AMMIC's motion should be denied until the parties can conduct discovery. *See* Id.

19.     Hanna Steel opposed Penn National's Motion for Summary Judgment on the same bases. (*See* Doc. 119).

20.     AMMIC filed its reply in support of its motion for summary judgment on November, 17, 2008 and Penn National filed its reply in support of its motion on November 18, 2008. (*See* Docs. 120 and 122).

21.     On December 3, 2008, this Court rejected the arguments asserted by Hanna Steel in its Opposition and granted AMMIC's motion for summary judgment. (*See* Doc. 133).  In its Opinion, the court concluded that the pollution exclusion contained in policy 3MH 302 294-00, which is virtually identical to the pollution exclusion contained in Commerce and Industry Policy GL  760-07-60, precluded coverage for all three of the Underlying Actions. (*See* Doc. 132).

22.     On December 9, 2008, the Court rejected the arguments asserted by Hanna Steel in its Opposition to the Penn National summary judgment motion and granted summary judgment in favor of Penn National on the same bases set forth in the Court's December 3, 2008 Opinion. (*See* Doc. 135)

23.     For the reasons stated in the Court's December 3, 2008 and December 9, 2008 Opinions, Commerce and Industry contends that the pollution exclusion contained in its policy likewise precludes coverage to Hanna Steel for the Underlying Actions and that it has no obligation to defend or indemnify Hanna Steel under Policy No. GL 760-07-60 at a matter of law.

## II.    STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). The party moving for summary judgment bears the burden of showing that there is an absence of a genuine issue of material fact. Id. at 323. The plain language of Rule 56(c) mandates the entry of summary judgment where it is apparent that the nonmovant cannot make its case at trial. Id. at 322-23.

Once the moving party has satisfied its burden of demonstrating no genuine issue of material fact, the burden then shifts to the nonmoving party to set forth facts showing a triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). "The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id.  at 247-48. (1986).  The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that that there is a genuine issue for trial."  Id. at 248. (quotation marks and citation omitted).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co.,  475 U.S. at 586.  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995)).

## III.   ARGUMENT

A.    **Commerce and Industry Is Entitled to Summary Judgment As The Pollution Exclusion Contained in Commerce and Industry Policy No. GL 760-07-60 Is Virtually Identical To The Pollution Exclusions Contained In The AMMIC and Penn National Policies**

Commerce and Industry Policy GL 760-07-60 contains a pollution exclusion that expressly precludes coverage, in pertinent part, for (1) "'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: (a) At or from premises you own, rent or

- 12 -

occupy."  *See* Affidavit of Paul Vittorino at ¶ 4 and Exhibit "A" attached thereto at C&I 000005.  The pollution exclusion contained in Commerce and Industry Policy is virtually identical to the pollution exclusion contained in the AMMIC policy at issue in the Court's December 2, 2008 Opinion and the Penn National policies at issue in the Court's December 9, 2008 Opinion.   In this regard, the pollution exclusions contained in the AMMIC and Penn National policies preclude coverage, in pertinent part, for (1) "'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants: (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."  *See* December 3, 2008 Opinion at p. 12 (Doc. 132.) and December 9, 2008 Opinion at pp 13-14 (Doc. 135).[2]  As correctly concluded by this Court in its Opinions, "[t]his exclusion bars coverage for every count against Hanna Steel in the underlying state court cases."  Id.

Moreover, although Hanna Steel may allege that certain of the Complaints filed in the Underlying Actions contain product liability allegations against Hanna Steel, this Court correctly concluded in its December 2, 2008 and December 9, 2008 Opinions that "the individual counts in the complaints, when read in

---

[2] *See also* Policy 3MH 302 294-00, appended as Exhibit A to Exhibit 1 of AMMIC's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment (Doc. 101) and the Penn National policies appended as Exhibit A of Penn National's Memorandum Brief in Support of its Motion for Summary Judgment (Doc. 112.)

conjunction with such allegations, do not support any basis for coverage" and "at the heart of each underlying complaint is the assertion that Hanna Steel and other defendants discharged pollutants from their premises resulting in personal injury and property damage" such that "the plain language of the pollution exclusion must be applied to preclude coverage." Id. at p. 13.

