FILED

2009 Jan-27  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PENNSYLVANIA NATIONAL
MUTUAL INSURANCE
COMPANY,

      Plaintiff,

vs.                                                    CASE NO. CV-08-J-0635-S

HANNA STEEL
CORPORATION, et al.,

      Defendants.

## MEMORANDUM OPINION

Pending before the court is defendant Commerce and Industry Insurance Company's ("CIIC") motion for partial summary judgment (doc. 137), evidence in support of said motion, and memorandum in support of its motion (doc. 138). Defendant Hanna Steel Corporation ("Hanna Steel") filed a response in opposition to defendant CIIC's motion for partial summary judgment and evidentiary submissions (doc. 147). Defendant CIIC filed a reply to defendant Hanna Steel's response (doc. 159).

Having considered all the pleadings and submissions, the court concludes that defendant CIIC's motion for partial summary judgment is due to be granted as no genuine issues of material fact remain, and defendant CIIC is entitled to a judgment

in its favor as a matter of law.

## I. Procedural History

On April 10, 2008, Pennsylvania National Mutual Insurance Company ("Penn National") filed the instant declaratory judgment action against Hanna Steel and Hanna Steel's insurers[1] (doc. 1, doc. 60).  Ceola Allen, Katie Lowery, and Larry Aaron, the lead plaintiffs in the three underlying lawsuits filed against Hanna Steel,[2] were also named as defendants.  The declaratory judgment action seeks a declaration that Penn National policies do not provide coverage for the claims asserted against Hanna Steel in the underlying lawsuits, that Penn National does not owe a duty to defend or indemnify Hanna Steel in such suits, and that Hanna Steel's other insurers owe a defense to Hanna Steel.  Hanna Steel filed a cross-claim against CIIC (doc. 109), Fireman's Fund Insurance Company filed a cross-claim against CIIC (doc. 108), and American Manufacturers Mutual Insurance Company filed a cross-claim against

---

[1]  The insurer-defendants include American Manufacturers Mutual Insurance Company, Columbia Casualty Company, National Fire Insurance Company of Hartford, and Fireman's Fund Insurance Company.  Penn National added CIIC through its First Amended Complaint on August 14, 2008 (doc. 60).

[2]  These underlying suits brought against Hanna Steel in the Circuit Court of Jefferson County, Alabama, include: *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, Exhibit 2 to CIIC's Summary Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, Exhibit 3 to CIIC's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, Exhibit 4 to CIIC's Summary Judgment.  This lawsuit is marked both as Civ. No. 07-40 and Civ. No. 07-42 in state court, but it is one lawsuit, namely *Larry Aaron, et al. v. Hanna Steel Corp., et al.*

CIIC (doc. 66).  CIIC now moves for partial summary judgment on these cross-claims and on each count in the declaratory judgment action (doc. 137).

## II. Factual Background

CIIC issued a policy of commercial liability insurance to Hanna Steel. Vittorino Decl. ¶ 4, Exhibit 1 to CIIC's Summary Judgment.  The policy was numbered GL 760-07-60 RA and was effective from December 1, 1988, to December 1, 1989.  *Id.*  The policy provides coverage for bodily injury or property damage that occurs during the policy period in the amount of $500,000 per occurrence, subject to a $1 million aggregate limit of liability.  Policy, Commercial General Liability Declarations, Commercial General Liability Coverage Form, § 1, ¶ 1.a, Exhibit A to CIIC's Summary Judgment.

The policy includes a pollution exclusion, stating that "[t]his insurance does not apply to:"

> f.    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants
>
> > (a) At or from premises you own, rent or occupy;
> >
> > (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;
> >
> > (c) Which are at any time transported, handled, stored,

3

> treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or
>
> (d) At or from any site or location or which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:
>
>> (i)   if the pollutants are brought on or to the site or location in connection with such operations; or
>>
>> (ii)  if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
>
> (2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f, Exhibit A to CIIC's Summary Judgment.       Generally, the underlying complaints in the three lawsuits against Hanna Steel allege that Hanna Steel, along with numerous other defendants, caused pollutants, particulates, or gases to be discharged into the atmosphere, land, and/or waters, resulting in personal injury and property damage.  *See Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, ¶¶ 3-4, Exhibit 2 to CIIC's Summary

Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, ¶¶ 4-5, Exhibit 3 to CIIC's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, ¶¶ 4-5, Exhibit 4 to CIIC's Summary Judgment.  For example, the *Aaron* complaint alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere;" (2) "manufactured equipment that has, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates or gases to be discharged into the atmosphere;" (3) "sold equipment in commerce that, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates to be discharged into the atmosphere;" (4) "[were] under a duty to design, or to review the design [of] equipment that is being used by one or more  of the named defendants, whose operations are, or have discharged pollutants into the atmosphere;" or (5) were "under a duty to inspect the operations of one or more of the other defendants."  *Aaron* Complaint, ¶ 4, Exhibit 4 to CIIC's Summary Judgment.  The *Allen* complaint makes identical allegations, *Allen* Complaint, ¶ 3, Exhibit 2 to CIIC's Summary Judgment, while the *Lowery* complaint only alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere and into the ground water;" (2) "caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water;" or (3) were "under a duty to inspect the operations

of one or more of the other Defendants." *Lowery* Complaint, ¶ 4, Exhibit 3 to CIIC's Summary Judgment.

