FILED

2009 Jan-27  AM 10:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

PENNSYLVANIA NATIONAL
MUTUAL INSURANCE
COMPANY,

     Plaintiff,

vs.                                                             CASE NO. CV-08-J-0635-S

HANNA STEEL
CORPORATION, et al.,

     Defendants.

## MEMORANDUM OPINION

Pending before the court is defendant Fireman's Fund Insurance Company's ("Fireman's Fund") motion for summary judgment, evidence in support of said motion, and memorandum in support of its motion (doc. 116).  Defendant Hanna Steel Corporation ("Hanna Steel") filed a response in opposition to defendant Fireman's Fund's motion for summary judgment and evidentiary submissions (doc. 139).  Defendant Fireman's Fund filed a reply to defendant Hanna Steel's response (doc. 142).

Having considered all the pleadings and submissions, the court concludes that defendant Fireman's Fund's motion for summary judgment is due to be granted as no genuine issues of material fact remain, and defendant Fireman's Fund is entitled to

a judgment in its favor as a matter of law.

## I. Procedural History

On April 10, 2008, Pennsylvania National Mutual Insurance Company ("Penn National") filed the instant declaratory judgment action against Hanna Steel and Hanna Steel's insurers[1] (doc. 1, doc. 60).  Ceola Allen, Katie Lowery, and Larry Aaron, the lead plaintiffs in the three underlying lawsuits filed against Hanna Steel,[2] were also named as defendants.  The declaratory judgment action seeks a declaration that Penn National policies do not provide coverage for the claims asserted against Hanna Steel in the underlying lawsuits, that Penn National does not owe a duty to defend or indemnify Hanna Steel in such suits, and that Hanna Steel's other insurers owe a defense to Hanna Steel.  Hanna Steel filed a cross-claim against Fireman's Fund asserting counts of declaratory judgment, breach of contract, and estoppel (doc. 98).  Fireman's Fund now moves for summary judgment on the cross-claim and on

---

[1]  The insurer-defendants include American Manufacturers Mutual Insurance Company, Columbia Casualty Company, National Fire Insurance Company of Hartford, and Fireman's Fund Insurance Company.  Penn National added Commerce and Industry Insurance Company through its First Amended Complaint on August 14, 2008 (doc. 60).

[2]  These underlying suits brought against Hanna Steel in the Circuit Court of Jefferson County, Alabama, include: *Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, Exhibit B to Fireman's Fund's Summary Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, Exhibit C to Fireman's Fund's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, Exhibit D to Fireman's Fund's Summary Judgment.  This lawsuit is marked both as Civ. No. 07-40 and Civ. No. 07-42 in state court, but it is one lawsuit, namely *Larry Aaron, et al. v. Hanna Steel Corp., et al.*

each count in the declaratory judgment action (doc. 116).

## II. Factual Background

Fireman's Fund issued a policy of commercial liability insurance to Hanna Steel.   Kane Decl. ¶ 5, Exhibit 1 to Exhibit A to Fireman's Fund's Summary Judgment.  The policy was numbered 7-60-KXC80371919 and was effective from December 1, 1998, to December 1, 1999.  *Id.*  The policy provides coverage for bodily injury or property damage that occurs during the policy period in the amount of $1 million per occurrence, subject to a $2 million aggregate limit of liability. Policy, General Liability Declarations, Commercial General Liability Coverage Form, § 1, Coverage A, ¶ 1.a, Exhibit 1 to Exhibit A to Fireman's Fund's Summary Judgment.

The policy includes a pollution exclusion, stating that "[t]his insurance does not apply to:"

> f.    Pollution
>
> > (1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
> >
> > > (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;
> > >
> > > (b) At or from any premises, site or location which is or

3

was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

\* \* \* \*

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order than any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

Policy, Commercial General Liability Coverage Form, § 1, Coverage A, ¶ 2.f, Exhibit 1 to Exhibit A to Fireman's Fund's Summary Judgment.