As set forth above, Commerce and Industry Policy GL 760-07-60 RA contains a pollution exclusion virtually identical to the pollution exclusion contained in the AMMIC and Penn National policies. Moreover, Commerce and Industry is seeking entry of an Order declaring that it has no defense or indemnity obligations with respect to the same three Underlying Actions at issue in the Motions for Summary Judgment filed by AMMIC and Penn National. Commerce and Industry, therefore, contends that the same rationale employed by the Court in its December 2, 2008 and December 9, 2008 Opinions should likewise apply to Commerce and Industry Policy No. GL 760-07-60 RA as the Commerce and Industry policy contains a pollution exclusion virtually identical, in pertinent part, to the pollution exclusion contained in the AMMIC and Penn National policies. Accordingly, Commerce and Industry requests that the Court extend its December 2, 2008 and December 9, 2008 Opinions to Commerce and Industry Policy No. GL 760-07-06 RA, enter summary judgment in favor of Commerce and Industry, and conclude that Commerce and Industry has no obligation to defend or indemnify

Hanna Steel in the Underlying Actions under Policy No. GL 760-07-60 RA as a matter of law.

**B.   In The Event The Court Is Inclined To Examine the Coverage Issues Under Commerce and Industry Policy GL 760-07-60 RA, The Pollution Exclusion Nevertheless Precludes Coverage For The Underlying Actions.**

   **1.   The Pollution Exclusion Precludes Coverage for the Underlying Actions as a Matter of Law**

Assuming, *arguendo*, that the Court is inclined to conduct a review of the coverage issues surrounding Commerce and Industry Policy GL 760-07-60 RA, Commerce and Industry nevertheless contends that Commerce and Industry is entitled to judgment as a matter of law as the pollution exclusion contained in the policy precludes coverage for the Underlying Actions.

As set forth in more detail above, Commerce and Industry Policy No. GL 760-07-60 RA contains a pollution exclusion that precludes coverage for the property damage arising out of the discharge, dispersal, release or escape of pollutants at or from premises owned, rented to or occupied by the insured.  As noted by the Supreme Court of Alabama when addressing a prior version of the pollution exclusion, "[t]he pollution exclusion was no doubt designed to decrease the risk where an insured was putting smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into the environment." <u>Molton, Allen and Williams, Inc. v. St. Paul Fire</u>

& Marine Ins. Co., 347 So.2d 95, 99 (Ala. 1977).   In addition, the Alabama

Supreme Court has made clear that the plain language of the absolute pollution

exclusion, as contained in Commerce and Industry's policy, will be enforced and

applied to preclude coverage for pollution emitting into the environment.

Federated Mutual Insurance Co., v. Abston Petroleum, Inc., 967 So.2d 705 (Ala.

2007).

As this court correctly noted in its December 2, 2008 and December 9, 2008

Opinions, the Alabama Supreme Court has determined that the applicability of an

absolute pollution exclusion similar to the one contained in Commerce and

Industry's Policy depends upon the 'affirmative confluence' of three elements:

> The bodily injury or property damage in question must have been
> caused by exposure to a 'pollutant'; that exposure must have arisen
> out of the actual, alleged, or threatened discharge, dispersal, release,
> or escape of the pollutant; and that discharge, dispersal, release, or
> escape must have occurred at or from certain locations or have
> constituted 'waste.' In other words, the exclusion comes into play
> only with respect to bodily injury or property damage arising out of
> the discharge, dispersal, release, or escape . . . of pollutants . . . at or
> from certain categories of locations, or which have been transported,
> stored, handled, treated, disposed of, or processed 'as waste.'

Opinion at p. 11 and p. 13, respectively (quoting Abston Petroleum, 967 So.2d at

708).

In Abston Petroleum, the Alabama Supreme Court was asked to consider

whether gasoline, which had leaked into the environment from underground pipes

leading to storage tanks, qualified as a "pollutant" as defined in an absolute

pollution exclusion so as to preclude coverage for resultant property damage and bodily injury.   The insurer argued that the pollution exclusion clause was unambiguous, and therefore, it was not obligated to indemnify the insured for property damage caused by gasoline leaks from underground pipelines.   Abston Petroleum, 967 So.2d at 708.  The court agreed.  In concluding that the pollution exclusion clause was unambiguous, the court noted that the "Court must enforce the terms of the policy as written."  Id. at 708.  As such, the Alabama Supreme Court concluded that "gasoline . . . is clearly a pollutant when it leaks into the soil from underground lines or tanks or when fumes from such a leak are so dangerous that a business must be closed . . . ."  Id.  In so ruling, the Court also refused to consider the insured's arguments that the drafting history and regulatory clauses of such exclusions should be examined to determine whether the exclusion is ambiguous. Id. at 713.