All of the complaints in the underlying lawsuits then assert counts of negligence, wantonness, trespass, nuisance, and outrage against Hanna Steel. *Allen* Complaint, Exhibit 2 to CIIC's Summary Judgment; *Lowery* Complaint, Exhibit 3 to CIIC's Summary Judgment; *Aaron* Complaint, Exhibit 4 to CIIC's Summary Judgment. The *Allen* and *Aaron* actions also add counts of breach of duty to warn, fraud, misrepresentation and deceit, common law strict liability, negligent infliction of emotional distress, intentional infliction of emotional distress, and permanent injunction. *Allen* Complaint, Exhibit 2 to CIIC's Summary Judgment; *Aaron* Complaint, Exhibit 4 to CIIC's Summary Judgment. The *Allen* plaintiffs are the only plaintiffs in the underlying lawsuits who assert counts of battery and assault against Hanna Steel and the other defendants. *Allen* Complaint, Exhibit 2 to CIIC's Summary Judgment.

Hanna Steel notified CIIC in December 2006 of the underlying state cases, and in September 2007, CIIC informed Hanna Steel that there were "serious coverage issues concerning coverage" under the policy. Additional Undisputed Facts, ¶¶ 25-26, Hanna Steel's Response Brief; September 28, 2007, Letter to Hanna Steel, Exhibit B to Hanna Steel's Response. In December 2007 CIIC agreed to participate in the

defense of Hanna Steel subject to a reservation of rights.  December 11, 2007, Letter to Hanna Steel, Exhibit C to Hanna Steel's Response.  In June 2008 CIIC notified Hanna Steel that it would retain the law firm of Spain & Gillon to represent Hanna Steel in the underlying actions, thus replacing Hanna Steel's counsel of Bradley, Arant, Rose & White.  June 18, 2008, Letter to Hanna Steel, Exhibit D to Hanna Steel's Response.  Spain & Gillon later withdrew from representation of Hanna Steel after the Alabama State Bar issued an informal opinion in August 2008 warning that there was a conflict of interest regarding Spain & Gillon.  Additional Undisputed Facts, ¶ 28, Hanna Steel's Response Brief; August 26, 2008, Alabama State Bar Letter, Exhibit F to Hanna Steel's Response.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence

> of an element essential to that party's case, and on which that party will
> bear the burden of proof at trial. In such a situation, there can be "no
> genuine issue as to any material fact," since a complete failure of proof
> concerning an essential element of the nonmoving party's case
> necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A

genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).  However, the court should not make credibility determinations, nor weigh the parties' evidence.  *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

## IV. Legal Analysis

*The Pollution Exclusion Precludes Coverage for the Underlying Lawsuits Against Hanna Steel*

Under Alabama law, several general rules govern the court's interpretation of the insurance policy at issue.  "An insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."  *Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346, 1349 (M.D. Ala. 2002); *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1561 (M.D. Ala. 1996); *see also Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala. 1993); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977).  When a

plaintiff's "complaint alleges an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured." *U.S. Fidelity and Guar. Co. v. Armstrong*, 479 So.2d 1164, 1167 (Ala. 1985). The insured must prove that a claim is covered under the policy, and the insurer must show that any exclusion in the policy is applicable. *Thorn*, 266 F.Supp.2d at 1349.

"If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment." *McDonald v. U.S. Die Casting and Development Co.*, 585 So.2d 853, 855 (Ala. 1991). When the insurance policy is unambiguous, the court "must enforce the terms of the insurance policy as written." *Federated Mutual Ins. Co. v. Abston Petroleum, Inc., et al.*, 967 So.2d 705, 710 (Ala. 2007). Additionally, the applicability of a pollution exclusion, as contained in CIIC's policy in question, "depend[s] upon the 'affirmative confluence' of three elements:"

> The bodily injury or property damage in question must have been caused by exposure to a 'pollutant'; that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted 'waste.' In other words, the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release,

10

> or escape . . . of pollutants . . . at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed 'as waste.'

*Id.* at 708 (quoting *Porterfield v. Audubon Indemnity Co.*, 856 So.2d 789, 801 (Ala. 2002)).

The three underlying complaints against Hanna Steel have one common theme: pollution emanating from Hanna Steel's premises. Regardless of how craftily worded the underlying allegations may be, ultimately the injured parties are seeking recovery for the discharge of "particulates or gases into the atmosphere." CIIC's policy expressly addresses such claims in its pollution exclusion, providing that "[t]his insurance does not apply to:"

> f.  (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants
>
> (a) At or from premises you own, rent or occupy;

Policy, Commercial General Liability Coverage Form, § 1, ¶ 2.f, Exhibit A to CIIC's Summary Judgment. This exclusion bars coverage for every count against Hanna Steel in the underlying state court cases.