Generally, the underlying complaints in the three lawsuits against Hanna Steel allege that Hanna Steel, along with numerous other defendants, caused pollutants,

4

particulates, or gases to be discharged into the atmosphere, land, and/or waters, resulting in personal injury and property damage. *See Ceola Allen, et al. v. Hanna Steel Corp., et al.*, Civ. No. 04-79, ¶¶ 3-4, Exhibit B to Fireman's Fund's Summary Judgment; *Katie Lowery, et al. v. Hanna Steel Corp., et al.*, Civ. No. 05-1749, ¶¶ 4-5, Exhibit C to Fireman's Fund's Summary Judgment; and *Larry Aaron, et al. v. Hanna Steel Corp., et al.*, Civ. No. 07-42, ¶¶ 4-5, Exhibit D to Fireman's Fund's Summary Judgment. For example, the *Aaron* complaint alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere;" (2) "manufactured equipment that has, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates or gases to be discharged into the atmosphere;" (3) "sold equipment in commerce that, when operated by another defendant, or defendants . . . caused or contributed to cause . . . particulates to be discharged into the atmosphere;" (4) "[were] under a duty to design, or to review the design [of] equipment that is being used by one or more of the named defendants, whose operations are, or have discharged pollutants into the atmosphere;" or (5) were "under a duty to inspect the operations of one or more of the other defendants." *Aaron* Complaint, ¶ 4, Exhibit D to Fireman's Fund's Summary Judgment. The *Allen* complaint makes identical allegations, *Allen* Complaint, ¶ 3, Exhibit B to Fireman's Fund's Summary Judgment, while the *Lowery* complaint only

alleges that Hanna Steel and other defendants: (1) "discharged particulates or gases into the atmosphere and into the ground water;" (2) "caused or contributed to cause particulates or gases to be discharged into the atmosphere or the ground water;" or (3) were "under a duty to inspect the operations of one or more of the other Defendants." *Lowery* Complaint, ¶ 4, Exhibit C to Fireman's Fund's Summary Judgment.

All of the complaints in the underlying lawsuits then assert counts of negligence, wantonness, trespass, nuisance, and outrage against Hanna Steel. *Allen* Complaint, Exhibit B to Fireman's Fund's Summary Judgment; *Lowery* Complaint, Exhibit C to Fireman's Fund's Summary Judgment; *Aaron* Complaint, Exhibit D to Fireman's Fund's Summary Judgment. The *Allen* and *Aaron* actions also add counts of breach of duty to warn, fraud, misrepresentation and deceit, common law strict liability, negligent infliction of emotional distress, intentional infliction of emotional distress, and permanent injunction. *Allen* Complaint, Exhibit B to Fireman's Fund's Summary Judgment; *Aaron* Complaint, Exhibit D to Fireman's Fund's Summary Judgment. The *Allen* plaintiffs are the only plaintiffs in the underlying lawsuits who assert counts of battery and assault against Hanna Steel and the other defendants.

*Allen* Complaint, Exhibit B to Fireman's Fund's Summary Judgment.[3]

In March 2004, Fireman's Fund notified Hanna Steel that there was "no coverage, defense or indemnity" for the underlying *Allen* litigation.  March 8, 2004, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response.  Fireman's Fund based its decision on a Total Pollution Exclusion Endorsement.[4]  *Id.*  The endorsement,

---

[3]  The *Lowery* complaint also contains a count for "Product Claim against Fictitious Defendants."  *Lowery* Complaint, Exhibit C to Fireman's Fund's Summary Judgment.

[4]  The Total Pollution Exclusion Endorsement, which Fireman's Fund relied on in said letter, states that "[t]his insurance does not apply to:"

> f.  (1) Bodily injury or property damage which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> (2) Any loss, cost or expense arising out of any:
>
> > (a) Request, demand or order than any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants; or
> >
> > (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

March 8, 2004, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response.

however, was deleted from the policy on May 5, 1999.  Policy, Change Endorsement at 2, Exhibit 1 to Hanna Steel's Response.  Unaware of the deletion, Fireman's Fund continued to assert the Total Pollution Exclusion Endorsement as the means of denying coverage, defense, or indemnity in both the *Lowery* action and the *Aaron* action.  June 5, 2007, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response; August 28, 2007, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response.  In September 2008, Fireman's Fund filed a motion for summary judgment (doc. 76) relying on the Total Pollution Exclusion Endorsement but later sought permission from the court to withdraw its motion (doc. 92).  In its motion to withdraw, Fireman's Fund stated that it inadvertently relied on the Total Pollution Exclusion Endorsement in its motion for summary judgment, but first became aware of its deletion when Hanna Steel filed its response to Fireman's Fund's motion.  Fireman's Fund's Motion to Withdraw its Motion for Summary Judgment, doc. 92 at 2.  The court granted Fireman's Fund's motion to withdraw (doc. 95), and Fireman's Fund soon agreed to defend Hanna Steel in the *Allen* and *Aaron* actions, subject to a reservation of rights under the policy.  November 11, 2008, Letter to Hanna Steel re *Allen* and *Aaron* Actions, Exhibit 2 to Fireman's Fund's Summary Judgment.  In this letter, Fireman's Fund continued to assert that there was no coverage for the *Allen* and *Aaron* actions under the policy, but based its no-coverage position on the pollution exclusion it now