Furthermore, federal district courts applying Alabama law prior to the ruling in Abston Petroleum, have routinely concluded that pollution exclusions similar to the exclusion contained in the Commerce and Industry policy clearly and unambiguously preclude coverage in situations involving chemical or industrial pollutants when the injuries and damages alleged that they arise out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.  For example, the court in Kruger Commodities, Inc. v. U.S. Fidelity & Guar. Co., held

that the insurance policy's pollution exclusion, which is the same absolute pollution exclusion contained in the Commerce and Industry policy, barred coverage for claims arising out of odors emanating from a rendering plant. 923 F. Supp. 1474, 1480 (M.D. Ala. 1996). The exclusion at issue in <u>Kruger</u> precluded coverage for claims arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants … which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste." <u>Id.</u> at 1479. The court explained that the "plain meaning of the policy indicates that a reasonable person in the position of Kruger would have understood the pollution exclusion to include odors produced by processing animal carcasses at the plant." <u>Id.</u> Accordingly, the pollution exclusion contained in the Policy was enforced to preclude coverage. *See also* <u>Haman, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 18 F. Supp. 2d 1306, 1308-09 (N.D. Ala. 1998) (concluding that a chemical used by an exterminator qualified as a pollutant and that damages arising from its use were precluded under the policy's pollution exclusion).

As this Court has correctly concluded, "[t]he three underlying complaints have one common theme: pollution emanating from Hanna Steel's premises" and "ultimately the injured parties are seeking recovery for the discharge of 'particulates or gases into the atmosphere.'" *See* December 2, 2008 Opinion at p.

11.  The Court's conclusion is based supported by the allegations contained in the

underlying complaints, as summarized by the Court below:

> The *Aaron and Allen* plaintiffs allege that Hanna Steel and other
> defendants: (1) discharged particulates or gases into the atmosphere;
> (2) manufactured equipment that has, when operated by another
> defendant, or defendants . . . caused or contributed to cause . . .
> particulates or gases to be discharged into the atmosphere; (3) sold
> equipment in commerce that, when operated by another defendant, or
> defendants . . . caused or contributed to cause . . . particulates to be
> discharged into the atmosphere; (4) was under a duty to designed, or
> to review the design [of] equipment that is being used by one or more
> of the named defendants, whose operations are, or have discharged
> pollutants into the atmosphere; or (5) was under a duty to inspect the
> operations of one or more of the other defendants.

Id. at 12 (quotation marks omitted) (citing Aaron Compl., ¶ 4, Exhibit 6 to

AMMIC's motion for summary judgment (Doc. 101); Allen Compl., ¶ 3, Exhibit 4

to AMMIC's motion for summary judgment (Doc. 101).

Similarly, the Lowery plaintiffs alleged that Hanna Steel and other

defendants: "(1) discharged particulates or gases into the atmosphere and into the

ground water; (2) caused or contributed to cause particulates or gases to be

discharged into the atmosphere or the ground water; (3) was under a duty to

inspect the operations of one or more of the other Defendants." Id. at 13 (citing

Lowery Compl., ¶ 4, Exhibit 5 to AMMIC's motion for summary judgment (Doc.

101).

As correctly noted by the Court in its December 2, 2008 and December 9,

2008 Opinions:

> At the heart of each underlying complaint is the assertion that Hanna Steel and other defendants discharged pollutants from their premises resulting in personal injury and property damage. Therefore, the plain language of the pollution exclusion must be applied to preclude coverage.

Id.

Accordingly, as the Court concluded in its December 2, 2008 and December 9, 2008 Opinions, in light of the applicable case law and because the plaintiffs in all three Underlying Actions are seeking to recover for bodily injury and/or property damage arising from the discharge of pollutants at or from premises owned, rented or occupied by Hanna Steel, the plain and unambiguous language of the pollution exclusion contained in the Commerce and Industry policy precludes coverage for the Underlying Actions as a matter of law.

## 2. The Pollution Exclusion Contained in Commerce and Industry Policy GL 760-07-60 RA Is Plain and Unambiguous So Additional Discovery Is Not Necessary

Commerce and Industry anticipates that Hanna Steel will argue that summary judgment is premature because additional discovery is required on the scope of the pollution exclusion contained in the Commerce and Industry policy. Worth noting, however, is that Hanna Steel asserted this argument in its Response to the motion for summary judgment filed by AMMIC. *See* Response to Motion for Summary Judgment at pp. 22-24 (Doc. 117). The Court clearly found such an argument unpersuasive since it entered summary judgment in favor of AMMIC. In

any event, the drafting history relating to the pollution exclusion is irrelevant as the language in the Commerce and Industry policy is clear and unambiguous.   In addition, the Alabama Supreme Court has already concluded in <u>Abston Petroleum</u> that the pollution exclusion in the Commerce and Industry policy is unambiguous and that the Court must enforce unambiguous terms as written.   *See* <u>Abston Petroleum</u>, 967 So.2d at 708. Accordingly, because the pollution exclusion contained in the Commerce and Industry policy has been determined to be plain and unambiguous by this Court in its December 2, 2008 and December 9, 2008 Opinions and by the Alabama Supreme in <u>Abston Petroleum</u>, Hanna Steel is not permitted to discovery or use extrinsic evidence or purported drafting history to alter the plain meaning of the pollution exclusion.   Additional discovery on the pollution exclusion is, therefore, irrelevant and unnecessary.