As stated *supra*, at the heart of each underlying complaint is the assertion that Hanna Steel and other defendants discharged pollutants from their premises resulting in personal injury and property damage. Therefore, the plain language of the

pollution exclusion must be applied to preclude coverage.

*Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346 (M.D. Ala. 2002), is an instructive case demonstrating the court's unwillingness to accept the plaintiff insureds' argument that the phrasing and use of certain terms in the underlying counts should permit coverage under the policy.  There, the insureds conceded that claims "of fraud, suppression, and deceit that [were] founded upon the alleged *intent* or *willful purpose* to harm" were excluded from coverage, but asserted that claims for "negligent, mistaken, or innocent fraud" should be covered.  *Id.* at 1350 (emphasis added).  The court rejected this reasoning, holding that "while the claims . . . include negligent, mistaken, or innocent fraud, a complete reading of each claim shows that the acts alleged are intentional, and that no theory of negligent, mistaken, or innocent fraud is actually *alleged* or *supported*."  *Id.* (emphasis added).  "[T]he inclusion of words alleging non-intentional conduct does not change the fact that the claims essentially allege intentional fraud." *Id.* at 1351.  This approach is equally applicable to the underlying claims in this case.  Although the underlying plaintiffs make allegations that sound in product liability and other causes of action, the essence of the complaints seek recovery for damages from pollution caused by the manufacturing activities conducted on Hanna Steel's premises.  Thus CIIC's pollution exclusion applies.

*CIIC is not Estopped from Denying a Defense or Indemnity to Hanna Steel in the Underlying Lawsuits*

In the response, Hanna Steel argues that CIIC should be estopped from denying its obligations to defend and indemnify "because it has put its interests ahead of Hanna's risks since agreeing to provide a defense." Hanna Steel's Response Brief at 22. Hanna Steel states that CIIC "put its interests ahead of Hanna's interests by initially delaying its acceptance of Hanna's defense, by later forcing Hanna to accept defense counsel with a conflict of interest, by forcing Hanna to incur non-covered expenses and attorneys fees to obtain the benefit of its expensive insurance policies, and by failing to fully reimburse Hanna for defense costs or otherwise actually defending Hanna, even after undertaking an obligation to do so." *Id.* at 23. In support of this argument, Hanna Steel cites to the Alabama Supreme Court decisions in *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So.2d 1298, 1303 (Ala. 1987) and *Shelby Steel Fabricators, Inc. v. U.S. Fid. & Guar.*, 569 So.2d 309, 312 (Ala. 1990). In *L&S Roofing*, the court held that there is an enhanced obligation of good faith[3] when the insurer defends the insured under a reservation of rights. *L&S*

---

[3] This enhanced obligation of good faith requires the insurer to take several steps for the benefit of the insured:

> *First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries.* Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. *Third, the company has*

13

*Roofing*, 521 So.2d at 1304.  If the insurer fails to satisfy the enhanced obligation of good faith, "the insured is entitled to retain defense counsel of its choice at the expense of the insurer." *Id.*  Because CIIC agreed to participate in the defense of Hanna Steel subject to a reservation of rights**,** it is subject to the enhanced obligation of good faith.  But, even if the court assumes that CIIC breached its duty by placing its interests ahead of Hanna Steel's interests, as Hanna Steel alleges, *L&S Roofing* does not address estoppel and is therefore inapplicable to Hanna Steel's argument.

In *Shelby Steel*, the court applied the *L&S Roofing* holding in ruling that an insurer that had breached the enhanced obligation of good faith was required to indemnify the insured.  *Shelby Steel*, 569 So.2d at 312.  There, the insurer had exclusive control over the insured's defense for over two years when it decided to send the insured a reservation of rights letter denying coverage.  *Id.* at 310.  The facts of this case, however, are distinguishable from those in *Shelby Steel*.  CIIC agreed to participate in the defense of Hanna Steel in December 2007 subject to a reservation

---

the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit.  Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company.  Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*L&S Roofing*, 521 So.2d at 1303 (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1137 (Wash. 1986) (emphasis in *L&S Roofing*)).

14

of rights, and in this letter, it notified Hanna Steel of the pollution exclusion it now relies on in this motion for partial summary judgment. December 11, 2007, Letter to Hanna Steel, Exhibit C to Hanna Steel's Response. Furthermore, as evidenced by the numerous insurers involved in this current insurance dispute, CIIC has not exercised exclusive control over Hanna Steel's defense. Hanna Steel has failed to prove that the doctrine of estoppel should apply to CIIC under these circumstances. Notwithstanding Hanna Steel's estoppel argument, Alabama caselaw provides that "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So.2d 45, 51 (Ala. 1980) (citing *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc.*, 289 Ala. 719, 272 So.2d 232 (1972)).

## V. Conclusion

Having considered the foregoing, the court concludes that CIIC's Motion for Partial Summary Judgment is due to be **GRANTED**, the court finding that no genuine issues of material fact exist.

**DONE** and **ORDERED** this 26th day of January 2009.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

16