8

relies on in its motion for summary judgment. *Id.* For the same reasons, Fireman's Fund did not change its position with regard to the *Lowery* litigation, still arguing that there were no coverage, defense, or indemnity obligations. November 11, 2008, Letter to Hanna Steel re *Lowery* Action, Exhibit 2 to Fireman's Fund's Summary Judgment.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and

identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed. R. Civ. Pro. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587.  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for

summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th

Cir. 1991).  However, the court should not make credibility determinations, nor weigh

the parties' evidence.  *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848

(11th Cir. 2000).

## IV. Legal Analysis

*The Pollution Exclusion Precludes Coverage for the Underlying Lawsuits Against Hanna Steel*

Under Alabama law, several general rules govern the court's interpretation of

the insurance policy at issue.  "An insurer's duty to defend its insured is determined

by the language of the insurance policy and by the allegations in the complaint filed

against the insured."  *Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346, 1349

(M.D. Ala. 2002); *Auto-Owners Ins. Co. v. Toole*, 947 F.Supp. 1557, 1561 (M.D. Ala.

1996); *see also Alfa Mutual Ins. Co. v. Morrison,* 613 So.2d 381, 382 (Ala. 1993);

*Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala. 1977).  When a

plaintiff's "complaint alleges an accident or occurrence which comes within the

coverage of the policy, the insurer is obligated to defend, regardless of the ultimate

liability of the insured."  *U.S. Fidelity and Guar. Co. v. Armstrong*, 479 So.2d 1164,

1167 (Ala. 1985) (citing *Ladner & Co.*, 347 So.2d at 102).  The insured must prove

that a claim  is covered under the policy, and the insurer must show that any exclusion

in the policy is applicable.  *Thorn*, 266 F.Supp.2d at 1349.

"If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment."  *McDonald v. U.S. Die Casting and Development Co.*, 585 So.2d 853, 855 (Ala. 1991).  When the insurance policy is unambiguous, the court "must enforce the terms of the insurance policy as written."  *Federated Mutual Ins. Co. v. Abston Petroleum, Inc., et al.*, 967 So.2d 705, 710 (Ala. 2007).  Additionally, the applicability of a pollution exclusion, as contained in Fireman's Fund's policy in question, "depend[s] upon the 'affirmative confluence' of three elements:"

> The bodily injury or property damage in question must have been caused by exposure to a 'pollutant'; that exposure must have arisen out of the actual, alleged, or threatened discharge, dispersal, release, or escape of the pollutant; and that discharge, dispersal, release, or escape must have occurred at or from certain locations or have constituted 'waste.'  In other words, the exclusion comes into play only with respect to bodily injury or property damage arising out of the discharge, dispersal, release, or escape . . . of pollutants . . . at or from certain categories of locations, or which have been transported, stored, handled, treated, disposed of, or processed 'as waste.'

*Id.* at 708 (quoting *Porterfield v. Audubon Indemnity Co.*, 856 So.2d 789, 801 (Ala. 2002)).

The three underlying complaints against Hanna Steel have one common theme:

pollution emanating from Hanna Steel's premises.  Regardless of how craftily worded the underlying allegations may be, ultimately the injured parties are seeking recovery for the discharge of "particulates or gases into the atmosphere."  Fireman's Fund's policy expressly addresses such claims in its pollution exclusion, providing that "[t]his insurance does not apply to:"

> f.    Pollution
>
>> (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>>
>>> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

Policy, Commercial General Liability Coverage Form, § 1, Coverage A, ¶ 2.f, Exhibit 1 to Exhibit A to Fireman's Fund's Summary Judgment.  This exclusion bars coverage for every count against Hanna Steel in the underlying state court cases.  As stated *supra*, at the heart of each underlying complaint is the assertion that Hanna Steel and other defendants discharged pollutants from their premises resulting in property damage.  Therefore, the plain language of the pollution exclusion must be applied to preclude coverage.