### 3.   <u>The Personal Injury Liability Coverage Part Does Not Provide Coverage for the Pollution Claims At Issue in This Case</u>

Commerce and Industry also anticipates that Hanna Steel will argue that Commerce and Industry is obligated to provide a defense and indemnity to it because the underlying plaintiffs' claims fall within the personal injury liability coverage part of the Commerce and Industry policy.  Again, Hanna Steel asserted this position in its Response to AMMIC's motion for summary judgment.  *See* Response to Motion for Summary Judgment at pp. 18-21 (Doc. 117).  In granting

AMMIC's motion for summary judgment, the Court found this assertion equally unpersuasive.

Moreover, it is generally understood that the personal injury offenses of wrongful entry or eviction relate to interference with *possessory interests in property. See* Eric Mills Holmes, *Holmes' Appleman On Insurance 2d,* § 131.2 (2002); Charles E. Hagglund, Britton D. Weimer, Andrew F. Whitman, Arlene Jorgensen Hillestad, *CGL Policy Handbook*, § 9.04 (2004) (explaining that both wrongful entry and wrongful eviction generally require an interference with possessory rights). In this regard, courts have recognized that personal injury liability coverage covers claims arising from the improper entry onto property owned or occupied by another in the landlord-tenant context. *See e.g.* Decorative Ctr. of Houston v. Employers Casualty Co., 833 S.W.2d 257, 261-62 (Tex. Ct. App. 1992) (holding that offenses "are meant to cover only landlord-tenant situations or, if extended, only similar instances where the defendant insured has some superior right to occupancy to that of the plaintiff). A plain reading of the complaints filed in the Underlying Actions clearly demonstrate that the plaintiffs' environmental claims do not constitute a "wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies" as plaintiffs have not alleged or asserted that Hanna Steel has infringed on their possessory interest in property. Thus, the allegations asserted in the underlying complaints do

not constitute claims for "personal injuries" under the policy and, as such, do not fall within the personal injury liability coverage of the Commerce and Industry policy.

In addition, although courts in Alabama have not specifically addressed the issue as to whether environmental claims such as the claims at issue in this case fall within personal injury liability coverage, courts in other jurisdictions have flatly rejected such a position. *See* Harrow Products, Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015 (6th Cir. 1995) (holding that the insured's discharge of pollutants did not constitute a "wrongful entry or eviction or other invasion of the right of private occupancy" within the meaning of personal injury coverage as no reasonable insured could understand that endorsement to cover pollution damage); Staefa Control-System, Inc. v. St. Paul Fire & Marine Ins. Co., 847 F. Supp 1460 (N.D. Cal. 1994) (ruling that personal injury provision only provided coverage for interference with the right to possess property, not the mere physical invasion of that property); Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co., 791 A.2d 489, 510-511 (Conn. 2002) (finding that "personal injury provisions were intended to reach only intentional acts by the insured" and thus did not provide coverage for pollution-related claims); County of Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 628, 634 N.E. 2d 946 (N.Y. 1994) (recognizing that "it would be illogical to conclude that the claims fail because of the pollution exclusion while also

concluding that the insurer wrote a personal injury endorsement to cover the same eventuality.").[3]

For all of the above reasons, the personal injury liability coverage part does not provide coverage for the pollution claims at issue in the Underlying Actions.

### 4.   Commerce and Industry Can Properly Assert That The Pollution Exclusion Contained in the Commerce and Industry Policy Precludes Coverage for the Underlying Lawsuits

Commerce and Industry anticipates that Hanna Steel will argue that Commerce and Industry is estopped from asserting that the pollution exclusion contained in the Commerce and Industry policy based upon a mishandling of its claim for coverage.  Hanna Steel asserted this position in its Response to Penn National's motion for summary judgment.  *See* Response to Motion for Summary Judgment at pp. 12 to 19 (Doc. 119).  In granting Penn National's motion for summary judgment, the Court has already found this assertion unpersuasive. *See* December 9, 2008 Opinion at p. 9, FN 3.