*Thorn v. American States Ins. Co.*, 266 F.Supp.2d 1346 (M.D. Ala. 2002), is an instructive case demonstrating the court's unwillingness to accept the plaintiff

13

insureds' argument that the phrasing and use of certain terms in the underlying counts should permit coverage under the policy.  There, the insureds conceded that claims "of fraud, suppression, and deceit that [were] founded upon the alleged *intent* or *willful purpose* to harm" were excluded from coverage, but asserted that claims for "negligent, mistaken, or innocent fraud" should be covered.  *Id.* at 1350 (emphasis added).  The court rejected this reasoning, holding that "while the claims . . . include negligent, mistaken, or innocent fraud, a complete reading of each claim shows that the acts alleged are intentional, and that no theory of negligent, mistaken, or innocent fraud is actually *alleged* or *supported*."  *Id.* (emphasis added).  "[T]he inclusion of words alleging non-intentional conduct does not change the fact that the claims essentially allege intentional fraud."  *Id.* at 1351.  This approach is equally applicable to the underlying claims in this case.  Although the underlying plaintiffs make allegations that sound in product liability and other causes of action, the essence of the complaints seek recovery for damages from pollution caused by the manufacturing activities conducted on Hanna Steel's premises.  Thus Fireman's Fund's pollution exclusion applies.

*Fireman's Fund is not Estopped from Denying a Defense or Indemnity to Hanna Steel in the Underlying Lawsuits*

In the response, Hanna Steel argues that Fireman's Fund "is estopped from

providing anything less than an immediate and unconditional reimbursement of Hanna's expenses in defending all three of the Underlying Actions, to continuing to provide such a defense until these Actions are resolved, and to indemnifying Hanna for any liability ultimately resulting from the underlying actions."  Hanna Steel's Response Brief at 18.  First, Hanna Steel asserts that Fireman's Fund did not deliver the correct policy containing the deletion of the Total Pollution Exclusion Endorsement to Hanna Steel, and as a result, Fireman's Fund should be estopped "from asserting policy exclusions to evade its defense and indemnity obligations." *Id.* at 19.  In *Brown Mach. Works & Supply Co., Inc. v. Ins. Co. of N. Am.*, 659 So.2d 51, 61 (Ala. 1995), the Alabama Supreme Court held "that an insurer may be estopped from asserting conditions of, or exclusions from, coverage where such a purchaser or insured is prejudiced by the insurer's failure to comply" with Ala. Code § 27-14-19, which requires the insurer to mail or deliver the policy to the insured. Regardless of whether Fireman's Fund failed to mail or deliver the correct policy to Hanna Steel, Hanna Steel has not shown prejudice resulting from such conduct. Before responding to Fireman's Fund's original motion for summary judgment, Hanna Steel obtained a copy of the policy from **its insurance broker**.  Hanna Steel's Response Brief at 19.  Hanna Steel was able to appropriately inform Fireman's Fund, based on the current policy in its possession, that the Total Pollution Exclusion

15

Endorsement was deleted from the policy. *See* Hanna Steel's Original Response Brief at 4. Hanna Steel was not prejudiced if, in fact, Fireman's Fund had not mailed or delivered the policy to Hanna Steel but only to Hanna Steel's insurance broker.

Secondly, Hanna Steel argues that Fireman's Fund should be "equitably estopped from denying its obligations by virtue of Hanna's reliance on [Fireman's Fund's] representation that the total pollution exclusion was still in effect." Hanna Steel's Response Brief at 19. Hanna Steel states that it was "materially harmed" due to Fireman's Fund's four-and-a-half year reliance on the Total Pollution Exclusion Endorsement that was no longer included in the policy. *Id.* at 19-20. Hanna Steel's allegations, however, are not sufficient to warrant equitable estoppel. Hanna Steel cites *Mazer v. Jackson Ins. Agency*, 340 So.2d 770, 773 (Ala. 1976) (quoting DOBBS, REMEDIES § 2.3 (1973)), for the three elements of equitable estoppel: "[(1)] [t]he actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence; [(2)] [t]he other [party] relies upon that communication; and [(3)] [t]he other [party] would be harmed materially if the actor is later permitted to assert any claim inconsisten[t] with his earlier conduct." Here, Hanna Steel is unable to satisfy the second and third elements of equitable estoppel. As for the second element, Hanna Steel cannot show reliance upon Fireman's Fund's position that there was no "coverage, defense or indemnity"