Moreover, as correctly noted by the Court in its December 9, 2008 Opinion, the elements of estoppel are: (1) a position of authority assumed by defendant under the color of right; (2) submission to and reliance upon that assumption, by plaintiff; and (3) injury suffered by plaintiff as a proximate consequence of such

---

[3] Additional cases supporting Commerce and Industry's position that the personal injury liability coverage grant does not provide coverage to claims otherwise precluded by the pollution exclusion are set forth on pages 17-20 of the motion for summary judgment filed by AMMI. (Doc. 101).

submission and reliance.  *See* Id. *citing* Mooradian v. Canal Ins. Co., 130 So.2d 915, 918 (Ala. 1961).  As recognized by the Court in its December 9, 2008, Hanna Steel has not sustained any "injury" due to the brief period of time that elapsed between the withdrawal of the Spain & Gillion firm, which had also been retained by Commerce and Industry, and Wilmer & Lee's (also retained by Commerce and Industry in coordination with Penn National) entry into the case.  Moreover, Commerce and Industry agreed to participate in the defense of Hanna Steel but specifically reserved its rights to rely on the pollution exclusion contained in the Commerce and Industry policy to deny coverage for Hanna Steel's claim.  Thus, Hanna Steel has not and cannot satisfy the reliance or injury elements each of Mooradian test and, thus, has filed to o support its estoppel position.

**C.     Conclusion**

WHEREFORE, for the above and foregoing reasons and for the reasons set forth in the Court's December 2, 2008 and December 9, 2008 Opinions, Commerce and Industry requests that the Court grant summary judgment on all claims in this declaratory judgment action and declare that Commerce and Industry has no obligation to defend or indemnify Hanna Steel under Policy No. GL 760-07-60 at a matter of law.

Respectfully submitted,

DATED:  December 12, 2008


*/s/Laura C. Nettles*
Laura C. Nettles (ASB-5805-S63L)
Attorney for Defendant
Commerce and Industry Insurance
Company


**OF COUNSEL:**

**LLOYD, GRAY & WHITEHEAD, P.C.**
2501 20th Place South, Suite 300
Birmingham, AL 35223
(205) 967-8822
(205) 967-2380 (fax)

**OF COUNSEL:**

Richard W. Bryan, Esq.
Christopher P. Ferragamo, Esq.
Matthew D. Berkowitz, Esq.
**JACKSON & CAMPBELL, P.C.**
1120 20th Street, N.W., South Tower
Washington, D.C.  20036
(202) 457-1600
(202) 457-1678 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that copies of Commerce and Industry's Motion for Partial Summary Judgment, the Memorandum of Points and Authorities in Support of the Motion for Summary Judgment, and Proposed Order have been served electronically, upon the following, by filing same with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

R. Larry Bradford, Esq.
Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

**Counsel for Pennsylvania Mutual Insurance Company**

David Hymer, Esq.
Joel M. Kuehnert, Esq.
Sara L. Nichols, Esq.
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Kenneth D. Sansom, Esq.
Spotswood Sansom & Sansbury, LLC
940 Concord Center
2100 Third Avenue North
Birmingham, AL 35203

**Counsel for Hanna Steel Corporation**

J. Gusty Yearout, Esq.
Yearout & traylor, P.C.
800 Shades Creek Parkway
Suite 500
Birmingham, AL 35209

**Counsel for Defendants Ceola Allen and Larry Aaron**

Lloyd W. Gathings, II, Esq.
Gathings Law
2100 3rd Avenue North
Suite 900
Birmingham, AL 35203

**Counsel for Defendant Katie Lowery**

Vernon L. Wells, II, Esq.
Vernon Walker Wells, Esq.
Walston, Wells & Birshall, LLP
1819 5th Avenue North
Suite 1100
P.O. Box 830642
Birmingham, AL 35283-0642

and

Laura A Foggan, Esq.
Paul A. Dame, Esq.
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006

**Counsel for American Manufacturers Mutual Insurance Company**

Greta A Matzen, Esq.
Colliau Elenius Murphy Carluccio Kenner & Morrow
600 N Pearl, Suite 1400
Dallas, TX 75201

and

Cathryn Blue Derian, Esq.
Donald W. McCormick, III, Esq.
MCCORMICK & ASSOCIATES PC
1829 E Franklin Street, Suite 600
Chapel Hill, NC 27514

**Counsel for Columbia Casualty Company and
National Fire Insurance Company of Hartford**

Sharon Stuart, Esq.
Lynn S. Darty, Esq.
Christian & Small, LLP
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203-2607

and

Gary D Centola, Esq.
William J Edwins, Esq.
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, NY 11556

**Counsel for Fireman's Fund Insurance Company**

*/s/Laura C. Nettles*
Laura C. Nettles