16

for the underlying actions.  March 8, 2004, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response.  Hanna Steel states that it could have been more aggressive in seeking a defense from Fireman's Fund if Fireman's Fund had not relied on the absent pollution exclusion.  Hanna Steel's Response Brief at 20.  However, it was Penn National, not Hanna Steel, who initiated this present litigation.  Hanna Steel did not assert any claim, either directly or by cross-claim as in this case, against Fireman's Fund until October 21, 2008 (doc. 98), when it filed the recent cross-claim. Additionally, Hanna Steel could have sought a copy of the policy from **its insurance broker** as soon as Fireman's Fund denied coverage in 2004 rather than wait until Hanna Steel had to respond to Fireman's Fund's original motion for summary judgment.  Such delayed actions show a lack of urgency on Hanna Steel's part, negating the *Mazer* reliance factor.

As for the third element, Fireman's Fund's previous reliance on the Total Pollution Exclusion Endorsement that is no longer part of the policy is not inconsistent with the pollution exclusion Fireman's Fund now asserts.  Throughout Fireman's Fund's correspondence with Hanna Steel, Fireman's Fund always stated that it believed there was no coverage under the policy for the underlying actions. *See* March 8, 2004, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response; June 5, 2007, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response; August 28,

2007, Letter to Hanna Steel, Exhibit 3 to Hanna Steel's Response; November 11, 2008, Letter to Hanna Steel re *Allen* and *Aaron* Actions, Exhibit 2 to Fireman's Fund's Summary Judgment; November 11, 2008, Letter to Hanna Steel re *Lowery* Action, Exhibit 2 to Fireman's Fund's Summary Judgment.  Based on Fireman's Fund's consistent no-coverage position, Hanna Steel cannot claim material harm.

Lastly, Hanna Steel states that Fireman's Fund should be estopped from denying its obligations to defend and indemnify "because it has put its interests ahead of Hanna's interests since agreeing to provide a defense."  Hanna Steel's Response Brief at 20.  Hanna Steel states that Fireman's Fund "put its interests ahead of Hanna's interests by filing a motion for summary judgment disclaiming all defense obligations on the same day that it finally . . . agreed to defend; continuing to deny a defense for the *Lowery* Action; and failing to reimburse Hanna for defense costs or otherwise actually defending Hanna."  *Id.* at 21.  In support of this argument, Hanna Steel cites to the Alabama Supreme Court decisions in *L&S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co.*, 521 So.2d 1298, 1303 (Ala. 1987) and *Shelby Steel Fabricators, Inc. v. U.S. Fid. & Guar.*, 569 So.2d 309, 312 (Ala. 1990).  In *L&S Roofing*, the court held that there is an enhanced obligation of good faith[5] when the

---

[5]  This enhanced obligation of good faith requires the insurer to take several steps for the benefit of the insured:

insurer defends the insured under a reservation of rights.  *L&S Roofing*, 521 So.2d at 1303-04.  If the insurer fails to satisfy the enhanced obligation of good faith, "the insured is entitled to retain defense counsel of its choice at the expense of the insurer." *Id.* Because Fireman's Fund agreed to participate in the defense of Hanna Steel (for the *Allen* and *Aaron* actions) subject to a reservation of rights, November 11, 2008, Letter to Hanna Steel re *Allen* and *Aaron* Actions, Exhibit 2 to Fireman's Fund's Summary Judgment, it is subject to the enhanced obligation of good faith. But, even if the court assumes that Fireman's Fund breached its duty by placing its interests ahead of Hanna Steel's interests, as Hanna Steel alleges, *L&S Roofing* does not address estoppel and is therefore inapplicable to Hanna Steel's argument.

In *Shelby Steel*, the court applied the *L&S Roofing* holding in ruling that an insurer that had breached the enhanced obligation of good faith was required to

---

*First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries.*  Second, it must retain competent defense counsel for the insured.  Both retained defense counsel and the insurer must understand that only the insured is the client.  *Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit.*  Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company.  Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.

*L&S Roofing*, 521 So.2d at 1303 (quoting *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1137 (Wash. 1986) (emphasis in *L&S Roofing*)).

indemnify the insured. *Shelby Steel*, 569 So.2d at 312. There, the insurer had exclusive control over the insured's defense for over two years when it decided to send the insured a reservation of rights letter denying coverage. *Id.* at 310. The facts of this case, however, are distinguishable from those in *Shelby Steel*. Fireman's Fund refused to provide a defense to Hanna Steel in the underlying actions from March 2004 until November 2008. When Fireman's Fund agreed to defend Hanna Steel in the *Allen* and *Aaron* actions subject to a reservation of rights, it continued to assert its consistent position that there was no coverage under the policy for the *Allen, Aaron*, and *Lowery* actions. November 11, 2008, Letter to Hanna Steel re *Allen* and *Aaron* Actions, Exhibit 2 to Fireman's Fund's Summary Judgment; November 11, 2008, Letter to Hanna Steel re *Lowery* Action, Exhibit 2 to Fireman's Fund's Summary Judgment. These facts are not akin to those in *Shelby Steel* where the insured was afforded a defense for two years and then denied coverage. Here, Fireman's Fund never assumed control of the defense of Hanna Steel, Hanna Steel was aware of Fireman's Fund's no "coverage, defense or indemnity" position as early as March 2004, and Fireman's Fund's position of "no coverage" never changed. Hanna Steel took no action against Fireman's Fund until October 2008 (doc. 98). Furthermore, as evidenced by the numerous insurers involved in this current insurance dispute, Fireman's Fund has not exercised exclusive control over Hanna

Steel's defense, as was the case in *Shelby Steel*. Hanna Steel has failed to show that the doctrine of estoppel should apply to Fireman's Fund under these circumstances. Additionally, Hanna Steel has completely failed to demonstrate that it has been damaged or otherwise prejudiced by Fireman's Fund's conduct. Notwithstanding Hanna Steel's estoppel argument, Alabama caselaw provides that "coverage under an insurance policy cannot be created or enlarged by waiver or estoppel and, if there is no ambiguity, it is the duty of the court to enforce the policy as written." *Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So.2d 45, 51 (Ala. 1980) (citing *Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., Inc.*, 289 Ala. 719, 272 So.2d 232 (1972)).

## V. Conclusion

Having considered the foregoing, the court concludes that an Order and Judgment in favor of defendant Fireman's Fund is warranted, as follows:

(1) For the reasons stated, Fireman's Fund's Motion for Summary Judgment is due to be **GRANTED** as follows the court finding that no genuine issues of material fact exist:

Fireman's Fund has no coverage obligation under the policy issued to Hanna Steel for the claims asserted against it in the underlying actions brought by the individual defendants, and is entitled to judgment as a matter of law with respect to the cross-claim filed by Hanna Steel (doc. 98) as amended (doc. 103) against

21

Fireman's Fund.

The court specifically finds that Fireman's Fund's Motion for Summary Judgment is also due to be granted with respect to Hanna Steel's claim for bad faith asserted in its amended third party complaint and cross claim (doc. 103) as Alabama law does not recognize the tort of bad faith where no coverage exists. *See State Farm Fire & Casualty Co. v. Slade*, 747 So.2d 293, 318 (Ala. 1999).

(2) As the court has found that Fireman's Fund has no coverage obligation under the policy issued to Hanna Steel for the claims asserted against it in the underlying actions brought by the individual defendants, Fireman's Fund is also entitled to judgment as a matter of law with respect to the claims asserted by Penn National (doc. 60) against Fireman's Fund.

The court directs judgment in favor of Fireman's Fund and against all other parties to this action with respect to any obligations of Fireman's Fund in this matter. This order resolves all claims by or against Fireman's Fund.  It would be unjust not to provide Fireman's Fund with a final judgment as that harsh result would deny it repose while any remaining claims are litigated by other parties in this court.  Further, final judgment under Rule 54(b) will serve to streamline this matter and thus serves the purposes of sound judicial administration.  Therefore, this court also makes an explicit and direct determination that there is no just reason for delay and said

judgment shall be entered as final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

The court **ORDERS** that Fireman's Fund's motion for summary judgment be and hereby is **GRANTED**.  The court shall so rule by separate Order.

**DONE** and **ORDERED** this 26th day of January 2009.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

23